NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
DAVID T. RYAN (Cal. Bar No. 295785)
GEORGE E. PENCE (Cal. Bar No. 257595)
Assistant United States Attorneys
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4491/2253
    Facsimile: (213) 894-2979
    E-mail:    david.ryan@usdoj.gov
               george.pence@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-00759-CJC-4 |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANT'S MOTION FOR DISCLOSURE OF GRAND JURY TRANSCRIPTS |
| v. | |
| ROBERT RUNDO, ROBERT BOMAN, AARON EASON, and TYLER LAUBE, | Hearing Date: 2/25/2019<br>Hearing Time: 9:00 A.M.<br>Location:    Courtroom of the Hon. Cormac J. Carney |
| Defendants. | |

        Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and the undersigned Assistant United States Attorneys, hereby files its Opposition to Defendant Aaron Eason's Motion for Disclosure of Grand Jury Transcripts.

//

//

1    This Opposition is based upon the attached memorandum of points

2  and authorities and exhibits, the files and records in this case, and

3  such further evidence and argument as the Court may permit.

4  Dated: January 28, 2019          Respectfully submitted,

5                                   NICOLA T. HANNA
                                    United States Attorney
6
                                    PATRICK R. FITZGERALD
7                                   Assistant United States Attorney
                                    Chief, National Security Division
8

9                                   _____/s/_____
                                    GEORGE E. PENCE
10                                  DAVID T. RYAN
                                    Assistant United States Attorneys
11
                                    Attorneys for Plaintiff
12                                  UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                                                   <u>PAGE</u>

**Contents**

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   SUMMARY OF PROCEDURAL HISTORY................................3

      A.    The Indictment.........................................3

      B.    Discovery in this Case is Ongoing......................5

      C.    Defendant's Pure Speculation as to What Evidence Was
            Presented to the Grand Jury Fails to Meet the Burden
            for Disclosure.........................................5

III.  ARGUMENT.....................................................7

      A.    Defendant Must Establish a Particularized Need for the
            Grand Jury Transcript That Outweighs the Policy of
            Grand Jury Secrecy.....................................7

      B.    Defendant Has Failed to Establish That a Ground May
            Exist to Dismiss the Indictment Because of a Matter
            that Occurred Before the Ground Jury...................8

            1.    Defendant Points to No Evidence That Alleged
                  Misrepresentations Occurred......................9

            2.    Defendant's Argument that the Government
                  Committed Misconduct by Allegedly Failing to
                  Present Information to the Grand Jury Concerning
                  Antifa is Meritless.............................13

      C.    Defendant Has Not Established a Need for the Grand
            Jury Transcript that Outweighs the Continuing Interest
            in Grand Jury Secrecy.................................14

IV.   CONCLUSION..................................................15

**TABLE OF AUTHORITIES**

DESCRIPTION                                                    PAGE

**Cases**

Brady v. Maryland,
  373 U.S. 83 (1963) ............................................... 15

Dennis v. United States,
  384 U.S. 855 (1966) .............................................. 14

Douglas Oil Co. of California v. Petrol Stops Nw.,
  441 U.S. 211 (1979) ........................................... 7, 14

Giglio v. United States,
  405 U.S. 150 (1972) .............................................. 15

Goldstein v. City of Long Beach,
  603 F. Supp. 2d 1242 (C.D. Cal. 2009) ............................ 8

United States v. Calandra,
  414 U.S. 338 (1974) .............................................. 13

United States v. Isgro,
  974 F.2d 1091 (9th Cir. 1992) .................................... 13

United States v. Kennedy,
  564 F.2d 1329 (9th Cir. 1977) .................................... 12

United States v. Manchester Farming P'ship,
  315 F.3d 1176 (9th Cir. 2003) .................................... 13

United States v. Perez,
  67 F.3d 1371 (9th Cir. 1995) ..................................... 8

United States v. Plummer,
  941 F.2d 799 (9th Cir. 1991) ..................................... 8

United States v. Procter & Gamble Co.,
  356 U.S. 677 (1958) .............................................. 8

