ANDREW ALLEN (Bar No. 6997)
83 Beach Road
Belvedere, CA 94920
Telephone: 415-435-2439
Email: Merlin299@AOL.com



FILED
CLERK, U.S. DISTRICT COURT

MAY − 8 2019

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　PLAINTIFF<br><br>　　vs.<br><br>ROBERT RUNDO,<br><br>ROBERT BOMAN,<br><br>AARON EASON,<br><br>TYLER LAUBE,<br><br>DEFENDANTS | CASE NO.:  CR 18-759-CJC<br><br><br>THE FREE EXPRESSION FOUNDATION, INC.'S APPLICATION FOR LEAVE TO FILE AMICUS CURIAE BRIEF |

The Free Expression Foundation, Inc. ("FEF"), by and through counsel Andrew Allen, respectfully requests leave to file an an amicus brief in support of the motion to dismiss indictment filed by defendants Robert Rundo, Robert Boman, and Aaron Eason.

FEF is a fledgling 501c3 nonprofit dedicated to providing legal support for persons that have suffered legal, financial, or social harm as a result of the exercise or attempted exercise of their rights of free expression, including their rights under the First Amendment. By fulfilling its mission, and specifically by submitting amicus curiae briefs in key cases, FEF seeks to highlight and combat the growing threats to free expression and freedom of assembly that

have arisen in contemporary America -- a cultural milieu increasingly beset by polarized

viewpoints, invasive technology, disregard for the rule of law, and the breakdown of dialogue.

Aspiring to protect the "uninhibited, robust, and wide open" debate on public issues that seminal

First Amendment jurisprudence has articulated, FEF is particularly concerned about statutes,

such as the Anti-Riot Act, that jeopardize both free speech and freedom of assembly.

In preparing the proposed amicus brief that accompanies this request for leave as

Exhibit A, FEF has reviewed the filings of the parties and has endeavored to address issues

raised by the pleadings without making redundant arguments, as well as to offer a unique

perspective on the issues raised by this case.

Counsel for FEF has conferred with counsel for the defendants who have filed the

motion to dismiss and with the government with regard to FEF's proposed amicus brief.  Counsel

for the defendants do not object to the filing of the brief.     Counsel for the government does

object.

Respectfully submitted,

Andrew Allen, Esq.
(Bar No. 69967 )
83 Beach Road
Belvedere, California 94920
Telephone number:  415-435-2439
Email :  Merlin299@AOL.com
Attorney for Proposed Amicus The Free
Expression Foundation, Inc.

Dated:  May 7, 2019

## CERTIFICATE OF SERVICE

I certify that on May 7, 2019, I sent this Application for Leave to File Amicus brief, with its Exhibit A and a proposed order, by email and by regular mail to all counsel of record.

Andrew Allen

Andrew Allen

EXHIBIT A

**ANDREW ALLEN** (Bar No. 69967 )
83 Beach Road
Belvedere, California 94920
Telephone number: 415-435-2439
Email : Merlin299@AOL.com

Attorney for Proposed Amicus The Free Expression Foundation, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. CR 18-759-CJC |
| Plaintiff, | |
| v. | **BRIEF OF AMICUS CURIAE THE FREE EXPRESSION FOUNDATION, INC.** |
| ROBERT RUNDO, | **IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE INDICTMENT** |
| ROBERT BOMAN, | |
| AARON EASON, and | |
| TYLER LAUBE, | |
| Defendants. | |

FEF AMICUS BRIEF

The Free Expression Foundation, Inc. ("FEF"), respectfully submits this brief as amicus curiae in support of the Motion to Dismiss the Government's Indictment filed by defendants Robert Rundo, Aaron Eason, and Tyler Laube.

## STATEMENT OF INTEREST

The Free Expression Foundation, Inc. ("FEF") is a fledgling 501c3 nonprofit dedicated to providing legal support for persons that have suffered legal, financial, or social harm as a result of the exercise or attempted exercise of their rights of free expression, including their rights under the First Amendment. By fulfilling its mission, and specifically by submitting amicus curiae briefs in key cases, FEF seeks to highlight and combat the growing threats to free expression and freedom of assembly that have arisen in contemporary America -- a cultural milieu increasingly beset by polarized viewpoints, invasive technology, disregard for the rule of law, and the breakdown of dialogue. Aspiring to protect the "uninhibited, robust, and wide open" debate on public issues that seminal First Amendment jurisprudence has articulated, FEF is particularly concerned about statutes, such as the Anti-Riot Act, that jeopardize both free speech and freedom of assembly.

## ARGUMENT

### I.  The Anti-Riot Act Violates First Amendment Protections of Free Speech.

Defendants, in their motion to dismiss, argue that the statutes are facially overbroad because they regulate a substantial amount of protected speech and assembly. FEF concurs and cites *United States v. Williams*, 553 U.S. 285 (2008) as providing a road map to the application of the First Amendment overbreadth doctrine. As the Supreme Court stated in *Williams*:

FEF AMICUS BRIEF

According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech. The doctrine seeks to strike a balance between competing social costs. *Virginia v. Hicks*, _539 U. S. 113_, 119–120 (2003). On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfect-ly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects. In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.

