1  HILARY POTASHNER (Bar No. 167060)
   Federal Public Defender
2  JULIA DEIXLER (Bar No. 301954)
   (E-Mail: julia_deixler@fd.org)
3  Deputy Federal Public Defender
   321 East 2nd Street
4  Los Angeles, California 90012-4202
   Telephone: (213) 894-2854
5  Facsimile: (213) 894-0081

6  Attorneys for Defendant
   ROBERT RUNDO

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11

12  UNITED STATES OF AMERICA,          Case No. CR 18-759-CJC

13              Plaintiff,

14         v.                          **DEFENDANTS ROBERT RUNDO,
                                        ROBERT BOMAN, AND AARON
15                                      EASON'S JOINT REPLY IN
   ROBERT RUNDO,                        SUPPORT OF MOTION TO
16  ROBERT BOMAN,                       DISMISS THE INDICTMENT**
   AARON EASON, and
17  TYLER LAUBE,                        Hearing Date:   June 3, 2019
                                        Hearing Time:   2:00 p.m.
18              Defendants.

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ......................................................................................................2

    A.    The Court Should Not Consider the Plea Agreements Attached as Exhibits to the Government's Opposition Brief. ...........................................2

    B.    Count Two Must be Dismissed Because the Anti-Riot Act is Unconstitutionally Overbroad...........................................................................2

    C.    Count Two Must Be Dismissed Because the Anti-Riot Act is Unconstitutionally Vague...........................................................................8

        1.    *The Statute is Void for Vagueness.* ...................................................8

        2.    *The Statute is Unconstitutionally Vague as Applied to Defendants.* .......................................................................................12

    D.    The Allegations in Count Two Are Insufficient to Establish that Defendants Violated the Anti-Riot Act......................................................13

III. CONCLUSION.................................................................................................15

i

# T ABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969)..................................................................4, 6

*United States v. Buckley*,
   689 F.2d 893 (9th Cir. 1982) ...................................................2

*United States v. Caicedo*,
   47 F.3d 370 (9th Cir.1995) ......................................................2

*United States v. Daley*,
   18-CR-00025-NKM, 2019 WL 1951586 (W.D. Va. May 2, 2019).......................1, 8

*United States v. Dellinger*,
   472 F.2d 340 (7th Cir. 1972) ........................................1, 2, 5, 12

*United States v. Fernandez*,
   388 F.3d 1199 (9th Cir. 2004) .................................................14

*Giaccio v. Pennsylvania*,
   382 U.S. 399 (1966)............................................................11

*United States v. Jensen*,
   93 F.3d 667 (9th Cir. 1996) ....................................................2

*Johnson v. United States*,
   135 S. Ct. 2551 (2015)..........................................................9

*United States v. Lane*,
   765 F.2d 1376 (9th Cir. 1985) .............................................13, 14

*United States v. Markiewicz*,
   978 F.2d 786 (2d Cir. 1992) ...................................................14

*Reno v. ACLU*,
   521 U.S. 844 (1997)............................................................8

*Session v. Dimaya*,
   138 S. Ct. 1204 (2018).........................................................9

*In re Shead*,
   302 F. Supp. 560 (N.D. Cal. 1969).............................................6

ii

# T ABLE OF AUTHORITIES

Page(s)

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982)....................................................................9, 11

*United States v. Williams*,
    553 U.S. 285 (2008).........................................................................3

**Federal Statutes**

18 U.S.C. § 113 .........................................................................................8

18 U.S.C. § 231 .........................................................................................8

18 U.S.C. § 241 .........................................................................................8

18 U.S.C. § 249 .........................................................................................8

18 U.S.C. § 1951 .....................................................................................14

18 U.S.C. § 2101 .......................................................................................3

18 U.S.C. § 2102 .....................................................................................10

42 U.S.C. § 1985 .......................................................................................8

**State Statutes**

Cal. Pen. Code § 404 ................................................................................8

Cal. Pen. Code § 404(a) .........................................................................10

Cal. Pen. Code § 405 ................................................................................8

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ...............................................10

