1        **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3       **HONORABLE CORMAC J. CARNEY, U.S. DISTRICT JUDGE**

4

5   UNITED STATES OF AMERICA,            )
                                         )
6                   Plaintiff,           )   **CERTIFIED TRANSCRIPT**
                                         )
7           vs.                          )
                                         )   Case No.
8   1) ROBERT PAUL RUNDO,                )   2:18-cr-00759-CJC
    2) ROBERT BOMAN,                     )
9   4) AARON EASON,                      )
                                         )
10                  Defendants.          )
                                         )
11

12

13

14           REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                   MOTION HEARING

16               MONDAY, JUNE 3, 2019

17                    2:05 P.M.

18              LOS ANGELES, CALIFORNIA

19

20

21

22

23

24        **DEBBIE HINO-SPAAN, CSR 7953, CRR**
          FEDERAL OFFICIAL COURT REPORTER
          350 WEST 1ST STREET, SUITE 4455
25          LOS ANGELES, CA 90012-4565
              dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

1          **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4          NICOLA T. HANNA
           United States Attorney
5          BY:  DAVID T. RYAN
               GEORGE EMEL PENCE IV
6          312 North Spring Street
           Suite 1200
7          Los Angeles, California 90012
           (213) 894-2253
8
     **FOR THE DEFENDANT ROBERT PAUL RUNDO:**
9
           HILARY POTASHNER, FEDERAL PUBLIC DEFENDER
10         BY:  JULIA DEIXLER
           Deputy Federal Public Defender
11         321 East Second Street
           Los Angeles, California 90012
12         (213) 894-7550

13   **FOR THE DEFENDANT ROBERT BOMAN:**

14         LAW OFFICES OF PETER C. SWARTH
           BY:  PETER C. SWARTH, ESQ.
15         6520 Platt Avenue
           Suite 557
16         West Hills, California 91307
           (818) 887-8800
17
     **FOR THE DEFENDANT AARON EASON:**
18
           McNICHOLAS LAW OFFICE LLC
19         BY:  JOHN NEIL McNICHOLAS, ESQ.
           464 Palos Verdes Boulevard
20         Redondo Beach, California 90277
           (310) 545-0780
21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1           **LOS ANGELES, CALIFORNIA; MONDAY, JUNE 3, 2019**

2                          **2:05 P.M.**

3                           **- - -**

4           THE COURTROOM DEPUTY:  Calling Item No. 2,

02:05PM 5   CR 18-00759-CJC, *United States of America versus, No. 1, Robert*

6   *Paul Rundo; United States of America versus Robert Boman;*

7   *United States of America versus Aaron Eason.*

8           Counsel, please state your appearances.

9           MR. RYAN:  Good afternoon, Your Honor.  David Ryan,

02:05PM 10  George Pence for the United States.

11          THE COURT:  Hello, Mr. Ryan.

12          Hello, Mr. Pence.

13          MS. DEIXLER:  Good afternoon, Your Honor.  Deputy

14  Federal Public Defender Julia Deixler on behalf of Paul Rundo,

02:05PM 15  who is in custody.

16          THE COURT:  Hello, Ms. Deixler.

17          Hello, Mr. Rundo.

18          MR. SWARTH:  Good afternoon, Your Honor.  Peter

19  Swarth on behalf of Robert Boman.  He's present in court in

02:05PM 20  custody.

21          THE COURT:  Hello, Mr. Boman.

22          Hello, Mr. Swarth.

23          MR. McNICHOLAS:  Good afternoon, Your Honor.  John

24  McNicholas on behalf of Mr. Aaron Eason, who's present on bond.

02:05PM 25          THE COURT:  Hello, Mr. Eason.

1               Hello, Mr. McNicholas.

2               Well, I issued the tentative order.  As you can

3        gather, I focused on the *Brandenburg* issue and whether the Riot

4        Act was constitutional given that I believe it criminalizes

02:06PM  5        violent speech, even speech that's not imminent.

6               It was the defense motion.  I don't know if there's

7        anything, Ms. Deixler, you'd like to add to this point.

8               MS. DEIXLER:  At this time no, Your Honor.  We'll

9        submit on the tentative and on our written papers.  Thank you.

