CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JULIA DEIXLER (Bar No. 301954)
(E-Mail: julia_deixler@fd.org)
ERIN M. MURPHY (Bar No. 285087)
(E-Mail: erin_murphy@fd.org.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ROBERT RUNDO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT RUNDO,<br><br>Defendant. | Case No. CR 18-759-CJC<br><br>**NOTICE OF MOTION; DEFENDANT ROBERT RUNDO'S MOTION STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: February 26, 2024<br><br>Hearing Place: Courtroom of the Hon. Cormac J. Carney |

TO: UNITED STATES ATTORNEY E. MARTIN ESTRADA AND ASSISTANT UNITED STATES ATTORNEYS KATHRYNNE SEIDEN AND SOLOMON KIM:

PLEASE TAKE NOTICE that on February 26, 2024, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Cormac J. Carney, United States District Judge, defendant Robert Rundo, by and through his counsel of record, Deputy Federal Public Defenders Julia Deixler and Erin M. Murphy, will bring for hearing the following motion:

| | |
|---|---|
| 1 | **MOTION** |
| 2 | Robert Rundo, through his counsel of record, Deputy Federal Public Defenders |
| 3 | Julia Deixler and Erin M. Murphy, hereby moves for an order striking portions of the |
| 4 | First Superseding Indictment relating to the Charlottesville, Virginia political rally on |
| 5 | August 11-12, 2017 under Federal Rule of Criminal Procedure 7. This motion is based |
| 6 | on the attached Memorandum of Points and Authorities, all files and records in this |
| 7 | case, and any additional evidence and argument presented at or before the hearing on |
| 8 | the motion. |

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: January 15, 2024          By  /s/ *Julia Deixler*
　　　　　　　　　　　　　　　　ERIN M. MURPHY
　　　　　　　　　　　　　　　　JULIA DEIXLER
　　　　　　　　　　　　　　　　Deputy Federal Public Defenders
　　　　　　　　　　　　　　　　Attorneys for ROBERT RUNDO

# I. INTRODUCTION

The government's sprawling First Superseding Indictment (the "FSI") alleges a conspiracy to violate the Anti-Riot Act through text messages, social media posts, and attendance at various political rallies. Although the Anti-Riot Act was designed to target political agitators who travelled across state lines to incite violence, almost all of the FSI's allegations relate to wholly intrastate conduct. But tucked among the 48 alleged overt acts in the FSI's conspiracy claim is a cluster of allegations about one out-of-state event—the infamous "Unite the Right" rally that occurred in Charlottesville, Virginia and led to the death of one of the rally's counter-protestors by a non-RAM protestor. None of the defendants in this case attended the Charlottesville rally, and the alleged RAM members who did attend have already been federally prosecuted in the district where that rally occurred. The FSI nowhere alleges that defendants specifically entered an agreement to riot in Charlottesville or to aid or abet any other person to do so. The inclusion of the Charlottesville rally, then, seems designed to inflame the passions of the jury and prejudice them against the defendants in Southern California.

Under Federal Rule of Criminal Procedure 7, this Court has wide discretion to act as a gatekeeper and to strike unnecessarily prejudicial or inflammatory information from a charging document. The invocation of a notoriously violent and tragic event that none of the defendants were involved in is exactly the type of information that this rule was designed for. The FSI's allegations regarding the Charlottesville rally are not material to the conspiracy charge and are highly prejudicial and inflammatory. They are surplusage and should be stricken from the FSI.

# II. FACTUAL BACKGROUND

**A.     The FSI's Allegations Regarding the Charlottesville, Virginia Rally.**

Count One of the FSI alleges that Robert Rundo, Robert Boman, and Tyler Laube, along with other unidentified individuals, conspired and agreed to commit the offense of rioting in violation of 18 U.S.C. § 2101 and 18 U.S.C. § 371. The FSI alleges that the object of the conspiracy was accomplished by the defendants using

1

"text messages and the Internet to recruit others to train for and engage in acts of violence at political rallies," coordinate and engage in "hand-to-hand and other combat training" to prepare to engage in violence at political rallies, travel to rallies and commit assaults there, and share photos and videos of themselves on the internet *after* the rallies occurred, "to recruit more people to engage in violence at future events." FSI ¶ 6(a)-(e).

