CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JULIA DEIXLER (Bar No. 301954)
(E-Mail: julia_deixler@fd.org)
ERIN M. MURPHY (Bar No. 285087)
(E-Mail: erin_murphy@fd.org.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ROBERT RUNDO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-759-CJC-1 |
| Plaintiff, | **DEFENDANT'S ROBERT RUNDO'S *EX PARTE* APPLICATION REQUESTING STATUS CONFERENCE; DECLARATION OF COUNSEL** |
| v. | |
| ROBERT RUNDO, | |
| Defendant. | **Hearing Date Requested: Feb. 2, 2024** |

Robert Rundo, by and through his counsel of record, Julia Deixler and Erin Murphy, moves *ex parte* to respectfully request a status conference before the Court as soon as the Court might be available.  The basis for this request is set forth in the attached Memorandum and Declaration of Counsel.

                                      Respectfully submitted,

                                      CUAUHTEMOC ORTEGA
                                      Federal Public Defender

DATED:  January 31, 2024       By  */s/ Erin M. Murphy*
                                      ERIN M. MURPHY
                                      JULIA DEIXLER
                                      Deputy Federal Public Defenders
                                      Attorneys for ROBERT RUNDO

**MEMORANDUM IN SUPPORT OF REQUEST FOR STATUS CONFERENCE**

The defense requests a status conference with the Court to address an unusual but urgent discovery matter. As the Court is aware, this matter has been pending since October 2018. (Compl., ECF No. 1.) Trial is set for March 26, 2024. (Order on Stip., ECF No. 261). Motions *in limine* are due February 26, 2024. (*Id.* at 3 ¶7b.) The defense requests a status conference with the Court this Friday, February 2, 2024, at 10am.[1] In sum, and as set forth fully below, the issue is as follows:

Over two months ago, the government produced a voluminous set of documents to the defense that the government now claims are Classified and/or "Secret." Based on the government's representations, and consistent with their ethical and legal obligations, the defense is working diligently to purge its files of these materials, which were not bates-stamped. But the government cannot and has not represented that these materials were not discoverable to the defense, regardless of their sensitive designation. A chart produced by the government hours before this filing confirms that many of these documents are discoverable and many have been in the government's possession for years. Concerningly, the government has not provided the defense with a clear timeline for how long it will take to declassify these discoverable materials or otherwise be legally made available for the defense to access in advance of trial.

The government's claimed error, along with its inability to provide clear guidance on when discoverable documents can be reproduced to the defense unduly prejudices Mr. Rundo by undermining his ability to prepare for trial. As it stands, at some untold time weeks from trial, he may (or may not) have discovery he is entitled to have before the rapidly approaching *in limine* motions deadline. His counsel may, just weeks before trial, need to go through the long and complex process of obtaining the necessary security clearances, or documents may be produced without security clearance but in a highly redacted and potentially unusable form--all for the defense to

---

[1] Defense counsel inquired with Chambers earlier this morning and understand the Court may be available at this time.

review discoverable materials in the government's possession for at least several years. Mr. Rundo may be forced to either waive his constitutional right to a speedy trial or to proceed without discovery he is entitled to have and which may assist in his defense. This untenable choice was avoidable and not at all Mr. Rundo's fault. Because of the unique nature of this situation, and the need for clarity as trial preparations continue, the defense respectfully requests a status conference so the Court can weigh in on five key questions articulated below.

## I. THE GOVERNMENT PRODUCES DISCOVERY WITHOUT ALERTING THE DEFENSE THAT IT CONTAINED CLASSIFIED, "SECRET" DOCUMENTS.

On November 14, 2023, the government made its twelfth production to the defense (hereinafter, "Production 12"). (Murphy Decl. ¶2.) Since then, the defense made three follow-up requests concerning Production 12, including substantive requests about particular documents, and twice requesting the government at least produce a bates-stamped copy of the production (because it was not bates-stamped). (*Id*. at ¶3.)

All along, and unbeknownst to the defense, Production 12 apparently contained a large volume of what the government now calls "SECRET" or otherwise "Classified" documents (collectively, "sensitive documents"). (Murphy Decl. ¶7.) The defense, of course, assumed the government would have reviewed the materials before producing them, and would not have produced them at all unless they were authorized to do so. After all, it is a crime to knowingly disclose classified information. 18 U.S.C. § 798; *see also* 18 C.F.R. § 3a.11 (Classification of official information).

## II. THE GOVERNMENT DISCLOSES HUNDREDS OF GIGABYTES OF OTHER RULE 16 ITEMS IT POSSESSED FOR YEARS, AFTER PRE-TRIAL MOTIONS DEADLINES.

