E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
SOLOMON KIM (Cal. Bar No. 311466)
KATHRYNNE N. SEIDEN (Cal. Bar No. 310902)
Assistant United States Attorneys
Terrorism and Export Crimes Section
1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2450/0631
Facsimile: (213) 894-2979
E-mail: solomon.kim@usdoj.gov
kathrynne.seiden@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT RUNDO, and<br>ROBERT BOMAN<br><br>Defendants. | No. CR 18-00759(A)-CJC<br><br>OPPOSITION TO DEFENDANTS' MOTION TO STRIKE<br><br>Hearing Date: 2/21/2024<br>Hearing Time: 9:00 A.M.<br>Location: Courtroom of the Hon. Cormac J. Carney |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and the undersigned Assistant United States Attorneys, hereby files its Opposition to Defendants' Motion to Strike.

//

//

This Opposition is based upon the attached memorandum of points and authorities and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 5, 2024　　　　　Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division

　　　　　　/s/
SOLOMON KIM
KATHRYNNE N. SEIDEN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

In connection with the extremist group known as the Rise Above Movement ("RAM"), defendants Robert Rundo and Robert Boman and their associates traveled to various protests to commit acts of violence to forcibly oust those whose viewpoints they found objectionable. Defendants routinely bragged about their violent conduct in public and online. Defendants, along with other RAM members, also trained together, recruited together, traveled together, and conducted vicious assaults as a group. Defendants' training and recruiting to prepare for violent rioting continued in the lead-up to the August 2017 incident in Charlottesville, Virginia, at which defendant Rundo's RAM co-founder, and other RAM followers, violently attacked counter-protestors.

The First Superseding Indictment ("FSI") and its overt acts set forth the full scope of this conspiracy. Nonetheless, defendants seek to strike many of these allegations as "prejudicial surplusage." In doing so, defendants ask this Court to disregard the rule that allegations can only be stricken from an indictment if they are not relevant to the crime charged and are inflammatory and prejudicial. The allegations defendants seek to strike go directly to establishing core elements of defendants' conspiracy charge, including the agreement to riot, the intent to riot, and the overt acts in furtherance of rioting. Defendants' request to strike should therefore be denied.

**II.  FSI ALLEGATIONS**

Defendants are charged in Count One with conspiracy to riot, in violation of 18 U.S.C. § 371.  The FSI sets forth allegations describing the scope of the conspiracy and defendants and their co-conspirators' systematic pattern of training to commit acts of violence, committing acts of violence, and promoting their assaults to encourage others to join them to participate in violence at future events.  As a co-founder and leader of RAM, defendant Rundo coordinated and directed its members' conduct, including that of his co-conspirators.  Their pattern of violence continued through four political rallies.

**A.   March 25, 2017: Huntington Beach Rally**

Several weeks before the Huntington Beach rally, defendant Rundo served as the point person for organizing a hand-to-hand combat training session with other RAM members in preparation to engage in violence at the upcoming rally.  (FSI ¶ 7 Overt Acts ("OA") 2-4.)  On March 25, 2017, defendant Rundo, along with co-defendant Boman and several other RAM members, attended the Huntington Beach rally where they assaulted counter-protestors, including a journalist.  (Id. OA 6-9.)  The next day, RAM members celebrated and promoted their assaults, claiming victory on behalf of the "alt-reich."  (Id. OA 10-11.)

**B.   April 15, 2017: Berkeley Rally**

Within mere days of the Huntington Beach rally, RAM members again took to social media and used text messages to recruit individuals to attend another rally in Berkeley, CA, where they would be prepared to commit violence in the form of hand-to-hand combat.  (Id. OA 12-13.)  On April 9, 2017, defendant Rundo organized a

training session for hand-to-hand fighting and formation fighting training for RAM members in San Clemente, CA.  Then, just two days before the Berkely rally, defendant Rundo circulated a YouTube link to other RAM members on an online chat group showing large groups of individuals engaging in hand-to-hand combat in preparation for the rally.  (Id. OA 14.)  On the day of the rally, April 15, 2017, defendant Rundo exchanged online messages with the leader of another group to coordinate their activities at the rally.  (Id. OA 17.)  Defendant Rundo, along with his followers, showed up to the Berkeley rally wearing a combination of black face masks, mouth guards, and athletic tape around their wrists, and assaulted several individuals in attendance, including a Berkely police officer.  (Id. OA 18-20.)  On the very next day, defendant Rundo, along with other RAM members, once again took to social media and exchanged text messages to celebrate their assaults, posting photographs of their assaults and promoting their "total Aryan victory."  (Id. OA 21-27.)

