CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JULIA DEIXLER (Bar No. 301954)
(E-Mail: julia_deixler@fd.org)
ERIN M. MURPHY (Bar No. 285087)
(E-Mail: erin_murphy@fd.org.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ROBERT RUNDO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT RUNDO,<br><br>Defendant. | Case No. CR 18-759-CJC<br><br>**NOTICE OF MOTION; DEFENDANT ROBERT RUNDO'S MOTION STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: February 21, 2024<br><br>Hearing Time: 9:00 a.m.<br><br>Hearing Place: Courtroom of the Hon. Cormac J. Carney |

Robert Rundo, through his counsel of record, Deputy Federal Public Defenders Julia Deixler and Erin M. Murphy, hereby files his Reply in Support of Defendant Robert Rundo's Motion To Strike. This reply is based on the attached Memorandum of Points and Authorities, all files and records in this case, and any additional evidence and argument presented at or before the hearing on the motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 12, 2024      By  */s/ Julia Deixler*
ERIN M. MURPHY
JULIA DEIXLER
Deputy Federal Public Defenders
Attorneys for ROBERT RUNDO

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government's Opposition to Defendant's Motion to Strike (the "Opposition") concedes that Mr. Rundo and the other defendants did not attend the "Unite the Right" rally at Charlottesville, the notorious political event that resulted in the death of a counter-protestor as a result of occurrences wholly unrelated to RAM. It also does nothing to further connect Mr. Rundo and the defendants to the infamous rally. Instead, it relies on a supposed pattern of conduct alleged about the other rallies to suggest the relevance necessary to bring Charlottesville into the First Superseding Indictment ("FSI"). Notably, the Opposition does not: (1) assert that the Charlottesville rally allegations are necessary to establish an element of the conspiracy; or (2) deny that the Charlottesville rally was a widely-publicized and sensational political event.

Ultimately, the Opposition only succeeds in highlighting the lack of meaningful connection between the Charlottesville rally and the defendants in the FSI. Without more facts connecting the Charlottesville rally to the defendants, the Opposition does not, and cannot, establish the relevance of these allegations to the elements of conspiracy. To the extent there is some relevance to the Charlottesville allegations, it is far outweighed by the prejudice to the defendants of associating them with the infamous rally that is viewed by many as synonymous with violence. The Court can and should strike the Charlottesville rally allegations.

## II. ARGUMENT

**A.    The Charlottesville Rally Is Irrelevant To The Conspiracy.**

As pled, the Charlottesville overt acts are not only unnecessary to establishing a conspiracy, but also irrelevant. As the Opposition acknowledges, the defendants did not attend the Charlottesville rally. (Opp. at 7-8.) Nor does the FSI point to any direct communications with the RAM individuals who did attend. The FSI also fails to link any social media postings by the defendants to the rally. The only real connection

between the defendants and the rally is that other individuals associated with RAM attended it.

In an attempt to establish relevance, the Opposition states that Charlottesville is probative because it is part of a "recurring pattern" of conduct detailed in the FSI's discussion of the other three rallies, i.e. Huntington Beach, Berkeley, and San Bernardino. (Opp. at 4, 8-9.) But, unlike the other rallies in the FSI, the Charlottesville overt acts do not offer any specific communications or actions by the defendants that can be linked to Charlottesville. Also, the defendants attended Huntington Beach, Berkeley, and San Bernardino, but never attended Charlottesville. The government's reliance on the other three rallies to bolster the relevance of the Charlottesville allegations only illustrates why these allegations are surplusage.

Comparison with the other rallies illustrate how thin the government's attempt to bring in the inflammatory events of Charlottesville really is. For example, looking at the allegations related to Huntington Beach, the FSI includes overt acts alleging the defendants attended the rally (Overt Acts No. 6) and communicated immediately before the rally about engaging in free speech at the rally (i.e., bringing a banner to the rally (Overt Act No. 5)). (FSI at 5.) The FSI also alleges the defendants made social media postings citing the rally the next day (Overt Acts Nos. 9 and 10). (*Id.* at 5-6.) While the defense contests the criminality of the conduct outlined in these overt acts, there is no dispute that the alleged conduct arises out of defendants' participation in a political rally in Huntington Beach.

In contrast, the Charlottesville allegations rely on overt acts describing conduct that either has no connection to Charlottesville or was done by others not charged in this case. For example, Overt Act No. 35 refers to a social media posting by Mr. Rundo about the Huntington Beach rally with no apparent reference to Charlottesville. (FSI at 10.) Not only does the social media posting make no mention of Charlottesville, it was made 22 days before the Charlottesville rally. (*Id.*) The FSI discusses another social media posting by Mr. Rundo in Overt Act No. 36, but this

2

posting was made nearly 20 days before the rally and also contains zero reference to the Charlottesville. (*Id.*) Overt Act No. 37 references a photograph posted by Mr. Boman closer in time to the Charlottesville rally, but it depicts him "punching a person at the Berkeley Rally," with no mention of Charlottesville. (*Id.*) All other overt acts related to Charlottesville detail conduct by unidentified RAM members without reference to Mr. Rundo or his co-defendants.