United States v. Rose,

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                      PAGE

  215 F.2d 617 (3rd Cir. 1954) ...................................... 8

United States v. Stepanyan,

  Case No. CR 15-0234 CRB, 2016 WL 4398281 ..................... 11, 12

United States v. Walczak,

  783 F.2d 852 (9th Cir. 1986) ...................................... 8

United States v. Williams,

  504 U.S. 36 (1992) ............................................... 13


**Statutes**

18 U.S.C. § 2101(a)............................................... 1

18 U.S.C. § 2102(a)............................................... 1

**Rules**

Fed. R. Crim. P. 6(e)............................................. 7

Fed. R. Crim. P. 6(e)(3)(E)....................................... 8, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The defendants in this case are charged with conspiring to commit acts of violence on others and committing acts of violence on others.  Specifically, on November 1, 2018, the Grand Jury returned a two-count indictment charging Aaron Eason, Robert Rundo, Robert Boman, and Tyler Laube (collectively, the "defendants") with conspiracy in violation of Title 18, United States Code, Section 371, and rioting, in violation of Title 18, United States Code, Sections 2101 and 2(a).  Section 2101 prohibits: inciting a riot, organizing, promoting, encouraging, participating in, or carrying on a riot, committing any act of violence in furtherance of a riot, or aiding and abetting any of those things.  See 18 U.S.C. § 2101(a). Congress's focus on violence here is clear, as its definition of "riot" shows:

> a public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

18 U.S.C. § 2102(a).

The charges thus require the government to prove that defendants agreed to use a facility of interstate commerce with the intent to engage in violence, did in fact use such a facility with the intent to engage in violence, and carried out their plans to inflict violence.  To be clear then, as alleged in the Indictment, defendants

are guilty not only of engaging in acts of violence, but also of using a facility of interstate commerce with the intent to do so. The voluminous evidence in this case, including videos, eyewitness statements, and defendant's and his co-conspirators' text messages and social media communications, shows their intent and agreement to engage in violence against their intended targets.  The evidence also documents their execution of those illicit plans.

Defendant moves for disclosure of the transcript of the grand jury proceeding that resulted in his Indictment.  His motion overlooks the charged crimes and his own role in them.  The Indictment simply does not contain several of the allegations he disputes, including that he was a "founding member" of RAM, that co-conspirators "used, or were willing to use weapons" at political rallies, or that he was "not asked by political event organizers" to provide security.  The charges also do not require proof, as defendant apparently believes, that he personally initiated or even engaged in violence at a political rally, though in fact he did.  And it is not a defense to the charges, contrary to defendant's arguments, that some of the defendants' targets were prepared to fight, too.

Defendant's arguments are factually unsupported and legally meritless.  They do not come close to establishing the "particularized need" the law requires before permitting a defendant to pierce the veil of grand jury secrecy.  Defendant's attempt to shoehorn a theory of prosecutorial misconduct into the case by arguing (1) he is not guilty, and therefore (2) he would never have been indicted unless the government had misled the grand jury, is not an innovation.  As to his purported innocence, there is no summary

judgment in criminal cases.  Moreover, at least one court in this circuit, guided by well-established Supreme Court and Ninth Circuit case law, has already rejected his theory on the ground that, if it were accepted, any defendant who maintained his innocence would be entitled to the transcript of the grand jury proceeding that led to their indictment.  That is not the law.  Accordingly, defendant's motion should be denied.

## II.   SUMMARY OF PROCEDURAL HISTORY

### A.   The Indictment

The conspiracy count in the Indictment charges that beginning on or about December 2016 and continuing until on or about October 2, 2018, defendants conspired and agreed to engage in the crime of rioting.  In support of that charge, the conspiracy count sets forth 47 overt acts.  Defendant is expressly mentioned in the following eleven of those over acts:

Overt Act No. 3: On or about March 25, 2017, defendants RUNDO, BOMAN, LAUBE, and EASON, Co-Conspirator #1, and other RAM members attended a political rally in Huntington Beach, California (the "Huntington Beach Rally").