The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute cov-ers.

553 U.S. at 296.

Analysis under *Williams*, accordingly, consists of several steps: reviewing the purpose of the challenged statute, reviewing the plainly legitimate sweep of the statute, reviewing the harmful effects of invalidating a law, reviewing the effects of the law on protected speech, and then, if the prohibition of protected speech is substantial, balancing the competing social costs. This analy-sis follows:

**(A)**

**The Anti-Riot Act Covers Acts that Might Lead to Riots**

As the Seventh Circuit stated in *U.S. v. Dellinger*, 472 F.2d 340, 357-58 (7th Cir. 1972):

As to the Anti-riot Act, the government at times argues that travel with intent and not expression is the "gravamen of the offense" and that, therefore, the doctrines of the first amendment are not relevant to our determination of constitutionality. We are unable to accept this argument . . . It is by expression, in whatever form, that causation adequate to bring on punishment must be most likely to occur.

FEF AMICUS BRIEF

The Anti-Riot Act thus covers the holding of an *intent* to commit any of a range of acts (mainly communication but also organizational) which might lead to a "riot." The Act specifically covers assemblies of three or more people.

**(B)**

**The Act's Inhibition on the Free Exchange of Ideas Overwhelms Its Legitimate Scope**

As Defendants have pointed out, the Anti-Riot Act was passed in 1968 to give the federal government a tool to respond to the civil rights and anti-war protests of the 1960s. The government emphasizes violence as the basis of the Act. However, FEF points out that the prohibited act is not committing an act of violence but *the holding of an intent* while crossing a state line or using "any facility of interstate or foreign commerce or including, but not limited to, the mail, telegraph, telephone, radio, or television," followed at some time by an overt act.

Further, the mail, telegraph, telephone, radio, and television are not venues for rioting or violence itself but only for communication. While controlling violence at political assemblies is a legitimate goal, the "sweep" of the Anti-Riot Act was to control "pre-riot communications which led to riots by controlling the intent of citizens as they crossed state lines. There is no other subject of the Act's sweep. The overbreadth of this sweep on protected speech is discussed in Defendants' Motion to Dismiss the Indictment pages 6 through 11.

**(C)**

**Invalidating the Anti-Riot Act Will Have Few or No Harmful Social Costs.**

The Anti-Riot Act has been invoked only twice in the last 40 years. It is an unused, unnecessary, and problematic law which, in this case, has involved federal intervention in scuffles be-

FEF AMICUS BRIEF

tween various political groups at legal assemblies held in California. The annulment of the Act would not leave any gap in the ability of the government to punish rioters. California itself has Penal Code §404 and §405. The Federal government has the alternatives of actions under Title 18, U.S.C., Section 241 - Conspiracy Against Rights, Title 18, U.S.C., Section 249 Hate Crimes Prevention Act, and 42 U.S.C 1985 (3).

In conclusion, while invalidating a federal law is a serious step for a court, the application of the required *Williams* analysis shows that the Anti-Riot Act is unconstitutionally infirm under the overbreadth doctrine.

## II.   The Anti-Riot Act Violates Also Violates First Amendment Protected Rights of Assembly.

Defendants have discussed the adverse impact of the Anti-Riot Act on the right to peaceably assembly with their discussion of the Heckler's Veto Doctrine.  FEF concurs but further observes that the injurious impact of the Anti-Riot Act on the First Amendment right to assemble and associate must also be considered in a balancing of competing social costs.

The Supreme Court has stated regarding Freedom of Assembly:

The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances [citing *United States v. Cruikshank*,].... It follows from these considerations that, consistently with the Federal Constitution, peaceable assembly for lawful discussion cannot be made a crime. The holding of meetings for peaceable political action cannot be proscribed. Those who assist in the conduct of such meetings cannot be branded as criminals on that score.

*De Jonge v. Oregon*, 299 U.S. 353, 364, 365 (193

The Anti-Riot Act adversely affects the right to hold assemblies because it makes the organizers liable for the acts of third parties:

FEF AMICUS BRIEF

In many of its provisions (incite, organize, promote, encourage) the anti-riot statute relates to persons causing the possibility that others will riot, and makes those persons liable because of their causal rather than active role.

*Dellinger*, 472 F. 2d at 360.  Further:

Debate reflected a belief, at least on the part of some, that the riots just did not happen spontaneously but were the planned work of professional agitators whose home bases frequently did not coincide with the geographical state of the occurrence.

*Dellinger*, 472 F.2d at 410.