# I.   INTRODUCTION

Despite the government's bold declarations, the case law interpreting the Anti-Riot Act is far from settled.  The so-called "long and unbroken" line of cases upholding the statute amounts to fewer than ten cases, none of which are binding precedent on this Court.  Until a few weeks ago, no case interpreting the Act dated later than 1992.[1]  In the leading case applying the statute, *United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972), *cert. denied*, 410 U.S. 970 (1973), the Seventh Circuit recognized "the first amendment problems presented on the face of the statute" and only upheld the Act after "acknowledg[ing] the case is close."  *Id*. at 362.  But in the 51 years since the Anti-Riot Act's passage, First Amendment jurisprudence has changed dramatically.  So too has our understanding of the meaning of "facilities of interstate or foreign commerce."  Since the invention and permeation of cellphones and the internet, in the present era hardly an hour passes in the day when the ordinary American citizen goes without using a facility of interstate commerce.  The Anti-Riot Act's focus is therefore anything but narrow.  In this context, to uphold the statute would be to hold that a single text message, Facebook post, or swipe of a credit card could constitute a federal offense, even without any immediate connection to violent activity.  It would require a stretch of federal jurisdiction beyond recognition.

In its opposition brief, the government attempts to avoid the clear First Amendment and Due Process issues presented by the statute by focusing on the governmental interest in regulating violence and comparing it to similar statutes that do the same.  But the Anti-Riot Act does not actually prohibit violence.  It prohibits holding a particular intent while using one of the facilities of interstate commerce that now permeate our lives in a near constant fashion.  In so doing, it chills a substantial

---

[1] United States District Judge Norman K. Moon recently issued an order denying the defendants' motion to dismiss and upholding the Anti-Riot Act in *United States v. Daley*, 18-CR-00025-NKM, 2019 WL 1951586 (W.D. Va. May 2, 2019).

1

amount of protected speech, association, and assembly.  After 51 years of infrequent application, it is clear that the social good promoted by the Act is far outweighed by its perilous infringement on Due Process and the First Amendment.  The Anti-Riot Act is not just outdated, it is unconstitutional.

## II.  ARGUMENT

### A.     The Court Should Not Consider the Plea Agreements Attached as Exhibits to the Government's Opposition Brief.

As an initial matter, the government improperly and inexplicably attaches plea agreements from the defendants in *United States v. Daley* to its opposition brief.  The guilty pleas entered by defendants in a separate case—charged with separate conduct at a separate political rally—have no bearing on the legal issues raised in Defendants' motion here.[2]  The Court should disregard these guilty pleas in consideration of the constitutionality of the Anti-Riot Act and the sufficiency of the government's charges against Mr. Rundo, Mr. Boman, and Mr. Eason.  In ruling on a pre-trial motion to dismiss for failure to state an offense, the district court is bound by the four corners of the indictment.  *See United States v. Jensen,* 93 F.3d 667, 669 (9th Cir. 1996); *United States v. Caicedo*, 47 F.3d 370, 371 (9th Cir. 1995); *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982).

### B.     Count Two Must be Dismissed Because the Anti-Riot Act is Unconstitutionally Overbroad.

The government seeks to distract from the clear "first amendment problems presented on the face of this statute," *Dellinger*, 472 F.2d at 362, by arguing that the Anti-Riot Act "prohibits only violence, true threats of violence, and the advocacy of

---

[2] Further, and as the government is well aware, none of the defendants in *Daley* concedes the Anti-Riot Act's constitutionality by pleading guilty.  To the contrary, each defendant explicitly preserved his right to appeal the order issued by the District Court on the motion to dismiss.  *See* Opp. Ex. 3 at 7; Ex. 4 at 7; Ex. 5 at 7.

violence where such advocacy is directed to inciting or producing imminent lawless action and is likely to produce such action," Opp. 1-2.  But the Act does not actually prohibit violence.  It prohibits holding a particular intent—to plan, promote, or encourage future conduct that may or may not occur and that may or may not result in violence—while using a facility of interstate commerce, and subsequently performing some overt act that may, standing alone, constitute wholly legal conduct.  The broad sweep of the Anti-Riot Act includes a substantial amount of protected speech, expression, and assembly.

In *United States v. Williams*, 553 U.S. 285 (2008) the Supreme Court set forth a framework to determine whether a statute regulates a "substantial amount" of protected speech and is thus unconstitutionally overbroad.  The purpose of the test is to "strike a balance between competing social costs" to both promote the rule of law and avoid laws that "deter people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas." *Id*. at 291 (citing *Virginia v. Hicks*, 539 U.S. 113, 119-120 (2003)).  First, courts must "construe" the statute to determine what it covers. *Williams*, 553 U.S. at 293.  Second, courts should evaluate whether the statute "criminalizes a substantial amount of protected expressive activity" against the statute's "plainly legitimate sweep." *Id*. at 292.  Finally, courts should balance the competing social costs associated with either upholding or invalidating the statute.