02:06PM 10               THE COURT:  So then I guess I'll turn it over to

11        Mr. Ryan and Mr. Pence.

12               MR. RYAN:  Thank you, Your Honor.  You prefer us up

13        here?

14               THE COURT:  Please.

02:06PM 15               MR. RYAN:  Aimed to focus on the Court's tentative,

16        of course, I suppose I would focus on three points, Your Honor,

17        in response to reviewing the Court's tentative.  The first is

18        there are allegations in the Complaint, both throughout the

19        Indictment, that focus on the defendant's preparation for and

02:07PM 20        personal commission of acts of violence.  I recognize the

21        Court's point, that there are other overt acts in the

22        conspiracy count that are not themselves preparation for or

23        commission of acts of violence.

24               Those overt acts in the conspiracy count are not

02:07PM 25        overt acts that themselves establish the overt act element of

the Riot Act charged in Count Two.  Rather, those overt acts in

the conspiracy count that are expressive evidence the

defendant's intent to prepare for and engage in acts of

violence.

02:07PM     Much like in a drug conspiracy count where the

government may allege a number of what would otherwise be

innocuous acts that are not themselves drug transactions but

that evidence the defendant's intent as part of the conspiracy

to engage in a drug transaction.

02:08PM     So it's not the government's position that those

expressive overt acts would, if not combined with other more

direct preparation for and commission of violence, constitute

the commission of this offense.  And I believe I understand the

Court's tentative to be stating that even if all that was done

02:08PM  was the making of such statements, that would constitute

commission of the offense.  And that's, I believe, No. 1, not

the government's position; No. 2, not required to address the

sufficiency of this Indictment because there are also other

overt acts that are -- that are direct preparation for and

02:08PM  commission of violence.

THE COURT:  Well, maybe my analysis wasn't as clear

as it should have been.  I was focusing on a facial challenge

to the Riot Act, not an as-applied.  But in my discussion and

analysis of the facial challenge, I do refer to many of the

02:09PM  overt acts that are alleged in the Indictment.  But the

1   bottom-line problem I'm having is that the Riot Act

2   criminalizes, I believe, all violent speech in connection with

3   the riot.  And it doesn't have to be imminent.  And I don't

4   think that satisfies *Brandenburg*.  That's the problem I'm

02:09PM  5   having.

6        MR. RYAN:  I'll respond directly to that point, if I

7   may, Your Honor.

8        So No. 1, as I believe Your Honor noted in the

9   tentative, *Dellinger* and all the -- *Shead* and the other cases

02:09PM 10   address that issue by construing the overt acts narrowly.  I

11   believe Your Honor's tentative would simply reject those narrow

12   constructions and go the other way --

13        THE COURT:  I think that's a fair -- I'm just trying

14   to be judicious in my language.  I just don't understand their

02:10PM 15   analysis quite frankly.  And I just think it's playing

16   syntactical and grammatical gymnastics with plain and clear

17   wording of the statute.  I think that statute is very broad.

18        And a little bit of historical context is, I think,

19   important.  That was enacted on a very turbulent time during

02:10PM 20   the Civil Rights Act in Vietnam era.  And I think Congress were

21   just trying to put an end to the senseless violence that was in

22   destruction that was happening.  Then *Brandenburg* came on

23   after, and I realize that the Seventh Circuit looked at the

24   constitutionality of the statute, but I'm not bound by that and

02:10PM 25   I just disagree with their analysis.  I think the dissent got

1    it right.

2         MR. RYAN:  I would, of course, point out that

3    *Dellinger* was, of course, after *Brandenburg* as well as the

4    other cases that agreed with *Dellinger*, where after *Brandenburg*

02:11PM 5    did expressively address *Brandenburg*.  But I understand

6    Your Honor's point there.

7         I think the other point that I would make is, as I

8    understand it, the concern about overbreadth is primarily

9    focused on the acts prohibited by the statute that are

02:11PM 10   inciting, promoting, encouraging riots or acts of violence in

11   furtherance of riots, which would seem on their face to be

12   expressive or possibly expressive acts.  There are other

13   provisions of the Anti-Riot Act that prescribe only overt acts

14   which are committed with the intent to directly engage in

02:11PM 15   violence, not express, advocate that others do so, but to do so

16   oneself.