Count One discusses four different political rallies, three of which took place in California (Huntington Beach, Berkeley, and San Bernardino). None of the defendants attended the only out-of-state rally alleged in the FSI—the "Unite the Right" Rally that took place in Charlottesville, Virginia on August 11-12, 2017.[1] Four other alleged members of RAM — Benjamin Daley, Michael Miselis, Thomas Gillen, and Cole White — did attend the Charlottesville rally and were separately prosecuted in the Western District of Virginia. *See generally United States v. Daley et al.*, Case No. 3:18-cr-00025-NKM-JCH (W.D. Va. 2018).[2]

The FSI contains six allegations in the section regarding the Charlottesville rally:

- <u>Overt Act No. 34</u>: On or about June 18, 2017, two RAM members exchanged text messages regarding booking flights to the Unite the Right rally in Charlottesville, Virginia on August 11-12, 2017 (the "Charlottesville Rally").

- <u>Overt Act No. 35</u>: On or about July 23, 2017, defendant RUNDO used the Internet to post a RAM promotional video showing RAM members assaulting counter-protestors at the Huntington Beach Rally and the Berkeley Rally.

---

[1] As discussed in greater detail in Mr. Rundo's Motion to Dismiss for Selective Prosecution, at the time it initiated an investigation into Mr. Rundo, the FBI erroneously believed that he attended the Charlottesville rally. *See* Mot. for Selective Prosecution, Ex. R (confirming that earlier report that Mr. Rundo attended the rally was erroneous).

[2] All four of the Charlottesville defendants ultimately pleaded guilty to one count of conspiracy and the government agreed to dismiss the Anti-Riot Act counts. They received sentences of 37 months (Mr. Daley); 33 months (Mr. Gillen); 27 months (Mr. Miselis); and time-served (Mr. White).

2

- <u>Overt Act No. 36</u>: On or about July 26, 2017, defendant RUNDO sent a Twitter message from the RAM Twitter account to another Twitter user stating, "hope we can get y'all some more commie beatdown vids soon – Antifa never learn."

- <u>Overt Act No. 37</u>: On or about August 10, 2017, defendant BOMAN posted a photograph on his Facebook page showing himself punching a person at the Berkeley Rally.

- <u>Overt Act No. 38</u>: On or about August 10-11, several RAM members traveled from Los Angeles, California, to Charlottesville, Virginia to attend the Charlottesville Rally.

- <u>Overt Act No. 39</u>: On or about August 12, 2017, several RAM members attended the Charlottesville Rally, where they committed, participated in, and aided and abetted one or more acts of violence against individuals at the Charlottesville Rally.

FSI at 10-11.

### III. LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged ...." Fed. R. Crim. P. 7(c)(1). Rule 7(d) separately empowers courts to "strike surplusage from the indictment" upon the defendant's motion. Fed. R. Crim. P. 7(d). The Ninth Circuit defines surplusage as "allegations . . . that are not necessary to establish a violation of a statute[.]" *United States v. Garcia-Paz*, 282 F.3d 1212, 1217 (9th Cir. 2002). "The purpose of a motion to strike . . . is to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Ramirez*, 710 F.2d 535, 544-545 (9th Cir. 1983); *see also United States v. Daniel*, No. 09-CR-00993-MMM, 2010 WL 11507585, at *4 (C.D. Cal. July 28, 2010) (quoting *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988)).

"While surplusage is not *per se* improper, the inclusion of surplusage must not be allowed to prejudice a defendant in the context of his case." *United States v. Singh*, No.

3

14-CR-00648-CAS-9, 2017 WL 3701448, at *12 (C.D. Cal. Aug. 17, 2017) (cleaned up). Even where surplusage has some relevance to a charge, courts will strike it from the indictment if its relevance is outweighed by its prejudicial effects. *United States v. Martin*, No. 07-CR-1205-CBM, 2009 WL 667299, at *5 (C.D. Cal. Mar. 10, 2009) (granting motion to strike because "[w]hile there is some probative value to these allegations, it is outweighed by the prejudice to Defendants"); *United States v. Sahakian*, No. 02-CR-938-VAP, 2008 WL 11383346, at *5–6 (C.D. Cal. July 28, 2008) (striking prejudicial allegations where the indictment "contains ample language aside from these allegations that is sufficient" to satisfy the Government's theory of their relevance).

When a single count joins together actionable and non-actionable conduct—like in a multi-object conspiracy or scheme offense—a court can excise the legally-deficient portions of the count from the properly pled ones by striking them from the indictment. *United States v. Marlinga*, No. 04-80372, 2005 WL 517964 (E.D. Mich. Mar. 2, 2005) (striking portions of bribery indictment under Rule 7(d)); *United States v. Pirro*, 212 F.3d 86, 88 (2d Cir. 2000) (affirming jurisdiction over orders "dismissing a portion of a count" that, if valid, would offer a discrete basis for liability). In assessing a motion to strike surplusage, courts bear in mind that not all "evidence that would be admissible at trial is [] appropriate in an indictment; the question . . . is whether the material is unnecessary in making out a prima facie pleading of the violation." 1 Charles A. Wright, Fed. Prac. and Proc. Crim. § 128 (4th ed. 2008) (cleaned up).