Meanwhile, the government continued to produce substantial items of discovery that were plainly in its possession and clearly within its discovery obligations.

On December 1, 2023, the defense requested the government produce the full images of the devices seized from Mr. Rundo in 2018. (Murphy Decl., ¶4.) Although partial extractions of some devices had been previously produced, they were not full images. On January 18, 2024--after the deadline for pre-trial motions--the government finally produced **893GB of discovery**, including a collection of eight devices whose complete images had not yet been produced. (Murphy Decl. ¶¶5–6.)

On January 18, 2024, the defense noted its concerns with the government, especially given the government's insistence on an early pre-trial motion deadline in this matter. The defense inquired if the government would agree to the defense filing any necessary suppression motions on a shortened motion schedule, depending on what it uncovers in its review of the January 18 production. While the government declined to agree to this in the abstract, government counsel agreed to meet and confer with the defense on any additional motions and offered "discussing a trial continuance if you feel you need more time." (Murphy Decl. ¶6.) It is the government's actions putting Mr. Rundo into the untenable position of choosing to waive Speedy Trial rights or not be able to receive and/or adequately review discovery to which he is entitled.

## III. NEARLY TWO AND A HALF MONTHS PASS BEFORE THE GOVERNMENT INFORMS THE DEFENSE THAT IT MUST RETURN DOCUMENTS THAT PERTAIN TO MR. RUNDO AND HIS CO-CONSPIRATORS.

Meanwhile, the defense continued to review the massive discovery production from the government to determine if any other pre-trial motions might be necessary.

5

1 Then, at 6pm on Friday, January 26, 2024---nearly two and a half months later--the
2 government informed the defense of the classified and/or "SECRET" documents in
3 Production 12. (Murphy Decl. ¶7.) The government requested the defense destroy all
4 copies of these sensitive documents and sent the defense a spreadsheet listing certain
5 categories of those documents. (Murphy Decl. ¶7.)
6     Accepting the government's representations, the defense is in the process of
7 purging these sensitive documents from its files. (*Id.*) Complicating this process are
8 two facts: (1) the defense had these materials for nearly two and a half months and, as
9 the defense has been preparing for trial, these materials have been copied, renamed, and
10 sorted accordingly; (2) the government did not bates-stamp Production 12 despite our
11 requests, making the retrieval process even more challenging and time-consuming than
12 it otherwise might be. Nonetheless, the defense recognizes the sensitive nature of these
13 documents, and is committed and working internally to purge these materials. It is not
14 a quick fix.
15     On Monday, January 29, 2024, the defense spoke with the government about
16 how to handle these issues. (Murphy Decl. ¶8.) Government counsel advised that the
17 government was still in the process of reviewing Production 12 (produced in November
18 2023), as well as Production 11 (produced in October 2023) to determine if possibly
19 even *more* sensitive materials were inadvertently produced to the defense that would
20 need to be clawed back. (*Id.*)
21     During the call, the defense asked the government if it believed any of the
22 sensitive documents are discoverable. (*Id.*) From that conversation, the defense
23 understands that even though the government *still had not yet reviewed all of the*
24 *materials*, it is not taking the position that none were discoverable. (*Id.*) The defense
25 requested the government provide:
26     (1) A list of the individual file names at issue, so the defense can more accurately
27 and quickly locate and destroy those files.
28     (2) A log generally describing the nature of the clawed-back documents to

expedite the process of determining what is discoverable.

(3) A timeline on when any documents might be declassified and disclosed, as well as how long it may take the defense to gain any necessary security clearances to review any classified materials, and

(4) When the government could at least produce a bates-stamped version of the *non*-classified documents in Production 12.

(Murphy Decl. ¶8.)

On Tuesday evening, the defense followed up with the government on several of these requests and to provide an update on our efforts to purge all sensitive materials in our possession.  The defense also alerted government counsel of its intention to seek a status conference with the Court on this matter.  (*Id.* at ¶9.)  On Wednesday morning, the parties spoke again.  (*Id.* at ¶10.)  The government indicated that it is working to answer our questions given the classified nature of the materials.  (*Id.*)  As for a timeline, the government indicated the process for de-classifying "many" of the documents could take weeks.  (*Id.*)

Hours before the filing of this request, the government provided a spreadsheet to the defense that more clearly specifies the sensitive documents at issue and makes some effort to describe the content of some items.  While the defense will continue to review the spreadsheet, it seems the clawed-back materials (1) are discoverable, and (2) were in the government's possession for years.  Even more concerning, it appears the government's error also extends to an earlier production as well, and covers at least several hundred more documents.  (Murphy Decl. ¶11.)