   **C. June 10, 2017: San Bernardino Rally**

  About a week before the San Bernardino Rally, defendant Rundo's co-founder of RAM, Ben Daley, sent a Facebook message to a RAM associate stating that he and several other RAM members were planning to "take over" an upcoming political march.  (Id. OA 28.)  On June 10, 2017, defendant Rundo, along with several other RAM members, attended a political rally in San Bernardino, CA where several RAM members chased counter-protestors to their cars and smashed a car window.  (Id. OA 30.)  Following the event, defendant Rundo, along with his followers, yet again celebrated their assaults through text messages and social media.  (Id. OA 31-33.)  Defendant Rundo, for example, messaged another RAM associate on a social media platform a

day after the rally, offering to send the associate a video recording showing "us smashing the antifa car and chasing them" down at the rally. (Id. OA 32.)

**D. August 11-12, 2017: Charlottesville Rally**

Defendant Rundo and his followers' pattern of preparing for, engaging in, and promoting their violence continued up to and including the rally in Charlottesville, VA. The FSI alleges the following, all of which defendants request to strike:

- **June 18, 2017 (OA 34):** Two RAM members texted one another regarding booking flights to attend the Charlottesville rally.
- **July 23, 2017 (OA 35):** Defendant Rundo posted a RAM promotional video showing RAM members assaulting counter-protestors at the Huntington Beach and Berkeley rallies.
- **July 26, 2017 (OA 36):** Defendant Rundo tweeted to another user from the RAM twitter account stating, "hope we can get y'all some more commie beatdown vids soon - Antifa never learn ☺."
- **August 10, 2017 (OA 37):** Co-defendant Boman posted a photograph on his Facebook page showing himself punching a person at the Berkeley rally.
- **August 10-11, 2017 (OA 38):** Several RAM members travelled from Los Angeles, CA to Charlottesville, VA to attend the Charlottesville rally.
- **August 12, 2017 (OA 39):** Several RAM mem members attended the Charlottesville rally where they engaged in violence against individuals.

## III. ARGUMENT

The Court should deny defendants' motion to strike the overt acts concerning the events leading up to and including the Charlottesville rally because they are relevant to establishing the core elements of defendants' conspiracy. Even assuming these allegations are not probative, defendants fail to establish that the allegations are unfairly prejudicial and inflammatory, particularly because the allegations themselves make no reference to the death of a counter-protestor at the Charlottesville rally.

### A.  Applicable Law

The purpose of a motion to strike under Federal Rule of Criminal Procedure 7(d) is to protect the defendant only from "immaterial," "irrelevant," "prejudicial or inflammatory allegations that are neither relevant nor material to the charges." United States v. Laurienti, 611 F.3d 530, 546-47 (9th Cir. 2010) (citations omitted).

Thus, "a motion to strike surplusage [from the indictment] should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." United States v. Rezaq, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (internal quotations and citations omitted) (emphasis added); see also United States v. Daniel, 2010 WL 749873, at *4 (C.D. Cal. 2010) (Morrow, J.) ("Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial") (quoting United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990)); United States v. Hernandez 85 F.3d 1023, 1030 (2d Cir. 1996) ("We have cautioned that motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime

charged and are inflammatory and prejudicial.") (citations and quotation marks omitted).

The "scope of a district court's discretion to strike material from an indictment is narrow." United States v. Oakar, 111 F.3d 146, 157 (D.C. Cir. 1997) (citing United States v. Jordan, 626 F.2d 928, 931 n.1 (D.C. Cir. 1980)); see also Rezaq, 134 F.3d at 1134 ("Rule 7(d) has been strictly construed against striking surplusage."). "The burden of showing that surplusage should be stricken as inflammatory and/or prejudicial rests with the defendant." Daniel, 2010 WL 749873, at *4.

  **B. The Allegations are Relevant Overt Acts Taken in Furtherance of the Charged Conspiracy**

Defendants' motion to strike fails because the allegations concerning the events leading up to and including the Charlottesville event are relevant overt acts that defendant Rundo and his co-conspirators, including unindicted co-conspirators, took in furtherance of the conspiracy. To prove the charged conspiracy, the government must prove the following elements beyond a reasonable doubt: (1) an agreement between defendant and one or more other persons to violate the Anti-Riot Act ("ARA"); (2) the intent to commit the substantive crime; and (3) an overt act committed for the purpose of carrying out the conspiracy. Ninth Cir. Model Crim. Jury Instructions, § 11.1 (Conspiracy). The overt acts at issue demonstrate defendant Rundo and his co-conspirators' agreement to engage in violence at riots, their intent to carry out the agreement, and the actions they took to do so. See United States v. Terrigno, 838 F.2d 371, 373 (9th Cir. 1988) (denial of motion to strike was

proper when allegations, while somewhat prejudicial, were relevant and material to proving intent).