The government seems well-aware of this shortfall in the FSI when it comes to Charlottesville. It submits in the Opposition that it intends to provide more specific evidence of a connection between Mr. Rundo and the Charlottesville rally at trial. (Opp. at 7-8 ("Indeed, in addition to the overt acts set forth in the FSI, the government intends to present evidence at trial that the defendant Runo contemplated attending the Charlottesville event with other RAM members and then specifically directed another RAM member to document RAM members' actions at the event.").) But a vague suggestion that the government may eventually be able to connect Charlottesville to the charged conspiracy does not change the language of the FSI, which does not establish the relevance of Charlottesville. And even assuming the relevance of the limited evidence that the government describes, that relevance is plainly outweighed by the prejudicial nature of the Charlottesville evidence.

Even if the Court accepts that either social media postings (that do not mention Charlottesville) made weeks in advance of the rally or the presence of unidentified RAM members at the rally creates some connection to the defendants, the relevance of Charlottesville to the conspiracy is minimal at best. It is certainly not necessary to proving the conspiracy. Striking the Charlottesville allegations would not affect the government's ability to prove the conspiracy. *See United States v. Garcia-Paz*, 282 F.3d 1212, 1217 (9th Cir. 2002) ("Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage[.]"). The inflammatory association to Charlottesville weighed against its, at best, marginal probative value allows the Court to strike these allegations. *See United States v. Martin*, No. 07-CR-1205-CBM, 2009

WL 667299, at *5 (C.D. Cal. Mar. 10, 2009) (granting motion to strike because "[w]hile there is some probative value to these allegations, it is outweighed by the prejudice to Defendants"); *United States v. Sahakian*, No. 02-CR-938-VAP, 2008 WL 11383346, at *5–6 (C.D. Cal. July 28, 2008) (striking prejudicial allegations where the indictment "contains ample language aside from these allegations that is sufficient" to satisfy the Government's theory of their relevance). The Charlottesville allegations can be stricken.

**B.     Charlottesville is Inflammatory and Unfairly Prejudicial.**

The Charlottesville allegations are inflammatory, unfairly prejudicial, and any reference to the rally cannot be sanitized of its prejudicial effect. The public is well-aware of Charlottesville and its association with death and violence. Also, media coverage of the Unite the Right Rally extended far beyond 2017.[1] For example, then-President Trump's famous comments on the rally drew media coverage for years.[2] President Biden has stated publicly that he decided to run for president because of Charlottesville and has openly discussed its impact on him and policy even years later.[3] There is no doubt that the parties will be hard-pressed to find 12 jurors who have never seen coverage of the rally or heard of the death that occurred there. The prejudice to the defendants will be insurmountable, as linking them to the rally immediately

---

[1] *See* Debbie Elliott, *The Charlottesville rally 5 years later: 'It's what you're still trying to forget'*, NPR (Aug. 12, 2022), available at https://www.npr.org/2022/08/12/1116942725/the-charlottesville-rally-5-years-later-its-what-youre-still-trying-to-forget (last visited on Feb. 11, 2024).

[2] Jordyn Phelps, *Trump defends 2017's 'very fine people' comments, calls Robert E. Lee 'a great general'*, ABC News (April 26, 2019), available at https://abcnews.go.com/Politics/trump-defends-2017-fine-people-comments-calls-robert/story?id=62653478 (last visited Feb. 11, 2024).

[3] Astead W. Herndon, *Charlottesville Inspired Biden to Run. Now It Has a Message for Him.*, N.Y. Times (Jan. 21, 2021), available at https://www.nytimes.com/2021/01/21/us/politics/charlottesville-attack-biden.html (last visited on Feb. 11, 2024); Statement of President Joe Biden on the Fourth Anniversary of the Events at Charlottesville, Virgina, The White House (Aug. 12, 2021), available at https://www.whitehouse.gov/briefing-room/statements-releases/2021/08/12/statement-of-president-joe-biden-on-the-fourth-anniversary-of-the-events-at-charlottesville-virginia/ (last visited on Feb. 11, 2024).

4

associates them with the violence and death caused by Charlottesville rally participants. The defendants never attended the rally, but will be tainted by it from the onset of trial.

The government does not deny that the events at Charlottesville are notorious; it cannot. Instead, the Opposition submits there is no prejudice because the "FSI does not make any mention of deaths or otherwise use inflammatory language to describe any of the events associated with the rally." (Opp. at 9-10.) The Opposition also says that the government does not intend to present evidence of the death at Charlottesville at trial. (*Id.*) The government's argument that it does not intend to reference the death at Charlottesville virtually admits that knowledge of the death would be inflammatory in the minds of the jurors. This argument obtusely ignores the heated national media coverage of Charlottesville, the widespread knowledge of the death, and the taint the rally brings to anyone associated with it.

The purpose of a motion to strike under Federal Rule of Criminal Procedure 7(d) is to protect a defendant against prejudicial or inflammatory allegations that are not material to the charges. *United States v. Ramirez*, 710 F.2d 535, 544-545 (9th Cir. 1983). That protection is exactly what is called for here. The allegations should be stricken.

### III. CONCLUSION

For the reasons discussed above and in his motion, Mr. Rundo respectfully requests that the Court strike the allegations relating to the Charlottesville, Virginia rally (i.e., Overt Act Nos. 34-39 in paragraph 7) from the FSI.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 12, 2024   By  /s/ *Julia Deixler*
ERIN M. MURPHY
JULIA DEIXLER
Deputy Federal Public Defenders
Attorneys for ROBERT RUNDO

5