. . . .

Overt Act No. 9:  On or about March 27, 2017, defendant EASON sent a text message to a new RAM member ("Co-Conspirator #2") to invite the new member to attend and provide "security" at a political event in Berkeley, California, on April 15, 2017 (the "Berkeley Rally") and to attend "hand to hand and formation fighting training" prior to the Berkeley Rally.

Overt Act No. 10:  On or about March 27, 2017, defendant EASON sent a text message to ask Co-Conspirator #2 to recruit additional people to attend the Berkeley Rally, stating, "I want us to have a group of at least 25 so we can form up and take down anything that comes at us."

Overt Act No. 11:  On or about April 1, 2017, defendant EASON sent text messages to confirm Co-Conspirator #2's attendance at a combat training session in advance of the Berkeley Rally, and stated, "We'll probably have equipment

for shield and stick training and our formation tactics ready."

Overt Act No. 12: On or about April 14, 2017, defendant EASON used a Visa credit card with account number ending in 0807 to rent a 12-15 passenger van from Airport Van Rental, and used the van to transport RUNDO, BOMAN, Co-Conspirator #2, and other RAM members from Southern California to the Berkeley Rally

Overt Act No. 13: On or about April 15, 2017, defendants RUNDO, BOMAN, and EASON, Co-Conspirator #1, Co-Conspirator #2, and other RAM members attended the Berkeley Rally.

Overt Act No. 14: On or about April 15, 2017, defendants RUNDO, BOMAN, and EASON, Co-Conspirator #1, Co-Conspirator #2, and other RAM members prepared to commit acts of violence at the Berkeley Rally by wrapping their hands with athletic tape and wearing matching grey shirts and black masks with white skeleton designs around their faces.

. . . .

Overt Act No. 17: On or about April 15, 2017, defendant EASON assaulted persons at the Berkeley Rally.

. . . .

Overt Act No. 22: On or about April 21, 2017, Co-Conspirator #2 sent a text message to defendant EASON stating that Co-Conspirator #2 and RUNDO had both broken their hands at the Berkeley Rally. Defendant EASON replied, "class is cancelled this weekend. It's on for next weekend though. Maybe we should work on palm strikes and elbows."

Overt Act No. 23: On or about April 21, 2017, defendant EASON sent a text message to Co-Conspirator #2 to invite Co-Conspirator #2 to a political rally in Berkeley, California on April 27, 2017, stating that he was "driving up to deny antifa a face-saving victory," and intended to "leave in the morning, drive fast, get up there early so we can stretch out and power up, hit it hard and skip town."

. . . .

Overt Act No. 39: On or about September 25, 2017, defendant EASON sent a text message to Co-Conspirator #2 stating that he was "back in a position to go hard with activism" after having been "sidetracked after Berkeley."

Count Two of the Indictment, which charges rioting, alleges defendant used a Visa Credit Card in furtherance of his intent to

4

engage in a riot and further alleges that defendants traveled together on or about April 14, 2017, to Berkeley, California, to engage in a riot.

**B.    Discovery in this Case is Ongoing**

The government has produced to defendant approximately 540 pages of discovery, including photographs, social media communications, statements of defendant, and credit card records, as well as approximately four terabytes of data containing images of digital devices seized during the investigation, and approximately 94 videos from the incidents identified in the Indictment.

Since the filing of defendant's motion, the government has also made available additional discovery including more than 24,000 pages of documents containing, among other things, reports of investigation, witness interviews, additional videos and photographs, and communications by and between defendants contained on social media accounts and in digital devices.

**C.    Defendant's Pure Speculation as to What Evidence Was Presented to the Grand Jury Fails to Meet the Burden for Disclosure**

In his Motion, defendant argues that he has a particularized need for the grand jury transcript, which he plans to use to support a motion to dismiss the Indictment, because unspecified discovery "thus far contradicts the assertions made in the indictment." (Mot. at 3)  In support, defendant attaches the declaration of his lawyer, John Neil McNicholas (the "McNicholas Decl."), who claims to have reviewed seven discs of discovery and exhibits supporting the government's position in three separate bail hearings involving

defendant.[1]   (McNicholas Decl. ¶ 3)  Mr. McNicholas further argues that this discovery presents a "fairly accurate history" of defendant's involvement in the charged criminal conspiracy, though he does not say what deficiency prevents this discovery from being completely accurate.  (McNicholas Decl. ¶ 3)  From there, Mr. McNicholas asserts, without evidence, a list of alleged "misrepresentations" that he speculates the government made to the Grand Jury:

(1)     "R.A.M. commenced in February, 2018 and Eason was a founding member."

(2)     "R.A.M. is a combat-ready, militant group of new nationalist white supremacists."

(3)     "Eason was not asked by political event organizers to provide legitimate security."

(4)     "Eason went to Berkeley on April 15, 2017 with the purpose of inciting a riot."

(5)     "Eason attempted to recruit new members into R.A.M."

(6)     "Eason attacked victims at various political events."

(7)     "Alleged co-conspirators used, or were willing to use weapons in order to carry out their attacks in Huntington Beach, Berkeley ad (sic) San Bernardino."

(8)     "The actions by Antifa, By Any means (sic) Necessary, and other radical left wing organizations that initiated violence in Huntington Beach and Berkeley, were not presented to the grand jury as riot instigators, but instead were referred to by agents as 'attendees,' 'counterprotestors' and 'victims.'"

---

[1] In his Motion, defendant correctly acknowledges that this discovery is only "preliminary." (Mot. at 4)

Mr. McNicholas does not attach to his declaration any discovery in this case, much less any discovery that "contradicts the assertions made in the indictment." (Mot. at 3) Again, even if he did, he is not entitled to summary judgment on the charges or to rulings on potential defenses, including arguments that he or his co-defendants acted in self-defense. Those are issues for the trier of fact. Rather, in the context of a motion to pierce grand jury secrecy, he must establish a particularized need. He has failed to meet his burden.

## III. ARGUMENT

### A. Defendant Must Establish a Particularized Need for the Grand Jury Transcript That Outweighs the Policy of Grand Jury Secrecy

The United States Supreme Court has consistently "recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." Douglas Oil Co. of California v. Petrol Stops Nw., 441 U.S. 211, 218 (1979); see also Fed. R. Crim. P. 6(e) (codifying grand jury secrecy requirements). The Supreme Court has identified "several distinct interests served by safeguarding the confidentiality of grand jury proceedings," id. at 218–19:

> "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

1   United States v. Procter & Gamble Co., 356 U.S. 677, 682 n.6 (1958)

2   (quoting United States v. Rose, 215 F.2d 617, 628–29 (3rd Cir.

3   1954)).

4        A trial judge should not order disclosure of grand jury

5   transcripts unless the party seeking them has demonstrated that a

6   "particularized need exists which outweighs the policy of secrecy."

7   United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986)

8   (asterisks omitted) (approving denial of motion to discover grand

9   jury transcripts); see also United States v. Perez, 67 F.3d 1371,

10   1381 (9th Cir. 1995) (same), opinion withdrawn in part on reh'g, 116

11   F.3d 840 (9th Cir. 1997); United States v. Plummer, 941 F.2d 799, 806

12   (9th Cir. 1991) (same).   A particularized need may be present where

13   defendant "shows that a ground may exist to dismiss the indictment

14   because of a matter that occurred before the grand jury."   Fed. R.

15   Crim. P. 6(e)(3)(E).   "The party seeking disclosure must offer more

16   than mere speculation to overcome the policy of grand jury secrecy."

17   Goldstein v. City of Long Beach, 603 F. Supp. 2d 1242, 1254 (C.D.

18   Cal. 2009) (citing Walczak, 783 F.3d at 857).

19       **B.   Defendant Has Failed to Establish That a Ground May Exist
             to Dismiss the Indictment Because of a Matter that Occurred**
20           **Before the Ground Jury**

21       Defendant's apparent argument is that he is entitled to the

22   Grand Jury transcript because there is no way he would have been

23   indicted had the government not "knowingly and/or recklessly

24   presented false, misleading, and material testimony before the grand

25   jury." (Mot. at 2)   His argument is meritless.

26

27

28

1          1.   <u>Defendant Points to No Evidence That Alleged</u>
             <u>Misrepresentations Occurred</u>

2

3          Defendant's precise basis for alleging that misrepresentations

4     were made to the Grand Jury is a mystery, as few of the alleged

5     misrepresentations he identifies appear in the Indictment.   Notably,

6     although culpability is not co-extensive with membership in RAM, the

7     Indictment does not allege that he was a "founding member" of RAM,

8     that co-conspirators "used, or were willing to use weapons" at

9     political rallies, or that he was "not asked by political event

10    organizers" to provide security.

11         Moreover, defendant's challenge to the general allegation about

12    his recruiting activities does not come close to establishing

13    government misconduct that may provide the basis for a motion to

14    dismiss the Indictment.   Notably, defendant does not dispute the four

15    overt acts (Nos. 9, 10, 11, and 23) alleged in Count One that support

16    that general allegation.   Those four overt acts show defendant's text

17    messages to Unindicted Co-Conspirator No. 2 inviting him/her to

18    attend rallies in Berkeley and to engage in "hand to hand and

19    formation fighting training" and "shield and stick training."

20         Likewise, there is no foundation for defendant's spurious

21    argument that the government presented false or misleading

22    information to the Grand Jury about the assault he perpetrated at the

23    April 15, 2017 Berkeley rally or about how RAM presented itself to

24    the public.[2]   Defendant does not dispute that he perpetrated acts of

25    violence at that rally.

26    ───────────────

27         [2] Defendant contends he did not "attack[] victims at various
      political events," but the Indictment specifically alleges that
28    defendant Eason assaulted persons at one event – the April 15, 2017
      Berkeley rally (Overt Act No. 17).

Apparently, however, defendant believes that his acts of violence were justified because they were undertaken in self-defense or to protect speakers, and therefore that the Grand Jury could not have found that those acts of violence constituted an assault unless the government somehow hoodwinked the Grand Jury. As an initial matter, it is axiomatic that self-defense or other purported justifications for violence are issues for trial. In any event, defendant's arguments are undermined by the abundant evidence reflected in discovery. Videos and eyewitness statements show that defendant and the RAM members he recruited and drove to the rally were the first to cross a barrier separating right-wing and left-wing protestors, leading to violent physical altercations. Videos and eyewitness statements also show that defendant and other co-conspirators and other RAM members then pursued their fleeing opponents through the streets of Berkeley, far from any right-wing speakers they were purporting to "protect." After Berkeley, defendant did not seek to separate himself from what had occurred. Instead, he was immediately ready to go fight again, inviting defendant Boman and others days later to go back to Berkeley for another event as "Returning victors" to "deny antifa a face-saving victory," deliver "another shaming," and make them "feel like th[e] SoCal boys OWN their town." In short, defendant's self-serving justification arguments fail to recognize that a grand jury could disagree.

Moreover, defendant has not and cannot in good faith contest that there are numerous examples in the discovery of RAM representing itself "publicly as a combat-ready, militant group of a new nationalist white supremacy and identity movement," as alleged in the

10

Indictment.  One post made by the RAM Instagram account contained the hashtags "#nationalist" and "#rightwingdeathsquad" below the slogan "Activism Athletics Identity."  (Exhibit 1)  Likewise, a photograph posted by the RAM Twitter account showed RAM co-founders and the slogan "White Unity."  (Exhibit 2)  Another photograph posted to that same account showed a man wrapping his fist with tape, as if preparing to fight, while wearing a t-shirt showing two AK-47 rifles and the Roman numerals "XIV," a reference to the 14-word white-nationalist slogan:  "We must secure the existence of our people and a future for White Children."  (Exhibit 3)

Finally, whether defendant acted with intent to incite a riot, or to organize, promote, encourage, participate in, carry on, or commit an act of violence in furtherance of a riot, or to aid and abet others, is an element of the offense, and was an ultimate issue before the Grand Jury, as it will be before the petit jury in this case.  The government has produced ample discovery proving the defendants', including Eason's, illicit intent, criminal conspiracy, and conduct.  That defendant maintains his innocence and argues that the government will be unable prove his intent beyond a reasonable doubt are issues for the trier of fact, and do not come close to the required showing "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E).

In that regard, this case is on all fours with United States v. Stepanyan, Case No. CR 15-0234 CRB, 2016 WL 4398281 (JSC) (N.D. Cal. Aug. 18, 2016).  There, defendant moved for grand jury discovery on the theory that the government would not be able to obtain a conviction on a RICO conspiracy count and, therefore, "the government

1  must have committed some misconduct before the grand jury in

2  obtaining the indictment." _Stepanyan_, 2016 WL 4398281, at *1.

3  Observing that defendant's argument was premised upon "speculation"

4  and his "subjective belief" as to the evidence against him, the

5  district court denied the motion:

> 6  To accept Defendant's argument would mean that any time a
> defendant claims that the government will not be able to
> 7  obtain a conviction on a charge, the defendant is entitled
> to grand jury transcripts to determine if the government
> 8  committed misconduct to obtain the indictment.  The secrecy
> of the grand jury cannot be so easily overcome.

9

10  _Id._ at *2.

11      The district court in _Stepanyan_ further observed that "'only in

12  a flagrant case, and perhaps only where knowing perjury, relating to

13  a material matter, has been presented to the grand jury should the

14  trial judge dismiss an otherwise valid indictment returned by an

15  apparently unbiased grand jury.'" _Id._ at *2 (quoting _United States v._

16  _Kennedy_, 564 F.2d 1329, 1338 (9th Cir. 1977)).  The district court

17  concluded that the defendant had pointed to "nothing that suggests

18  flagrant misconduct, let alone knowing perjury." _Id._  Instead, the

19  defendant had offered "only his own subjective analysis that the

20  government will be unable to meet its burden of proof.  Such

21  speculation does not rise to a 'particularized need.'"  _Id._

22      Likewise here, defendant's request for the Grand Jury transcript

23  is plainly based on his subjective belief that the government will

24  not be able to prove that he committed the crimes alleged in the

25  Indictment.  This subjective belief is insufficient to justify

26  disclosure.  Moreover, defendant has not alleged any facts suggesting

27  "flagrant misconduct" by the government, much less perjury.

28  Accordingly, defendant's motion must fail.

2.   <u>Defendant's Argument that the Government Committed
Misconduct by Allegedly Failing to Present Information
to the Grand Jury Concerning Antifa is Meritless</u>

To the extent that defendant argues that the government failed to present to the Grand Jury potentially exculpatory evidence concerning Antifa, this argument too is wholly unsupported by evidence and based on pure speculation.  Furthermore, even if defendant were correct, the government's decision not to present such evidence would not support a motion to dismiss the Indictment, and therefore is not grounds for disclosure of the Grand Jury transcript under Rule 6(e)(3)(E).  <u>See</u> <u>United States v. Williams</u>, 504 U.S. 36, 51 (1992) ("[R]equiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body."); <u>accord United States v. Manchester Farming P'ship</u>, 315 F.3d 1176, 1185 n.20 (9th Cir. 2003) ("Appellants also claim that the government wrongfully ignored exculpatory evidence when it presented its case to the grand jury.  This argument is foreclosed by <u>United States v. Williams</u> . . . .");  <u>United States v. Isgro</u>, 974 F.2d 1091, 1098 (9th Cir. 1992) ("prosecutors simply have no duty to present exculpatory evidence to grand juries").  "[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence . . . ."  <u>United States v. Calandra</u>, 414 U.S. 338, 345 (1974) (witness before the grand jury may not invoke the Fourth Amendment exclusionary rule to bar questioning based on evidence obtained in an unlawful search and seizure).

1
2

### C. Defendant Has Not Established a Need for the Grand Jury Transcript that Outweighs the Continuing Interest in Grand Jury Secrecy

3        Even assuming defendant had shown a particularized need for the

4   Grand Jury transcript, he has failed to establish that the need for

5   disclosure "is greater than the need for continued secrecy." Douglas

6   Oil Co. of California, 441 U.S. at 222.  As addressed above,

7   defendant's argument that there may be a ground to dismiss the

8   Indictment because of a matter that occurred before the Grand Jury is

9   rank speculation.  Even if, unlike here, defendant could meet his

10  burden, the Court would have to weigh his showing against the

11  possible effect that disclosure of the Grand Jury transcript would

12  have upon the functioning of future grand juries.  See id.  As the

13  Supreme Court explained in Douglas Oil, "[p]ersons called upon to

14  testify will consider the likelihood that their testimony may one day

15  be disclosed to outside parties.  Fear of future retribution or

16  social stigma may act as powerful deterrents to those who would come

17  forward and aid the grand jury in the performance of its duties."

18  This Court should not permit defendant to trample on the continuing

19  interest in grand jury secrecy for the purpose of engaging in a

20  fishing expedition.

21       Dennis v. United States, 384 U.S. 855 (1966), which defendant

22  cites, does not help him.  In Dennis, the Supreme Court held that the

23  trial court committed reversible error by denying a motion for

24  production of the grand jury testimony of four government witnesses

25  at trial.  There is no similar claim here that the government's Grand

26  Jury witness(es) will be trial witnesses.  In any event, the

27  government intends to produce Jencks materials, including any

28

1  testimony transcripts, for its trial witnesses.  <u>Dennis</u> is

2  inapposite.[3]

3  **IV.  CONCLUSION**

4          For the foregoing reasons, defendant has failed to meet his

5  burden to show a particularized need for disclosure, let alone one

6  that warrants piercing the secrecy of the grand jury.  This Court

7  should deny his motion entirely.

8   Dated: January 28, 2019          Respectfully submitted,

9                                    NICOLA T. HANNA
                                     United States Attorney
10
                                     PATRICK R. FITZGERALD
11                                   Assistant United States Attorney
                                     Chief, National Security Division
12

13                                   _____/s/_____
                                     GEORGE E. PENCE
14                                   DAVID T. RYAN
                                     Assistant United States Attorneys
15
                                     Attorneys for Plaintiff
16                                   UNITED STATES OF AMERICA

17

18

19

20

21

22

23

24
    _____
25          [3] Defendant also cites <u>Brady v. Maryland</u>, 373 U.S. 83 (1963),
    which concerns the government's obligation to turn over exculpatory
26  evidence, and <u>Giglio v. United States</u>, 405 U.S. 150 (1972), which
    concerns the government's obligation to turn over evidence relating
27  to the credibility of its witnesses.  (Mot. at 6)  The government
    fully intends to comply with its obligations under those cases,
28  neither of which require disclosure of the Grand Jury transcript
    here.

                                      15

**EXHIBIT 1**



**Photo Id:** 1515493828005399624
**Id** 1515493828005399624
**Taken** 2017-05-15 20:42:44 UTC

**Status**

4 - Deleted by inactivation

**Url** htttps://www.instagram.com/p/BUIHZttjwxI

**Source** iOS Share Extension

**Filter** 0 - Normal

**Upload Ip** 2602:306:bc5a:8170:919e:58cb:2eb2:4b1a

**Is Published** true

**Shared By** false

**Author**

**Comments**

**User** rise_above_movement (4931962208) [RISE ABOVE MOVEMENT]

**Id** 17857223680149894

**Date Created** 2017-05-15 20:43:17 UTC

**Text** #workout #nationalist #calisthenics #maga #rightwingdeathsquad #altright #antiantifa #rightwing #basedelbowman

**User** ███████████████████

**Id** 17881366168043895

**Date Created** 2017-05-15 21:13:59 UTC

**Status** 0

**Text** ☐☐☐

**Image**

**EXHIBIT 2**



# EXHIBIT 3