Congress in the Anti-Riot Act failed to consider that the "others" "incited" to riot might not be part of the legal assembly but would be aggressive counterprotestors.   The definition of "riot" in 18 U.S.C § 2102 is consequently far too broad:  "As used in this chapter, the term "riot" means a public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons."   This definition of riot does not have a requirement that the three people are acting in accord with the organizer of the assembly. The saving clause of § 2102(b) only refers to "urging or instigating other persons to riot."

The criminal liability of the organizer devolves into a question of intent to incite a riot under 18 U.S.C. §2101 (a)(1).  The Act leaves open the question of when an organizer has the requisite "intent" to incite, organize, promote, encourage, abet or instigate a riot (given some use of a facility of interstate commerce).  To give examples, a rally in San Francisco (or Berkeley) in support of Donald Trump, could (and did) provoke action by Antifa types to block or disrupt the assembly. Confrontations would occur, certainly "threats of damage to property," and probably violence. What attorney would advise a client organization to hold such an assembly?   The Act leaves the question impermissibly open in a manner that significantly chills the right to hold legal assemblies.

FEF AMICUS BRIEF

### III.   The Anti-Riot Act Cannot Be Narrowly Construed to Sustain Its Constitutionality.

The Anti-Riot Act is intrinsically about prohibiting communications. 18 U.S.C. §2101 (a) (1), (2), and (4) each list proscribed acts of communication relating to a riot: incite, promote, and encourage. 18 U.S.C. §2102 (b) reads: "As used in this chapter, the term "to incite a riot", or "to organize, promote, encourage, participate in, or carry on a riot", includes, but is not limited to, urging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts."

Congress appears to have taken the "I can't define it but I know it when I see it" approach to its prohibitions on inflammatory speech. Section 2102(b) seems to have been added as a savings clause excluding some communications from prosecution. The trouble is that the savings clause saves far too little. In the 50 years since *Dellinger* was argued, the Supreme Court has expanded protected speech beyond mere oral and written expressions with *Texas v. Johnson*, 491 U.S. 397 (1989) (flag burning); *Cohen v. California*, 403 U.S 15 (1971) (wearing a F*** the Draft jacket to court); *R.A.V v. City of St. Paul*, 505 U.S. 377 (1992) (burning a cross). First Amendment protection has also been extended in certain cases to assertions of the rightness of, or the right to commit acts of violence) ; *NAACP v. Claiborn*, 458 U.S. 886 (1982); and *Hess v. Indiana*, 414 U.S. 105 (1973) (reaffirming the imminent lawless action test first articulated in *Brandenburg v. Ohio*). Section 2102(b) thus has the effect of locking in an obsolete definition of permitted speech that taints all provisions of the Act that relate to communications.

FEF AMICUS BRIEF

**CONCLUSION**

The application of *Williams* to the Anti-Riot Act should include consideration of impacts on First Amendment protected rights of assembly and association. The Act regulates a substantial amount of protected speech and assembly and there is no counterbalancing sociality benefit in the Act itself. There is no way to save the Act by judicial construction.

Congress spread its net far too widely when hastily drafting the Anti-Riot Act in 1968. From the outset it has been unconstitutional, in light of its vagueness, overbreadth, and conflicts with the heckler's veto doctrine and other First Amendment doctrines. But its defects have become even more manifest in the last 50 years, given recent Supreme Court rulings on protected expression. Congress did not consider that its definition of riot was too broad, that its imposition of liability was too expansive, or that its definition of intent was too amorphous and inclusive, all to the effect of denying First Amendment protections to marginal groups most in need of them. For these reasons and the reasons set forth in the defendants' motion to dismiss, FEF urges that the defendants' motion be granted.

Respectfully submitted,

/s/ Andrew Allen

Andrew Allen
Attorney for The Free Expression
Foundation

Dated:  May 6, 2019

FEF AMICUS BRIEF

1  **ANDREW ALLEN (Bar No. 69967)**
   83 Beach Road
2  Belvedere, CA 94920
   Telephone: 415-435-2439
3  Email: Merline299@aol.com

4                    **UNITED STATES DISTRICT COURT**

5                    **CENTRAL DISTRICT OF CALIFORNIA**

6                              **WESTERN DIVISION**

7

8  UNITED STATES OF AMERICA                **CASE NO.: CR 18-759-CJC**

              Plaintiff,
9
   vs.
10                                          **THE FREE EXPRESSION FOUNDATION, INC'S**
                                            **APPLICATION FOR LEAVE TO FILE AMICUS**
   ROBERT RUNDO,                            **CURIAE BRIEF**
11
   ROBERT BOMAN,
12
   AARON EASON, and
13
   TYLER LAUBE
14
              Defendants
15

16

17                                    **ORDER**

18

19          Having considered the application of The Free Expression Foundation, Inc. to file

20  an amicus curiae brief in support of the defendants' motion to dismiss the indictment, and any

    opposition thereto, it is this _____ day of _____, 2019, hereby ORDERED that the application

21  is Granted / Denied.

22

23                                   _____

24

                                     Hon. Cormac J. Carney, District Court Judge
25

26

27

28  _____

    ORDER