First, the Court must construe the statute's scope.  The Anti-Riot Act makes it a crime to travel in interstate commerce or use a facility of interstate commerce "with the intent to incite, organize, promote and encourage a riot," and thereafter either perform or attempt to perform any other overt act for such purposes.  18 U.S.C. § 2101.  The Act plainly does not require an actual riot for prosecution.  Nor does it require that any violence, attempted violence, property damage, or attempted property damage occur.  All that is required for prosecution is the use of the phone or internet with an unlawful intent, followed by *any* overt act or *attempted* overt act with an unlawful intent.  The

3

Act also specifically excludes "the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts." 18 U.S.C. § 2101(b). Although this limiting clause releases some protected speech from the statute's grasp, it notably provides no protection for assembly, association, and expressive conduct that is not "written or oral."

Second, the Court must determine whether the Anti-Riot Act criminalizes a "substantial amount" of protected speech, association, and assembly. As explained in Defendants' motion, the Act proscribes a substantial amount of speech and assembly outside of the categorical exclusion from First Amendment protection. The government argues that all conduct prohibited by the Act is outside of First Amendment protection because the definition of riot "prohibits only violence, true threats of violence, and the advocacy of violence where such advocacy is directed to inciting or producing imminent lawless action and is likely to produce such action." Opp. at 1-2. But as Defendants' motion explained, the Act violates *Brandenburg* because that clause falls short of the definition of incitement. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). Under *Brandenburg*, speech is protected unless it is: (1) "directed to inciting or producing imminent lawless action," and (2) "likely to incite or produce such action." *Id.* In the present Indictment alone, there are countless examples of speech that the government contends evidence organizing, promoting, or encouraging a riot that took place so long before or so long after any assembly occurred that they could neither be "directed at" nor "likely to incite" *imminent* lawless action. *See* Mot. at 17-18. The Act is also overbroad because it could apply to individuals inciting or encouraging others to riot without concerted action. In drafting the Anti-Riot Act, Congress failed to consider that the "others" "incited" to riot might not be part of the legal assembly but rather aggressive counter-protestors. The definition of

4

"riot" is consequently overbroad because it does not require that the three people forming the assembly act in accord with its organizer.

Further, the attenuation between the prohibited conduct and an act or threat of imminent violence violates *Brandenburg* and permits the prosecution of protected activity. The government asserts that there is no such concern because "the statute requires that a defendant act with the riotous intent both at the time of the interstate travel or use of facility of interstate commerce, and again when committing an overt act in furtherance of the riot." Opp. at 10-11 (citing *United States v. Hoffman*, 334 F. Supp. 504, 509 (D.D.C. 1971)). But that explanation fails to address the core attenuation problem with the statute, which is the lack of "causal relationship between the travel with intent and the riot actually incited," as well as the lack of "time limitation as to when the overt act shall take place with relationship to the travel." *Dellinger*, 472 F.2d at 414 (Pell, J. dissenting). Subsection (b) of the statute, which discusses the evidence admissible to establish proof of the interstate commerce element, highlights this problem. That subsection states:

> In any prosecution under this section, proof that a defendant engaged or attempted to engage in one or more of the overt acts described in subparagraph (A), (B), (C), or (D)[3] of paragraph (1) of subsection (a) and (1) *has traveled* in interstate or foreign commerce, or (2) *has use of or used* any facility of interstate or foreign commerce, including but not limited to, mail, telegraph, telephone, radio, or television, *to communicate with or broadcast to any person or group of persons prior to such overt acts*, such travel or use shall be admissible proof to establish that such defendant traveled in or used such facility of interstate or foreign commerce.

18 U.S.C. § 2101(b) (emphasis added). The plain reading of this section sweeps in an untenably broad amount of protected speech. It delinks the specific riotous intent from the use of facilities of interstate commerce, and suggests that *any* use of the internet or

---

[3] So in original. This sentence should probably read "paragraph (1), (2), (3), or (4) of subsection (a)."

phone "to communicate with or broadcast to *any* person" is admissible to establish the interstate commerce element, so long as such communication occurs any time "prior to" an overt act in furtherance of a riot. Even assuming that such communications directly relate to the overt act—which is not mandated by the plain meaning of the text—the passage of time permitted under the statute ensures that it could be applied to a substantial amount of speech and assembly that does not incite "imminent lawless action." *Brandenburg*, 395 U.S. at 448-49.

The government attempts to salvage the statute by relying on the same flawed reasoning as the court in *In re Shead*, which proposed that "[i]f the disturbances promoted or threatened constitute a clear and present danger, the overt acts themselves which are committed for that purpose, necessarily must also constitute a clear and present danger." *In re Shead*, 302 F. Supp. 560, 565 (N.D. Cal. 1969). But that is not even how the government has applied the statute in its own indictment. Instead, it charges Defendants with the innocuous overt acts of renting a van with a credit card and sending text messages to one another weeks before the Berkeley political rally about a lawful assembly. *See* Dkt. 47. None of these acts can reasonably be thought to pose an *imminent* threat of violent or lawless conduct.

Finally, the Court must balance the competing social costs of upholding the statute against invalidating it. The government contends that the purpose the Act serves is to "prevent[] public disturbances, in particular those involving interstate travel or the use of facilities of interstate commerce." Opp. at 6. The Act was intended as a tool to respond to the Civil Rights Movement and anti-Vietnam War protests of the 1960s, with a stated purpose of preventing violence and property damage. But the Act is not narrowly tailored to serve these interests, because it criminalizes conduct that need not result in violence, property damage, or even attempted violence or property damage. An actual public disturbance need not occur to be prosecuted. The government's claim that the intent element is tailored to apply only to the "intent to undertake acts of

violence in furtherance of a riot or to incite or instigate a riot" thus mischaracterizes the scope of the statute. Opp. at 7. The Act also criminalizes the intent to organize or encourage a riot that need not actually result in violence or property damage and need not even occur at all.

The purported "legitimate sweep" of the Anti-Riot Act is thus unrelated to the regulation of violence and instead focused on the regulation of pre-"riot" communications and activities through the facilities of interstate commerce. These facilities are the means by which Congress extended federal jurisdiction over intrastate conduct that would otherwise be left to the jurisdiction of local law enforcement. But the mail, internet, television, phone, and radio are not venues for rioting or violence themselves, but rather for communication. The Act's sweep is overbroad because it chills lawful expression across these facilities of communication. And because the Act also criminalizes the provocation of *others* to act, it chills a substantial amount of lawful association and assembly, as well. In the current era, political events are nearly certain to attract counter-protestors who will try to shut them down. The Act calls into question whether attendees at such rallies have a right to defend themselves if attacked, or whether such acts evidence an intent to riot. Conflicts at political rallies provoked by adverse groups are not only foreseeable but are inevitable in today's political climate. As long as feuding factions continue to seek to stifle the speech and assembly of the groups that they oppose, the Anti-Riot Act will not stop the inevitable. Enforcement of the law is also likely to lead to severe infringement on privacy, where everything one writes, says, or views through a facility of interstate commerce is subject to review and potential criminal prosecution.

The social costs of upholding the statute far outweigh the costs of striking it down. Invalidating the Anti-Riot Act would in no way limit the authority of federal and local law enforcement to protect against violence or public disturbances in a manner that does not substantially infringe on the freedoms of speech and assembly.

7

*See, e.g.*, Cal. Pen. Code § 404 (incitement of a riot); Cal. Pen. Code § 405 (participation in a riot); 18 U.S.C. § 241 (conspiracy to "injure, oppress, threaten, or intimidate" any person in the free exercise or enjoyment of rights); 18 U.S.C. § 249 (hate crime acts); 42 U.S.C. § 1985 (conspiracy to interfere with civil rights); 18 U.S.C. § 113 (assault crimes); 18 U.S.C. § 231 (civil disorders).  The potential "harmful effects" of invalidating the Anti-Riot Act are therefore minimal, and are plainly outweighed by the real and apparent infringement of First Amendment rights.

**C.   Count Two Must Be Dismissed Because the Anti-Riot Act is Unconstitutionally Vague.**

      1.   *The Statute is Void for Vagueness*.

Defendants' motion explained that the Anti-Riot Act is void for vagueness based on both the definition of the term "riot" and the intent element.  In response, the government first asserts that Defendants cannot challenge the "threats" prong of the definition of "riot" because Defendants "are charged for their roles in riots that involved actual violence, not mere threats of violence."  Opp. at 13 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010)).  This is an incorrect application of *Humanitarian Law Project* that was recently rejected by the district court in *Daley*.  In the First Amendment context, "the Supreme Court has 'relaxed'" the requirement that vagueness challenges must be "examined in the light of the facts of the case at hand." *Daley*, 2019 WL 1951586, at *4 n.5 (quoting *Williams*, 553 U.S. at 304 (noting that overbreadth challenges are permitted in the First Amendment context but nonetheless analyzing whether the statue at issue was impermissibly vague)) (and quoting *Village of Hoffman Estates*, 455 U.S. at 495, n.7); *see also Reno v. ACLU*, 521 U.S. 844, 870–74 (1997) (analyzing whether the Communications Decency Act (CDA) was impermissibly vague in part because of "special First Amendment concerns" and in part because "the CDA is a criminal statute").  The Court may consider a facial vagueness challenge to the Act, which is unconstitutionally vague in two respects.

a.   <u>The Term "Riot" is Impermissibly Vague</u>.

Defendants' motion explained that the definition of "riot" renders the statute impermissibly vague because it fails to adequately define conduct that constitutes a threat of an act of violence that can be immediately executed.  *See* 18 U.S.C. § 2102(a). The government's arguments in response fail on several grounds.  First, the government wholly ignores the recent rulings in *Johnson v. United States* and *Sessions v. Dimaya* that struck down similar language on vagueness grounds.  *See Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551 (2015); *Session v. Dimaya*, 584 U.S. __, 138 S. Ct. 1204 (2018).  Specifically, the Supreme Court invalidated the "residual clause" of the violent felony definition under the Armed Career Criminal Act, which defined as a violent felony one that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  The Court held that the residual clause "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony."  *Johnson*, 135 S. Ct. at 2558.

Here too, the Anti-Riot Act leaves uncertainty to both defendants and law enforcement as to what conduct may result in a threat of an act of violence "where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual."  18 U.S.C. § 2102(a).  The Anti-Riot Act should be held to an even more rigorous level of scrutiny than the definition at issue in *Johnson* and *Dimaya* because it infringes on the rights to free expression and association.  *See Village of Hoffman Estates*, 455 U.S. at 499 ("[P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights.  If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.").

9

1    Second, the government contends that the term "riot" is well-defined in the

2    statute and has a settled legal meaning based on other sources, including Black's Law

3    Dictionary.  *See* Opp. at 14 (quoting *Daley*, 2019 WL 1951586 at *5).  But alternative

4    definitions of "riot" differ from the Act in a key respect:  they require that the persons

5    forming an assemblage large enough to constitute a "riot" are the same persons that

6    take concerted action to cause the riot.  Black's Law Dictionary defines riot as "(1) An

7    assemblage of three or more persons in a public space *taking concerted action* in a

8    turbulent and disorderly manner *for a common purpose* . . . [or] (2) "An unlawful

9    disturbance of the peace by an assemblage of usu. three or more persons *acting with a*

10   *common purpose* in a violent or tumultuous manner that threatens or terrorizes the

11   public or an institution."  (Black's Law Dictionary (10th ed. 2014) (emphasis added)).

12   Similarly, California's rioting statute defines a riot as "[a]ny use of force or violence,

13   disturbing the public peace, or any threat to use force or violence, if accompanied by

14   immediate power of execution, *by two or more persons acting together*, and without

15   authority of law."  Cal. Pen. Code § 404(a) (emphasis added).  The scienter requirement

16   under California's incitement statute is "to *cause* a riot," *id*. at § 404.6, and

17   "participation in a riot" is charged under a separate section, *id*. at § 405.

18       Conversely, a riot as defined under the Anti-Riot Act requires only an act of

19   violence or threat of the commission of the act of violence "by one or more persons part

20   of an assemblage of three or more persons."  18 U.S.C. § 2102.  The defendant charged

21   with violating the statute by possessing the intent to organize, promote, encourage, or

22   even incite or participate in a riot need not be the same person who threatens to commit

23   an act of violence in an assemblage of more than three people (if such an assemblage

24   even occurs).  Thus, in a substantial number of applications the statute requires the

25   assessment of the ability of *third parties* (or hypothetical third parties for a riot that

26   does not occur) to immediately execute on a threat, even though the intent of those third

27   parties is outside of the elements of the statute.

28

                                        10

Third, the litany of assault statutes cited by the government requiring "proof that an individual had the ability to carry out a threat" is inapposite for a similar reason. *See* Opp. at 14-15. Those statutes all require the threat of force to occur concurrently with the commission of a specific and clearly-defined *actus reus*. The Anti-Riot Act, conversely, does not criminalize rioting itself, but rather the use of facilities of interstate commerce with the intent to incite or organize a riot before it occurs. The threat of violence does not result directly from the use of facilities of interstate commerce or the subsequent overt act; all that is required at the time of those acts is an intent to encourage or plan for a future public disturbance that presents a threat that, if acted upon, would constitute a clear and present danger of injury to person or property. *See* 18 U.S.C. §§ 2101, 2102. The meaning of the "threat" in this context is so convoluted, standardless, and remote from the actual prohibited conduct that it leaves the public uncertain as to what is prohibited. *See Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966).

### b. The Intent Element is Impermissibly Vague.

The Anti-Riot Act is also facially vague based on its overly broad element of intent. Although in some cases, a scienter requirement may mitigate a law's vagueness, *see Village of Hoffman Estates*, 455 U.S. at 498, here it only compounds the problem. Individually, the terms "incite," "organize," "promote," "encourage," "participate in," or "carry on" may each possess a discernible definition in ordinary usage. But when taken together, and when applied to the extraordinarily broad *actus reus* of the "use of a facility of interstate commerce" and "any other overt act," the terms are so unspecific that no ordinary person could determine their scope. Take as an example a person who had no intention of attending the April 15, 2017 Berkeley political rally, but wishes to tell her social media followers about the event and believes that violence is likely to occur there. She posts the date and location of the rally on her social media profile (using a facility of interstate commerce). She later posts that her followers should

11

"stand their ground" and "be ready to take down anything that comes at them" (completing another overt act). Has she promoted a riot in violation of the statute?

Although the *Dellinger* court attempted in 1972 to save the statute by providing greater specificity to these terms, even that court acknowledged that it was invoking a saving construction that was not necessarily supported by the statutory language. The Seventh Circuit analyzed whether each of the enumerated terms "embody a relation to action in that they logically appear to require that the riot occur . . . or . . . require the element of propelling the action." *Dellinger*, 472 F.2d at 361. The court acknowledged that while "incite," "participate in," "carry on," and "aid and abet" appear on their face to be linked to action, the terms "to organize, promote, encourage" are less clear. *Id*. The Court nevertheless decided to put these terms on equal footing, and to interpret them all to be comparable to "urging or instigating," since section 2102(b) states that the term "'to incite a riot,' or 'to organize, promote, encourage, participate in, or carry on a riot,' includes, but is not limited to, urging or instigating other persons to riot." *See id*. at 362; *see also* 18 U.S.C. § 2102(b). This ignores the statute's plain language indicating that the terms include *but are not limited to* urging or instigating. It also ignores the plain meaning of the individual terms, which persons of ordinary intelligence would interpret to have distinct meanings and consequences. There is no basis to conclude that the terms "organize," "promote," and "encourage" all simply mean "urge." Because these terms are subject to multiple interpretations, the statute is unconstitutionally vague.

        2.    <u>*The Statute is Unconstitutionally Vague as Applied to Defendants*</u>.

The government argues that the Anti-Riot Act is not vague as applied to Defendants because they "are not charged with making speeches or inciting others to riot, but with rioting themselves." Opp. at 17. But that is not what the Indictment alleges. Count Two simply parrots the entire statute, charging Defendants with using facilities of interstate commerce "with intent to incite, organize, promote, encourage,

12

participate in, and carry on a riot, and to commit an act of violence in furtherance of a riot, and to aid or abet any person in inciting and participating in and carrying on a riot and committing any act of violence in furtherance of a riot." Dkt. 47 ¶ 9. Further, the specific allegations cited in the government's brief to support the argument that Defendants themselves "rioted"—that they "jump[ed] over barriers" and boasted about engaging in fights with Antifa members—are not contained in Count Two, the substantive rioting charge.[4] Nor would those or any other acts of actual "rioting" be required to prosecute a defendant under this flawed statute. Indeed, as the government charges it, Mr. Rundo, Mr. Eason, and Mr. Boman completed the alleged offense long before any purported "riot" occurred, simply by "travelling together" from Southern California to Berkeley. *See* Dkt. 47, ¶10. The statute does not provide reasonable notice to Defendants that their conduct constitutes a violation of the Act.

**D.     The Allegations in Count Two Are Insufficient to Establish that Defendants Violated the Anti-Riot Act.**

Count Two must be dismissed for the independent reason that the Indictment fails to allege each of the essential elements against Defendants, including an interstate nexus conveying federal jurisdiction. The government is incorrect that it may simply recite the bare element that Defendants, "each aiding and abetting the other, used facilities of interstate commerce." Dkt. 47 ¶ 9. An Indictment "must provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense and plead double jeopardy at a later prosecution." *United*

---

[4] The government concedes that this alleged conduct, which includes social media posts made 9-13 months *after* the Berkeley rally, constitute overt acts in furtherance of the charged conspiracy but do not establish an element of the underlying offense. Opp. at 17 n.3. Yet in the very same section, the government asserts that these allegations demonstrate that Defendants' conduct falls squarely within the Anti-Riot Act. *Id*. at 17. The government cannot have it both ways. To the extent that it contends that after-the-fact communications establish a violation of the Anti-Riot Act, the statute is plainly vague as to Defendants and violates their Due Process rights.

13

*States v. Lane*, 765 F.2d 1376, 1380 (9th Cir. 1985).  It must allege not only the elements of the offense but also the *facts* which inform the defendant of the specific offense with which he is charged.  *Id.*  As explained in Defendants' motion, the generic allegations of the use of "the Internet, telephone, and a Visa credit card with account number ending in 0807" are insufficient, particularly as to Mr. Rundo and Mr. Boman, because they are unsupported by any specific factual allegations relating to the offense.

Specificity is particularly important for this element because the use of the internet and telephone is so widespread and commonplace that Defendants require notice as to which of their phone or internet communications were presented to the grand jury as evidence of a federal crime.  *See id.* ("Two corollary purposes of an indictment are to ensure that the defendant is being prosecuted on the basis of facts presented to the grand jury and to allow the court to determine the sufficiency of the indictment.").  In this regard, the interstate commerce element under the Anti-Riot Act varies drastically from that in the Hobbs Act, 18 U.S.C. § 1951, which criminalizes the disruption of interstate commerce through robbery or extortion.  A defendant charged with a specific robbery under that statute could not reasonably be confused about whether the charged interstate commerce connections relate to the alleged object of the robbery or to wholly lawful conduct.

Further, both the Hobbs Act and the RICO statute "require a showing of only a de minimis effect on interstate commerce to meet the respective jurisdictional elements." *United States v. Fernandez*, 388 F.3d 1199, 1218 (9th Cir. 2004).  This is not so with the Ant-Riot Act, which requires "[t]he use of a facility of interstate commerce [as] an essential element" of the offense.  *United States v. Markiewicz*, 978 F.2d 786, 813 (2d Cir. 1992).  In such cases, the indictment must "include more than 'a mere allegation of a relationship to interstate trade or commerce.'" *Fernandez*, 388 F.3d at 1218 (quoting *United States v. ORS, Inc.*, 997 F.2d 628 (9th Cir. 1993) (involving an indictment for violations of the Sherman Act)).  Without any factual

14

allegations regarding a specific use of a facility of interstate commerce in furtherance of a riot, the Indictment fails to allege an essential element and therefore fails to state an offense.  Count Two must be dismissed as to all Defendants.[5]

### III. CONCLUSION

For the foregoing reasons and for the reasons stated in Defendants' motion, Mr. Rundo, Mr. Boman, and Mr. Eason respectfully request that the Court dismiss the Indictment in its entirety.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED:  May 20, 2019          By  /s/ Julia Deixler
                                     JULIA DEIXLER
                                     Deputy Federal Public Defender
                                     Attorneys for ROBERT RUNDO

DATED:  May 20, 2019          By  /s/ per email authorization
                                     PETER SWARTH
                                     Law Offices of Peter Swarth
                                     Attorney for ROBERT BOMAN

DATED:  May 20, 2019          By  /s/ per email authorization
                                     JOHN NEIL MCNICHOLAS
                                     McNicholas Law Office
                                     Attorney for AARON EASON

---

[5] Count One must also be dismissed for the reasons stated in Defendants' motion, which are not repeated in this reply brief.

15