17        And, of course, if the Court found the provisions

18   that deal with speech or expressive conduct to be overbroad, I

19   believe the remedy would be to strike those provisions and to

02:12PM 20   not strike the inoffensive provisions of the statute that focus

21   not on expression, but on taking actions to prepare for and

22   engage in violence oneself.

23        So, in other words, the Court could -- if the Court

24   were so inclined and felt it was necessary to strike numerous

02:12PM 25   provisions of the statute -- intent, incite, promote,

1    encourage -- those are categorically different verbs, and those

2    are -- that is a different analysis than the other prescribed

3    verbs or actions which are to prepare for -- or most

4    concretely, to carry out acts of violence in furtherance of.

02:12PM 5         So an overt act taken with the intent to carry out

6    violence is not an expression, let alone protected expression.

7    That's action.  And a number of the allegations in this

8    Indictment made clear that that is what -- what is charged here

9    and what would be proven here.

02:13PM 10        THE COURT:  Well, I'd like to hear Ms. Deixler's

11   point on that.  But I still think you have a problem with the

12   way the statute is structured, even adopting your argument,

13   because the wording is that you travel interstate commerce or

14   you use a facility of interstate commerce with the intent, and

02:13PM 15   then it says "to incite a riot."  So you use the interstate

16   facility with the mind, "Okay, I'm going to go to Berkeley and

17   pound on Antifa," all right?  And -- but there's no imminent

18   violence there yet.

19        Now, the riot that you're intending to cause, that

02:13PM 20   has a clear and present danger of property damage or bodily

21   injury.  I get that.  But that violence isn't imminent yet.

22   And then you have to also have an overt act committed for the

23   purpose of that.  And again, the overt act doesn't have to

24   create imminent violence the way the statute's written.

02:14PM 25        MR. RYAN:  Again, to the extent I understand

1    Your Honor's reading of the statute that way, *Dellinger* and the

2    other cases address that problem by requiring the imminence

3    that the overt acts create the imminent risk.  But I understand

4    Your Honor to be reading the statute to disagree with that

02:14PM   5    reading.  But even if Your Honor reads it that way, that

6    analysis about whether the overt acts create an imminent risk

7    of violence, that's the *Brandenburg* test.  And you're there

8    only if the conduct that's being prescribed is expressive in a

9    First Amendment analysis.

02:14PM   10         Under the provision that says we're not about

11   inciting, encouraging, promoting riot, it's overt acts taken to

12   prepare oneself for violence.  Then we're not in First

13   Amendment analysis at all because it's not prescribing

14   expressive conduct let alone protective expressive conduct.

02:15PM   15         THE COURT:  So you're basically saying, "Go ahead,

16   Judge, delete Paragraph 1, 'to incite a riot.'  Delete

17   Paragraph 2, 'organize, promote, encourage, participate or

18   carry on a riot.'  Keep 3, 'to commit any act of violence in

19   furtherance of a riot.'  4, 'to aid or abet any person in

02:15PM   20   inciting'" -- I assume you're going to get rid of that.  So

21   you're asking me to delete three of the subparagraphs?

22         MR. RYAN:  Well, of course, I would say I'm not

23   asking Your Honor to, but if Your Honor is inclined to have a

24   concern about the expressive -- or what Your Honor would be

02:15PM   25   concluding are expressive or protected conduct or speech that's

covered by the statute, yes.  Although I would say that within

No. 2 in that list of verbs there, it includes not only

"promote," "encourage," "incite," but also "carry on a riot."

So that's -- that is a verb of action, commission of violence

02:16PM oneself as opposed to expressing or advocating or inciting

others to do so.

But in short, Your Honor, yes, I think so.  I think

that's what the Supreme Court asks -- or directs courts to do

is strike whenever at all possible the offending provisions of

02:16PM the statute and not strike other provisions of the statute.

And I think there is a categorical difference here between some

provisions of the statute which are, as Your Honor said, set

forth in different paragraphs and so readily severable that

focus on expression and others -- or arguably focus on

02:16PM expression and others that clearly do not.

THE COURT:  I'm still even struggling if I do all

the dissection that you're asking me to do of the statute, it's

whoever travels in interstate commerce or uses any facility of

interstate commerce with the intent to carry on a riot is what

02:17PM you're saying or commit any act of violence.  It's still not

requiring any imminent violent act.

MR. RYAN:  Of course.  The crime is not completed

when you just travel or use the facility.  It would be you have

Part A and then --

02:17PM THE COURT:  And then you have the overt act.  But

that just says and you perform an overt act for any purpose

specified in carrying on a riot.  And again, I don't see the

imminent violence with that.

MR. RYAN:  I guess my point would be you don't need

02:17PM the imminence there because you're not under *Brandenburg*.

You're not regulating protected speech at that point.

Preparing to engage in a riot, taking overt acts to do so is

not expressive conduct whatsoever let alone protected conduct.

So you're simply not regulating speech under the First

02:18PM Amendment at that point, and so you don't have the analysis at

all.  Because I would recognize that under Your Honor's

reading, if some of the verbs don't require the imminence, the

others don't require it either.  I understand that to be

Your Honor's point.

02:18PM So slicing -- or severing the provisions would not

solve that problem, but what it would do is remove the statute

from the problematic area of the First Amendment altogether,

which I understand to be what Your Honor's primary concern is,

is the statute should be, as I understand Your Honor's point,

02:18PM more narrowly focused on preparing for violence, not speech.

And I think that can be done actually quite readily given the

way the statute is broken up into subparagraphs.

THE COURT:  And try me again on how you can get

there.  So let's just -- I know the defendants dispute these

02:19PM characterization of the facts, but let's just assume, and you

```
 1   can take -- let's take Mr. Eason.  Mr. Eason travels interstate
 2   commerce with the intent to commit a battery, assault, some
 3   Antifa.  That's his plan.  He's been training in San Clemente
 4   to do it.  He's ready to go.  All right.  He travels up to
 5   Berkeley.  So this requirement of traveling in interstate
 6   commerce or using interstate facilities to rent the van, that's
 7   satisfied.  Okay.  But he hasn't committed a crime yet, just
 8   thinking.  You would agree?
 9           MR. RYAN:  I would not agree that all he has done is
10   thinking.  But I would agree the crime is not completed yet.
11           THE COURT:  But everything he's done can't be a
12   crime, because you got a problem with Brandenburg; right?  So
13   then tell me what saves you in the statute.
14           MR. RYAN:  Because then the allegation would be in
15   evidence -- you know, would be that -- then the defendant takes
16   an overt act for the purpose of carrying out a riot or for the
17   purpose of committing acts of violence in furtherance of a
18   riot, namely, the acts of violence in furtherance of the riot,
19   which is -- I know we're not focused on the Indictment, but
20   those allegations are included in the Indictment.
21           But that would be the final part of that sentence.
22   He then carries out acts of violence in furtherance of the
23   riot.  That is the overt act.  Even if it were construed that
24   narrowly or even if the allegations had to be stripped out to
25   just those, we do have that here.  That's the Court's theory
```

1    over this case.  But more broadly, nothing about that is

2    expressive let alone protected.

3          THE COURT:  Well, I hear what you're saying, but

4    that's why I said I didn't focus on an implied challenge.  Just

02:21PM 5    the fact that you can create a scenario where it would be

6    constitutional and not a First Amendment *Brandenburg* problem,

7    that doesn't save the statute.

8          MR. RYAN:  I'm not sure that I would agree with

9    that, Your Honor.  If you can sever the statute in a way that

02:21PM 10   creates -- that leaves a statute that doesn't have a

11   *Brandenburg* problem and that allows for prosecutions of the

12   remaining provisions that doesn't have a Brandenburg problem, I

13   think that is what the Court is called upon to do.

14         THE COURT:  All right.

02:21PM 15         MR. RYAN:  And we cited that case in our papers, the

16   *Ayotte*, A-y-o-t-t-e, Supreme Court case, where a statute can

17   reasonably be severed.  That's what should be done rather than

18   having statute stricken as a whole.  And our position would be

19   that that is what the Court at most should do here.  And if the

02:22PM 20   Court did that here, what would follow is to deny the motion

21   because the allegations in the Complaint -- in the Indictment

22   would satisfy the remaining action focused -- violence-focused

23   provisions in the statute.

24         THE COURT:  All right.  Well, I appreciate your

02:22PM 25   argument.  I'll give you the last word after I hear from the

1    defense.

2              MR. RYAN:  Thank you, Your Honor.

3              MS. DEIXLER:  Thank you, Your Honor.  I will focus

4    on the last point made by the government there, which, I think,

02:22PM 5    is problematic for several reasons that the Court has alluded

6    to already.  But first, I think the Court cannot simply take a

7    pen to the statute at the instruction of the government.  The

8    narrowing construction, a court can only do so when it is clear

9    from the text of the statute as to how to delineate it.  And I

02:22PM 10    don't think that slicing and dicing these terms which don't --

11    some of which do not have a clear meaning really falls so

12    neatly into the categories that the government suggests.

13              For example -- and I think there's two -- there's

14    two sort of fundamental issues with it.  First, I don't believe

02:23PM 15    that these terms are necessarily relegated to expressive

16    conduct or protective conduct or not.  There are plenty of ways

17    that I can think of that one could, quote/unquote, "act with

18    the intent to participate in a rally" as the government -- or

19    "in a riot" as the government is construing that statute that

02:23PM 20    involves their own self-expression about their plans, about

21    their ideology or that involves their ability to assemble with

22    others.

23              The conduct alleged in the Indictment itself

24    involves one person sending communications over a facility of

02:24PM 25    interstate commerce to meet up with someone which the

government has claimed is with the unlawful intent that falls

under the Riot Act.  And that is what they believe to be a verb

that would be linked to action, but does not necessarily

exclude protected speech assembly and association that this

02:24PM 5   statute so clearly covers.

Even if it did, and even if we were able to somehow

limit these terms to say, okay, there's only -- you can only

outlaw use of interstate commerce or travel and then an overt

act with the intent to commit any act of violence in

02:24PM 10   furtherance of a riot, again, there is the attenuation problem

because the statute does not actually prohibit the acts in

furtherance of the violence.

The statute prohibits use of a communication with

that prohibited intent and then any overt act.  It needn't be a

02:25PM 15   substantial step towards violence, it may not be related

violence.  I agree with the Court's interpretation that the

gymnastics of the *Dellinger* court and the *In re Shead* court did

just are simply not supported by the statute, because there is

absolutely no requirement for a temporal connection that cannot

02:25PM 20   be read into the language as it exists now.

So I don't see any way for the Court to apply a

narrowing effect here.  And even if there was one that we could

consider hypothetically, it would still cover a substantial

amount of protected activity.

02:25PM 25   THE COURT:  All right.  Any of the other defense

1    counsel want to be heard?

2        MR. McNICHOLAS:  Your Honor, I just want to briefly

3    exemplify the point that the government wants to take the

4    alleged offense and put it out in that park in Berkeley rather

02:25PM  5    than where defense really is alleged to occur, which is at the

6    individual's computer, at the rental car counter, on the

7    highway.  Because it's about communication.  It's about travel.

8    That is the crime.

9        What happens later on in overt acts, going to the

02:26PM 10    coffee shop could be an overt act.  Going to the store could be

11    an overt act.  There is no need for a riot.  There's -- a riot

12    is not even necessary for this offense.  But it is about

13    communication.  It is about expression.  It is also about

14    assembly.

02:26PM 15        And we agree wholeheartedly with the issue of the

16    *Brandenburg* test is the law of the land.  It absolutely applies

17    even with *Dellinger.*  And *Dellinger* happened before *Claiborne*

18    was decided as well -- *Claiborne Hardware*.  Because of those

19    individuals, they technically would have been in violation of

02:26PM 20    the Riot Act as well.  But that was in 1982.  And they weren't

21    charged with the Riot Act.

22        So those were the points that we wanted to make,

23    Your Honor.  They did not address the hecklers.  That was also

24    a strong part of our analysis.

02:27PM 25        THE COURT:  All right.

1              MR. SWARTH:  I have nothing to add.

2              THE COURT:  Mr. Ryan, anything further to add, sir?

3              MR. RYAN:  Very briefly, Your Honor.  Can I have one

4     minute, Your Honor?

02:27PM  5              THE COURT:  You may.

6              MR. RYAN:  I hope this is not repetitive,

7     Your Honor, but counsel mentions the overt acts set forth in

8     the conspiracy count in the Indictment.  And I do just want to

9     highlight for the Court's attention the fact that the overt

02:28PM 10    acts charged for the purpose of the conspiracy that evidence

11    the defendant's intent has no bearing on this analysis.

12    Because again, I think it's commonplace for the overt acts set

13    forth in the conspiracy count to include conduct that is not

14    itself criminal.  Whether it's expressive, not expressive, it's

02:28PM 15    simply evidencing the defendant's intent.

16              So all the overt acts set forth that Your Honor

17    discusses at some length and that defense counsel points out, I

18    think that's not what the analysis is about because those

19    are -- it is not claimed in the Indictment that those are the

02:28PM 20    overt act described in the Anti-Riot Act.  Those are overt acts

21    for purposes of the conspiracy.

22              So this court could -- I think that is an issue that

23    moves us off path because the theory of the -- the government's

24    theory under the statute is that the overt acts charged in the

02:29PM 25    Indictment most fundamentally and narrowly construed would be

**UNITED STATES DISTRICT COURT**

```
 1   the commission of the acts of violence.  And one could strike

 2   all the other overt acts out of the Indictment and be left with

 3   the commission of the acts with preparation for acts of

 4   violence and commission of acts of violence.  The inclusion of

 5   other overt acts doesn't, I think, undermine or suggest

 6   anything otherwise.  Those are overt acts in the conspiracy

 7   count.

 8            THE COURT:  I think where we're butting heads,

 9   Mr. Ryan, is I just don't think that is the correct

10   constitutional analysis of the statute.  I am aware that just

11   because you can conceive of facts, even those that are alleged

12   where the statute would be constitutional, you have to look at

13   the statute as a whole and does it overcriminalize protected

14   speech.  And that's what I'm having a big problem with.  I

15   think the statute -- you can put whatever gloss you want on

16   it -- the statute was designed to go after violent speech.  And

17   I just don't think that's constitutional.

18            MR. RYAN:  So I would make two final points,

19   Your Honor.  I think, No. 1, even if that's true, and I

20   recognize the point that facial overbreadth is what the Court

21   looks at as well as well as looking at the Indictment itself,

22   there is also that other canon of construction Supreme Court

23   law, quote:

24            "Generally speaking, when confronting a

25        constitutional flaw in a statute, we try to limit
```

1       the solution to the problem.  We prefer to enjoin

2       only the unconstitutional applications of a statute

3       while leaving other applications in force or to

4       sever its problematic portions while leaving the

02:30PM 5       remainder intact."

6            I think the statute presents a way to do that that

7  gets us out of the First Amendment arena altogether.  I think

8  that would resolve the Court's concern.  And the Court could

9  construe the overt acts and apply them to the other

02:31PM 10  non-expressive let alone protected expression verbs set forth

11  in the statute and to go above and beyond that and strike the

12  entire statute when there is a way to save portions of the

13  statute and when saving those portions would, I believe, create

14  the result that Your Honor suggests would have been a proper

02:31PM 15  one in the first place, then that's the proper course that the

16  government would propose here.

17       And I don't believe it would be the Court adopting a

18  narrowing construction at government's instruction.  It would

19  be the Court adopting a narrowing construction because that's

02:31PM 20  what the Supreme Court has directed courts do, not when it

21  is -- not only when doing so is obvious, but whenever possible,

22  when it's possible.  When the Court can possibly find a way to

23  do it, that's what courts are to do.  And we think that is more

24  than possible here.  It's actually apparent on the face of the

02:32PM 25  statute how to do that to avoid all First Amendment problems.

**UNITED STATES DISTRICT COURT**

```
 1    No First Amendment balancing.  No expressive conduct.

 2         With that, Your Honor, one final point I would make.  To

 3    the extent the Court does go forward with its tentative to

 4    grant the motion, the government would request a 14-day stay of

02:32PM 5    that decision to have time to consider and seek approval for an

 6    appeal.  Thank you, Your Honor.

 7              THE COURT:  And I appreciate your argument and your

 8    request.  I'll give the defense, I guess, an opportunity to

 9    respond one more time and then, also, the request that I stay

02:32PM 10    my order for 14 days.  It is your record.

11              MS. DEIXLER:  Thank you, Your Honor.

12              And not to put too fine a point on the allegations

13    in this case, but the allegations in Count Two in the

14    Indictment.  The Anti-Riot Act allegation here charged the

02:33PM 15    defendants with using a facility of interstate commerce

16    including but not limited to the Internet and telephone and

17    committing one overt act thereafter, which is traveling

18    together to Berkeley, California, to engage in a riot.  So I

19    think even in the government's example of how this can be

02:33PM 20    directed towards only violent action, I think it falls short

21    because we can imagine ways in which all of these verbs in the

22    subsections here cover lawful assembly, association, and

23    speech.

24              With respect to the request for a stay, Your Honor,

02:33PM 25    I understand that the U.S. Attorney's Office has an internal
```

**UNITED STATES DISTRICT COURT**

1    process to evaluate whether or not to appeal.  I would ask in

2    the interim that my client, Mr. Rundo, be released on his own

3    recognizance especially given the Court's ruling today.

4           THE COURT:  Okay.

02:33PM  5           MR. SWARTH:  Your Honor, if I may, I would make the

6    same request on behalf of Robert Boman.

7           THE COURT:  Very well.

8           Mr. McNicholas?

9           MR. McNICHOLAS:  Your Honor, Mr. Eason is not

02:34PM 10   prejudiced like the other two defendants are.  So we wouldn't

11   have the same objection.

12          THE COURT:  All right.  Well, I am going to make my

13   tentative order the final order of the Court.  And I'm not

14   going to stay my order because I feel confident in my analysis.

02:34PM 15   I take no offense that the government wants to immediately

16   appeal me, and best of luck to them.  But once I reach the

17   conclusion I did, I just don't feel comfortable having the

18   charges pending anymore.  So the charges are dismissed.

19          Mr. Rundo and Mr. Boman, you're going to be released

02:34PM 20   forthwith.  I just ask -- and it's a request -- renounce and

21   put aside violence and hate.  That's the best thing for you,

22   your family and, candidly, your community.  This is not -- I

23   don't care what idiots Antifa are being.  I've seen the videos.

24   They're out of control.  They're idiots.  But violence on

02:35PM 25   violence doesn't achieve anything.

**UNITED STATES DISTRICT COURT**

1          You're both young men.  You got a lot to live for.

2   You don't want to be in custody for years.  So you'll both be

3   released forthwith.

4          Mr. Eason, you're already out of custody, so your

02:35PM  5   bond is exonerated.

6          And my same comments to Mr. Rundo and Boman apply to

7   you, sir.

8          THE DEFENDANT:  Thank you, Your Honor.

9          THE COURT:  Mr. Laube, I don't think, is here, but I

02:36PM  10   assume there will be further legal proceedings in his case in

11   light of my ruling.

12          Is there anything further we need to discuss?

13          MR. RYAN:  Not from the government, Your Honor.

14          MR. McNICHOLAS:  No, Your Honor.

02:36PM  15          MS. DEIXLER:  No, Your Honor.

16          MR. SWARTH:  No.

17          THE COURT:  Thank you.

18          THE COURTROOM DEPUTY:  All rise.

19              **(Proceedings concluded at 2:36 p.m.)**

20                     --oOo--

21

22

23

24

25

1          *CERTIFICATE OF OFFICIAL REPORTER*

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, in and for the United States District Court for

7    the Central District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   *Date:  June 12, 2019*

16

17

18

19                            */S/ DEBBIE HINO-SPAAN*
                              _____

20                            *Debbie Hino-Spaan, CSR No. 7953*
                              *Federal Official Court Reporter*
21

22

23

24

25

**UNITED STATES DISTRICT COURT**