///
///
///
///
///
///

## IV. THE COURT SHOULD STRIKE THE CHARLOTTESVILLE ALLEGATIONS FROM THE FIRST SUPERSEDING INDICTMENT BECAUSE THEY ARE PREJUDICIAL SURPLUSAGE

The FSI's allegations relating to the Charlottesville rally are prejudicial surplusage. They are not necessary elements of the conspiracy charge alleged against Mr. Rundo and his co-defendants, nor are they material to satisfy an element of the conspiracy. *See Garcia-Paz*, 282 F.3d at 1217 ("Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage[.]"); *Daniel*, 2010 WL 11507585, at *4 ("Surplusage is language that 'goes beyond alleging elements of the crime.'" (quoting *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986))).

Count One charges Mr. Rundo and his co-defendants with conspiracy to violate the Anti-Riot Act under 18 U.S.C. § 371. To prevail on its conspiracy charge, the government must prove: (1) an agreement existed between two or more persons to violate the Anti-Riot Act; (2) the defendants became members of the conspiracy knowing of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy completed at least one overt act for the purpose of carrying out the conspiracy. Ninth Cir. Model Crim. Jury Instructions, § 11.1 (Conspiracy—Elements).

The FSI does not allege that any of the defendants attended the Charlottesville rally. Nor does it allege that any defendant entered into any agreement regarding rioting in Charlottesville, or committed any overt act in furtherance of that agreement. With respect to Mr. Rundo specifically, the only allegations in the FSI are that he posted a promotional video on the internet on July 23, 2017, and that he sent a Twitter message about hoping to get more "commie beatdown vids soon" on July 26, 2017. FSI at 10. Those posts were purportedly made over two weeks before the Charlottesville rally, but neither were about that event. In fact, the FSI provides no explanation as to how these internet posts in any way relate to the Charlottesville rally.

To the extent the government might argue that the Charlottesville allegations are further evidence by which it may attempt to establish an element of the conspiracy, the

5

allegations are, at most, "one means (but not the only means)" to prove the charge and therefore "not required for conviction pursuant to the applicable criminal statute." *United States v. Lopez*, 4 F.4th 706, 726 (9th Cir. 2021) (concluding that indictment's reference to a statute was surplusage since the statute was "one means (but not the only means)" to establish an element of the charge). Moreover, even if the government could articulate some materiality of the Charlottesville allegations, the FSI alleges 42 other overt acts under Count One that relate to the political rallies that defendants actually attended. The government therefore need not rely on the prejudicial and inflammatory allegations relating to the Charlottesville rally to assert its case theory.

Any minimal relevance of the Charlottesville allegations is far outweighed by the risk that the jury will unfairly prejudice Mr. Rundo by affiliating him with a notoriously violent demonstration. The Charlottesville rally immediately made national news after an apparent White nationalist (with no connection to RAM) drove his car into a crowd of counter-protesters and tragically killed Heather D. Heyer.[3] The incident received widespread coverage on every news outlet in the country and was the subject of documentary films and congressional hearings. It is almost assured that members of the jury at Mr. Rundo's trial will have at least some familiarity with the event. The "prejudicial or inflammatory" nature of the allegation that Mr. Rundo was somehow associated with the Charlottesville rally is obvious. *Ramirez*, 710 F.2d at 544-545. There is a real risk that a jury would convict Mr. Rundo, not based on the evidence put forth at trial, but based on the suggestion that he or RAM were associated with the tragic killing that occurred at an event he never attended. Because the prejudicial potential for the Charlottesville allegations far outweigh their relevance, the Court should strike them.

---

[3] Jonah Engel Bromwich and Alan Blinder, *What We Know About James Alex Fields, Driver Charged in Charlottesville Killing*, NY Times (Aug. 13, 2017), https://www.nytimes.com/2017/08/13/us/james-alex-fields-charlottesville-driver-.html#:~:text=13%2C%202017-,James%20Alex%20Fields%20Jr.,rally%20staged%20by%20white%20nationalists.

6

## V. CONCLUSION

For the foregoing reasons, Mr. Rundo respectfully requests that the Court strike the allegations relating to the Charlottesville, Virginia rally (i.e., Overt Act Nos. 34-39 in paragraph 7) from the FSI.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: January 15, 2024     By  */s/ Julia Deixler*
ERIN M. MURPHY
JULIA DEIXLER
Deputy Federal Public Defenders
Attorneys for ROBERT RUNDO

7