//
//
//
//
//
//

7

# IV. THE DEFENSE REQUESTS THE STATUS CONFERENCE SO THE COURT CAN INQUIRE INTO THE STATUS OF THE GOVERNMENT'S REVIEW AND DISCLOSURE OF THESE SENSITIVE, BUT DISCOVERABLE DOCUMENTS.

This is an unusual situation that goes beyond an ordinary discovery dispute. This is why the defense requests the status conference.

Due process demands that the Government disclose to a defendant all material evidence in its possession that is favorable to the defense. *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); Fed. R. Crim P. 16(a). This disclosure must occur at a time when the evidence can be of use and value to the defendant. *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985).

Putting the logistical challenges aside, the government's errors now put the defense in a difficult and unacceptable position. If any of these documents are truly Classified and Secret, and are also discoverable under Rule 16 and/or *Brady/Giglio*, then the defense can only view them if (a) they are de-designated, or (b) the discovery is made available through the Classified Information Procedures Act ("CIPA"), which may require the defense to go through the long process of gaining the necessary security clearance to view the documents. Even in the best case scenario, where the documents can eventually be de-classified sufficient for standard production, the government's error means the defense will receive *another* substantial production right on the eve of trial.[2]

Today, the defense conferred with government counsel about these concerns, noting that the trial is in less than two months and motions *in limine* are due before the time when the government best estimates "many" of these documents could be de-

---

[2] Substantial trial preparation time has been wasted addressing an utterly avoidable issue. Instead of preparing for trial, the defense has had to devote significant time and the limited resources of its office to try and locate on their databases the claimed sensitive documents, which were not bates-labeled, and determine a protocol for destroying them.

8

classified. (Murphy Decl. ¶10.) Even if the government believes it will not use any of these items in its case-in-chief, that does not mean the *defense* would not use them to prepare for trial, or move to exclude them during the government's rebuttal case, or use them to cross-examine a government witness.

The government might offer a solution here: continue the trial if the defense really wants to look at the documents. This is unacceptable. The Sixth Amendment to the United States Constitution ensures every defendant "the right to a speedy and public trial," the right "to be confronted with the witnesses against him," the right "to have compulsory process for obtaining witnesses in his favor," and the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

For many months, trial has been set for March 26, 2024 in a case where the conduct is nearly seven years old. Mr. Rundo remains in custody on this 2018 case after already serving over seven months before the Court dismissed the matter in 2019. He was detained or jailed abroad many times in connection with this matter, including in advance of his extradition from Romania to the United States. In October 2023, he agreed to continue trial in this matter under the auspices that trial would be on March 26, 2024. (Order on Stip., ECF No. 261).

Each Sixth Amendment right is sacrosanct. *See Faretta v. California*, 422 U.S. 806, 818 (1975). The right to a speedy trial is fundamental and "it is one of the most basic rights preserved by our Constitution." *Klopfer v. State of N.C.*, 386 U.S. 213, 226 (1967). "The rights to notice, confrontation, and compulsory process, when taken together, guarantee that a criminal charge may be answered in a manner now considered fundamental to the fair administration of American justice—through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence." *Faretta*, 422 U.S. at 818. The right to effective assistance of counsel also "plays a crucial role in the adversarial system embodied in the Sixth Amendment since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of

the prosecution to which they are entitled." *Strickland v. Washington*, 466 U.S. 668, 685 (1984) (quotations and citations omitted). "In short, the [Sixth] Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it." *Faretta*, 422 U.S. at 818.

Mr. Rundo should not be forced to choose between one Sixth Amendment right over another. He has a right to a speedy trial *and* the discovery entitled to him *and* to counsel who are prepared for trial. He certainly should not choose between any of these because of the government's own errors, which it failed to discover for months.

To avoid this unacceptable but avoidable problem, the defense would ask the Court to weigh in on the following matters, including inquiring directly with the government during the status conference:

(1) Do the sensitive documents at issue consist of any *Brady/Giglio* material?

(2) Do the sensitive documents at issue consist of any material discoverable under Rule 16?

(3) For each discoverable sensitive document in Production 12, by when will the document be de-classified so it can be produced?

(4) If any discoverable sensitive documents cannot be de-classified enough to produce to the defense, what is the government's estimate for the defense to obtain the necessary clearance to review the discovery?

(5) What other discovery does the government intend to produce before trial, and by when will it do that?

The defense requests this status conference so the government can answer these questions, or provide a timeline by when it can answer these questions.

//
//
//
//
//

10

                         Respectfully submitted,

                         CUAUHTEMOC ORTEGA
                         Federal Public Defender

DATED: January 31, 2024     By  */s/ Erin M. Murphy*
                         ERIN M. MURPHY
                         JULIA DEIXLER
                         Deputy Federal Public Defenders
                         Attorneys for ROBERT RUNDO

**DECLARATION OF ERIN M. MURPHY**

I, Erin M. Murphy, declare:

1. I am an attorney at the Office of the Federal Public Defender in the Central District of California appointed to represent defendant Robert Rundo in *United States v. Robert Rundo, et al.*, 18-CR-759-CJC.

2. On November 14, 2023, the government disclosed to the defense "Production 12." The government informed the defense it was producing Production 12 without bates-stamp as a "courtesy" so the defense could review them while the government worked on re-producing a bates stamped version.

3. On three occasions since November 14, 2023, the defense inquired with the government about Production 12, including on December 1, 2023 and January 18, 2024, when the defense requested a bates-stamped version of the production, and on January 25, 2024, when the defense made substantive follow-up questions about items contained in Production 12.

4. On December 1, 2023, we requested the government produce the full devices seized from Mr. Rundo in 2018. Based on my review of the file in this matter, I understand that partial extractions and reports of some devices had been produced, but not the full devices.

5. On January 18, 2024, our office received an 893GB production from the government, which I understand contained a collection of full device images for eight devices.

6. On January 18, 2024, we wrote to the government to address our concerns about the substantial production of items after the pre-trial motions deadline, as well as making other discovery requests. In addition to a discovery cutoff, we inquired if the government would agree to allow the defense to file any suppression motions on a shortened schedule, if necessary. The government declined to agree to a discovery cutoff, and declined to "agree in advance to the filing and litigation of unidentified additional motions without understanding their scope and content," but assured they

1 "have done [their] best to respond in a timely matter to the numerous discovery requests you sent out before the holidays and remain open to discussing a trial continuance if you feel you need more time."

7. On Friday, January 26, 2024 at 6pm, government counsel emailed me and my co-counsel, Ms. Julia Deixler, to inform us that there were documents "which were inadvertently produced to you as part of [Production 12]" and attached a list of categories of documents which "were marked 'SECRET' and should not have been included in the production." The government asked the defense to "destroy any copies of those documents, including any digital copies on your server or on physical drives, and any hard copies you may have created." The defense has been working internally with its management, trial team, and tech department to purge these materials as quickly as possible.

8. On Monday, January 29, 2024, the defense spoke with the government about this situation. Government counsel advised that the government was still in the process of reviewing Production 12 (produced in November 2023), as well as Production 11 (produced in October 2023) to determine if possibly even more sensitive materials were inadvertently produced to the defense that would need to be clawed back. During the call, and to the best of my memory, we asked the government to provide (1) a log generally describing the nature of the clawed-back documents to expedite the process of determining what is discoverable; (2) a timeline on when any documents might be declassified and disclosed, as well as how long it may take the defense to gain any necessary security clearances to review any classified materials, and (3) when the government could at least produce a bates-stamped version of the *non*-classified documents in Production 12. We also asked the government if it believed any of the sensitive documents were discoverable to the defense. Government counsel stated it was not taking the position that none of the items were discoverable.

9. On Tuesday, January 30, 2024, the defense followed up with the government on some of these requests, and further requested a list of the individual file

13

names at issue, so the defense can more accurately and quickly locate and destroy those files. The defense informed the government at that time of its desire to seek a status conference before the Court on this matter.

10. On Wednesday, January 31, 2024, the parties conferred over the phone on these issues. The government indicated that it is working on answering our questions, including imminently providing a list of file names that will help assist the defense in locating the files, and generally identifying the nature of certain files to allow the defense to asses whether certain items may be discoverable. However, certain files cannot be described at all, and some file names cannot even be listed, because of their classified nature. As for a timeline on de-classifying the documents so the defense can review them, government counsel indicated its belief that "many" documents may be subject to de-classification, and estimated the process could "take weeks, not months."

11. This afternoon, government counsel emailed a spreadsheet that more clearly specifies the sensitive documents at issue and appears to describe some files and their contents. It appears that at least some of these materials are discoverable and were in the possession of the government since 2018. Also, it appears from this document that other classified, ostensibly discoverable documents were erroneously produced to the defense in another production from October 2023.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on January 31, 2024, at Los Angeles, California.

*/s/ Erin M. Murphy*
ERIN MURPHY
Deputy Federal Public Defender