Specifically, the FSI sets forth overt acts that defendant Rundo and his co-conspirators engaged in before, during, and after the riots at which they engaged in violence. The overt acts that defendants seek to strike detail how defendant Rundo and his co-conspirators continued their conspiracy to violate the ARA after the Berkeley event and leading up to the Charlottesville event. In particular, these overt acts discuss defendant Rundo and his followers' coordination of their travel to the Charlottesville event (as they had done before); their intent to use violence at the event (as they had done before); their actual use of violence at the event (as they had done before); and their public celebration and promotion of their violence online (as they had done before). Each of these allegations is probative of defendant Rundo's participation in an ongoing agreement to violate the ARA.

Defendants' argument that these allegations should be stricken because defendant Rundo did not attend the Charlottesville event or reach a specific agreement to riot at that event is without merit. Initially, the FSI alleges that defendant Rundo participated in an ongoing conspiracy for several months to violate the ARA. The FSI alleges that defendant Rundo and his co-conspirators continued to prepare for violence leading up to the Charlottesville event, and that his co-conspirators and RAM followers carried out violence at that event in the name of RAM. Indeed, in addition to the overt acts set forth in the FSI, the government intends to present evidence at trial that defendant Rundo contemplated attending the Charlottesville

event with other RAM members and then specifically directed another RAM member to document RAM members' actions at the event.

Moreover, although defendant Rundo did not attend the Charlottesville event alongside his RAM followers, it is well established that "a defendant need not personally commit the overt act in furtherance of the conspiracy [to be guilty of conspiracy] so long as one of the coconspirators did so." Marino v. United States, 91 F.2d 691, 694-96 (9th Cir. 1937); see also United States v. Long, 301 F.3d 1095, 1103 (9th Cir. 2002) (per curiam) ("[A] conspirator [is] criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." (citing Pinkerton v. United States, 328 U.S. 640, 645-48 (1946)).

Defendants' citation to United States v. Lopez, 4 F.4th 706, 726 (9th Cir. 2021) for the proposition that courts may strike allegations when they constitute one of several means to prove a particular charge is misplaced. (Dkt. 287 at 9.) Lopez did not address a conspiracy charge; it concerned a substantive crime of enticement of an individual to engage in sexual activity. Lopez, 4. F.4th at 726. In a conspiracy case, by contrast, "[t]he rule is well established that the government [. . . ] may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment. This is consistent with [Ninth Circuit] precedent and that of other circuits." United States v. Rizk, 660 F.3d 1125, 1131 (9th Cir. 2011); United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) ("uncharged transactions" that were "closely linked to" events charged in drug conspiracy were admissible). This is especially so when the

allegations set forth a recurring pattern of violent conduct. See United States v. Patterson, 819 F.2d 1495, 1504–05 (9th Cir. 1987) (evidence of shooting charged as overt act in drug conspiracy was not unfairly prejudicial and was relevant because shooting incident was an example of pattern of violence alleged in indictment); see also United States v. Montour, 944 F.2d 1019, 1026 (2d Cir. 1991) ("If an act is relevant to the alleged conspiracy when viewed in light of all the evidence, it should not be stricken."). Because the overt acts pertaining to the events leading up to and including the Charlottesville rally are relevant to establishing the elements of the charged conspiracy, they should not be stricken from the FSI.

**C. The Allegations are Not Unfairly Prejudicial**

Defendants' motion also should be denied because he cannot meet his burden of showing that the allegations are unfairly prejudicial and inflammatory. All probative evidence is prejudicial, but only evidence that "has an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one" is considered "unfairly" prejudicial. United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir. 1991) (internal quotation omitted). "[T]he greater the degree of probativeness possessed by the evidence, the greater the showing of unfair prejudice that will be required to exclude the evidence." United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir. 1982). Here, with respect to the Charlottesville rally, the FSI allegations state that several RAM members prepared for and participated in the rally where they engaged in one or more acts of violence. (FSI ¶ 7 OA 34, 38-39.) The FSI does not make any mention of deaths or otherwise use inflammatory language to describe

any of the events associated with the rally. Nor does the government intend to present any evidence at trial related to the death of a counter-protestor during the rally. Because the allegations are narrowly tailored to the relevant acts that defendants and his co-conspirators committed, they are not unfairly prejudicial or inflammatory and defendants' motion to strike them should be denied.

**IV.   CONCLUSION**

For the foregoing reasons, defendants' Motion to Strike should be denied.

Dated: February 5, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division

          /s/
SOLOMON KIM
KATHRYNNE N. SEIDEN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA