E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
KATHRYNNE SEIDEN (Cal. Bar No. 310902)
ANNA P. BOYLAN (Cal. Bar No. 322791)
Assistant United States Attorneys
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0631/2170
    Facsimile: (213) 894-0141
    E-mail:    kathrynne.seiden@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-00759-JLS |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT ROBERT RUNDO |
| v. | |
| ROBERT RUNDO, | |
| Defendant. | |

    1.    This constitutes the plea agreement between ROBERT RUNDO ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

    2.    Defendant agrees to:

        a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the

1 | superseding indictment in <u>United States v. Rundo</u>, CR No. 18-759-CJC,

2 | which charges defendant with conspiracy to riot, in violation of 18

3 | U.S.C. § 371.

4 |         b.   Not contest facts agreed to in this agreement.

5 |         c.   Abide by all agreements regarding sentencing contained

6 | in this agreement.

7 |         d.   Appear for all court appearances, surrender as ordered

8 | for service of sentence, obey all conditions of any bond, and obey

9 | any other ongoing court order in this matter.

10 |         e.   Not commit any crime; however, offenses that would be

11 | excluded for sentencing purposes under United States Sentencing

12 | Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

13 | within the scope of this agreement.

14 |         f.   Be truthful at all times with the United States

15 | Probation and Pretrial Services Office and the Court.

16 |         g.   Pay the applicable special assessment at or before the

17 | time of sentencing unless defendant has demonstrated a lack of

18 | ability to pay such assessments.

19 | THE USAO'S OBLIGATIONS

20 |    3.   The USAO agrees to:

21 |         a.   Not contest facts agreed to in this agreement.

22 |         b.   Abide by all agreements regarding sentencing contained

23 | in this agreement.

24 |         c.   At the time of sentencing, move to dismiss the

25 | remaining counts of the superseding indictment as against defendant.

26 | Defendant agrees, however, that at the time of sentencing the Court

27 | may consider any dismissed charges in determining the applicable

28 |

1  Sentencing Guidelines range, the propriety and extent of any

2  departure from that range, and the sentence to be imposed.

3          d.    At the time of sentencing, provided that defendant

4  demonstrates an acceptance of responsibility for the offense up to

5  and including the time of sentencing, recommend a two-level reduction

6  in the applicable Sentencing Guidelines offense level, pursuant to

7  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

8  additional one-level reduction if available under that section.

9          e.    Recommend that defendant be sentenced to a term of

10  imprisonment no higher than 24 months' imprisonment followed by a

11  term of supervised release no higher than 24 months.

12                      NATURE OF THE OFFENSE

13     4.    Defendant understands that for defendant to be guilty of

14  the crime charged in count one, that is, conspiracy to riot, in

15  violation of 18 U.S.C. § 371, the following must be true: (1) between

16  on or about March 2017 and continuing to on or about May 2018, there

17  was an agreement between two or more persons to commit at least one

18  crime as charged in the indictment; (2) defendant became a member of

19  the conspiracy knowing of at least one of its objectives and

20  intending to help accomplish it; and (3) one of the members of the

21  conspiracy performed at least one overt act for the purpose of

22  carrying out the conspiracy.  The elements of the crime of rioting in

23  violation of 18 U.S.C. § 2101 are as follows: (1) defendant traveled

24  in interstate or foreign commerce or used any facility of interstate

25  or foreign commerce, including, but not limited to, the mail,

26  telegraph, telephone, radio, or television; (2) defendant did so with

27  intent to incite, participate in, or carry on a riot, or to commit an

28  act of violence in furtherance of a riot, or to aid and abet any

1  person in inciting or participating in or carrying on a riot or

2  committing any act of violence in furtherance of a riot; and (3)

3  during the course of such travel or use or thereafter, defendant

4  performed or attempted to perform an overt act for any purpose

5  specified above.

6                              PENALTIES

7      5.   Defendant understands that the statutory maximum sentence

8  that the Court can impose for a violation of 18 U.S.C. § 371 is: five

9  years' imprisonment; a three-year period of supervised release; a

10 fine of $250,000, or twice the gross gain or gross loss resulting

11 from the offense, whichever is greatest; and a mandatory special

12 assessment of $100.

13     6.   Defendant understands that supervised release is a period

14 of time following imprisonment during which defendant will be subject

15 to various restrictions and requirements.  Defendant understands that

16 if defendant violates one or more of the conditions of any supervised

17 release imposed, defendant may be returned to prison for all or part

18 of the term of supervised release authorized by statute for the

19 offense that resulted in the term of supervised release, which could

20 result in defendant serving a total term of imprisonment greater than

21 the statutory maximum stated above.

22     7.   Defendant understands that, by pleading guilty, defendant

23 may be giving up valuable government benefits and valuable civic

24 rights, such as the right to vote, the right to possess a firearm,

25 the right to hold office, and the right to serve on a jury. Defendant

26 understands that he is pleading guilty to a felony and that it is a

27 federal crime for a convicted felon to possess a firearm or

28 ammunition.  Defendant understands that the conviction in this case

1   may also subject defendant to various other collateral consequences,

2   including but not limited to revocation of probation, parole, or

3   supervised release in another case and suspension or revocation of a

4   professional license.  Defendant understands that unanticipated

5   collateral consequences will not serve as grounds to withdraw

6   defendant's guilty plea.

7       8.   Defendant understands that, if defendant is not a United

8   States citizen, the felony conviction in this case may subject

9   defendant to: removal, also known as deportation, which may, under

10  some circumstances, be mandatory; denial of citizenship; and denial

11  of admission to the United States in the future.  The Court cannot,

12  and defendant's attorney also may not be able to, advise defendant

13  fully regarding the immigration consequences of the felony conviction

14  in this case.  Defendant understands that unexpected immigration

15  consequences will not serve as grounds to withdraw defendant's guilty

16  plea.

17                          FACTUAL BASIS

18      9.   Defendant admits that defendant is, in fact, guilty of the

19  offense to which defendant is agreeing to plead guilty.  Defendant

20  and the USAO agree to the statement of facts provided below and agree

21  that this statement of facts is sufficient to support a plea of

22  guilty to the charge described in this agreement and to establish the

23  Sentencing Guidelines factors set forth in paragraph 11 below but is

24  not meant to be a complete recitation of all facts relevant to the

25  underlying criminal conduct or all facts known to either party that

26  relate to that conduct.

27      Between March 2017 and May 2018, in Los Angeles County, within

28  the Central District of California and elsewhere, defendant, his co-

1  conspirators, and others participated in an organization originally

2  known as the "DIY Division" that was later rebranded as the "Rise

3  Above Movement" or "RAM."  RAM represented itself as a fighting group

4  of a new nationalist white supremacy and identity movement.  As part

5  of their membership in RAM, defendant and his co-conspirators agreed

6  to attend, and did attend, rallies with the intent to provoke and

7  engage in violent physical conflicts.

8      Defendant and his co-conspirators performed numerous overt acts

9  in furtherance of their agreement.  For example, to prepare for

10 violent physical conflicts, defendant, his co-conspirators, and other

11 RAM members and associates held hand-to-hand and other fighting

12 training sessions, which they organized through phone calls and

13 social media and text messages.  Defendant organized and attended

14 several such training sessions in 2017.  On various social media

15 platforms, including Twitter, Facebook, Instagram, GAB, and Discord,

16 defendant and his co-conspirators posted messages and photographs of

17 themselves preparing for or engaging in violence, accompanied by

18 statements such as "When the squad[']s not out smashing commies,"

19 "#rightwingdeathsquad," and "#goodnightleftside."

20      In March 2017, defendant and other RAM members engaged in

21 fighting training in San Clemente, California, to prepare to engage

22 in violence at political events, including an upcoming rally on March

23 25, 2017, in Huntington Beach, California (the "Huntington Beach

24 rally").  On March 25, 2017, defendant and other RAM members attended

25 the Huntington Beach rally, where they pursued and assaulted other

26 persons.  During the ensuing violence, defendant tackled and punched

27 one protestor multiple times.  Following the event, defendant and his

28 co-conspirators posted photographs and videos celebrating the

1  assaults.  For example, on February 15, 2018, defendant posted a
2  photograph on the RAM Twitter account showing several RAM members at
3  the Huntington Beach rally with the message "Shortly after this pic
4  antifa was btfo [blown the fu*k out] in Huntington Beach."
5      In anticipation of a rally scheduled to occur on April 15, 2017,
6  in Berkeley, California (the "Berkeley rally"), defendant and others
7  helped organize training for RAM.  On April 14, 2017, defendant, his
8  co-conspirators, and other RAM members reserved and rented a van to
9  drive together to Richmond, California, where they checked into a
10 hotel.  At the Berkeley rally on April 15, 2017, there were several
11 violent clashes between opposing groups throughout the day.  In one
12 such instance, defendant and several of his co-conspirators crossed
13 the barrier that police had erected to separate the opposing groups
14 and punched and kicked several people.  After the rally, defendant
15 and his co-conspirators used the internet to post photographs and
16 videos of assaults one or more of them had committed.  For example,
17 on February 14, 2018, the RAM GAB account posted a photograph of a
18 RAM member punching a protestor at the Berkeley rally with the text
19 "Talk shit get hit!"
20     On June 10, 2017, defendant, several of his co-conspirators, and
21 fellow RAM members attended a rally in San Bernardino, California
22 (the "San Bernardino rally"), at which they confronted and pursued
23 protestors.  The next day, when asked by an associate whether he had
24 filmed his activities at the San Bernardino rally, defendant wrote
25 "some girl got us smashing the antifa car and chaseing (sic) then
26 (sic)," and "the next time I will get someone to film for us to get
27 all the action."
28

SENTENCING FACTORS

10.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).   Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

11.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. § 2A2.2(a) |
| More than Minimal Planning: | +2 | U.S.S.G. § 2A2.2(b)(1) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

12.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

WAIVER OF CONSTITUTIONAL RIGHTS

13.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

8

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

14.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

1  the statement of facts provided herein is insufficient to support

2  defendant's plea of guilty.

3              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

4       15.   Defendant agrees that, provided the Court imposes a total

5  term of imprisonment on all counts of conviction of no more than 24

6  months, defendant gives up the right to appeal all of the following:

7  (a) the procedures and calculations used to determine and impose any

8  portion of the sentence; (b) the term of imprisonment imposed by the

9  Court; (c) the fine imposed by the Court, provided it is within the

10 statutory maximum; (d) to the extent permitted by law, the

11 constitutionality or legality of defendant's sentence, provided it is

12 within the statutory maximum; (e) the term of probation or supervised

13 release imposed by the Court, provided it is within the statutory

14 maximum; and (f) any of the following conditions of probation or

15 supervised release imposed by the Court: the conditions set forth in

16 Second Amended General Order 20-04 of this Court; the drug testing

17 conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

18 alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19      16.   The USAO agrees that, provided (a) all portions of the

20 sentence are at or below the statutory maximum specified above and

21 (b) the Court imposes a term of imprisonment of no less than 24

22 months, the USAO gives up its right to appeal any portion of the

23 sentence.

24      17.   Defendant also gives up any right to bring a post-

25 conviction collateral attack on the conviction or sentence, except a

26 post-conviction collateral attack based on a claim of ineffective

27 assistance of counsel, a claim of newly discovered evidence, or an

28 explicitly retroactive change in the applicable Sentencing

                                    10

1  Guidelines, sentencing statutes, or statutes of conviction.

2  Defendant understands that this waiver includes, but is not limited

3  to, arguments that the statute to which defendant is pleading guilty

4  is unconstitutional, and any and all claims that the statement of

5  facts provided herein is insufficient to support defendant's plea of

6  guilty.

7                    RESULT OF WITHDRAWAL OF GUILTY PLEA

8       18.  Defendant agrees that if, after entering a guilty plea

9  pursuant to this agreement, defendant seeks to withdraw and succeeds

10 in withdrawing defendant's guilty plea on any basis other than a

11 claim and finding that entry into this plea agreement was

12 involuntary, then (a) the USAO will be relieved of all of its

13 obligations under this agreement; and (b) should the USAO choose to

14 pursue any charge that was either dismissed or not filed as a result

15 of this agreement, then (i) any applicable statute of limitations

16 will be tolled between the date of defendant's signing of this

17 agreement and the filing commencing any such action; and

18 (ii) defendant waives and gives up all defenses based on the statute

19 of limitations, any claim of pre-indictment delay, or any speedy

20 trial claim with respect to any such action, except to the extent

21 that such defenses existed as of the date of defendant's signing this

22 agreement.

23                    EFFECTIVE DATE OF AGREEMENT

24      19.  This agreement is effective upon signature and execution of

25 all required certifications by defendant, defendant's counsel, and an

26 Assistant United States Attorney.

27

28

                              11

BREACH OF AGREEMENT

20.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

21.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

1          c.    Defendant agrees that: (i) any statements made by

2    defendant, under oath, at the guilty plea hearing (if such a hearing

3    occurred prior to the breach); (ii) the agreed to factual basis

4    statement in this agreement; and (iii) any evidence derived from such

5    statements, shall be admissible against defendant in any such action

6    against defendant, and defendant waives and gives up any claim under

7    the United States Constitution, any statute, Rule 410 of the Federal

8    Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

9    Procedure, or any other federal rule, that the statements or any

10   evidence derived from the statements should be suppressed or are

11   inadmissible.

12          COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

13                        OFFICE NOT PARTIES

14       22.   Defendant understands that the Court and the United States

15   Probation and Pretrial Services Office are not parties to this

16   agreement and need not accept any of the USAO's sentencing

17   recommendations or the parties' agreements to facts or sentencing

18   factors.

19       23.   Defendant understands that both defendant and the USAO are

20   free to: (a) supplement the facts by supplying relevant information

21   to the United States Probation and Pretrial Services Office and the

22   Court, (b) correct any and all factual misstatements relating to the

23   Court's Sentencing Guidelines calculations and determination of

24   sentence, and (c) argue on appeal and collateral review that the

25   Court's Sentencing Guidelines calculations and the sentence it

26   chooses to impose are not error, although each party agrees to

27   maintain its view that the calculations in paragraph 11 are

28   consistent with the facts of this case.  While this paragraph permits

                                    13

1  both the USAO and defendant to submit full and complete factual

2  information to the United States Probation and Pretrial Services

3  Office and the Court, even if that factual information may be viewed

4  as inconsistent with the facts agreed to in this agreement, this

5  paragraph does not affect defendant's and the USAO's obligations not

6  to contest the facts agreed to in this agreement.

7       24.  Defendant understands that even if the Court ignores any

8  sentencing recommendation, finds facts or reaches conclusions

9  different from those agreed to, and/or imposes any sentence up to the

10 maximum established by statute, defendant cannot, for that reason,

11 withdraw defendant's guilty plea, and defendant will remain bound to

12 fulfill all defendant's obligations under this agreement.  Defendant

13 understands that no one -- not the prosecutor, defendant's attorney,

14 or the Court -- can make a binding prediction or promise regarding

15 the sentence defendant will receive, except that it will be within

16 the statutory maximum.

17                    NO ADDITIONAL AGREEMENTS

18      25.  Defendant understands that, except as set forth herein,

19 there are no promises, understandings, or agreements between the USAO

20 and defendant or defendant's attorney, and that no additional

21 promise, understanding, or agreement may be entered into unless in a

22 writing signed by all parties or on the record in court.

23 //

24 //

25 //

26 //

27 //

28 //

1          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          26.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    E. MARTIN ESTRADA
     United States Attorney

9

10   _____          9/4/2024
                                                _____
11   KATHRYNNE N. SEIDEN                          Date
     ANNA P. BOYLAN
11   Assistant United States Attorneys

12                                               9-4-24
     _____          _____
13   ROBERT RUNDO                                 Date
     Defendant

14                                               9/4/24
     _____          _____
15   ERIN MURPHY                                  Date
     JULIA DEIXLER
16   Attorneys for Defendant Robert Rundo

17

18

19

20

21

22

23

24

25

26

27

28

                                    15

1    <u>CERTIFICATION OF DEFENDANT</u>

2        I have read this agreement in its entirety.  I have had enough

3    time to review and consider this agreement, and I have carefully and

4    thoroughly discussed every part of it with my attorney.  I understand

5    the terms of this agreement, and I voluntarily agree to those terms.

6    I have discussed the evidence with my attorney, and my attorney has

7    advised me of my rights, of possible pretrial motions that might be

8    filed, of possible defenses that might be asserted either prior to or

9    at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10   of relevant Sentencing Guidelines provisions, and of the consequences

11   of entering into this agreement.  No promises, inducements, or

12   representations of any kind have been made to me other than those

13   contained in this agreement.  No one has threatened or forced me in

14   any way to enter into this agreement.  I am satisfied with the

15   representation of my attorney in this matter, and I am pleading

16   guilty because I am guilty of the charge and wish to take advantage

17   of the promises set forth in this agreement, and not for any other

18   reason.

19   _____          9-4-24

20   ROBERT RUNDO                             _____
     Defendant                                Date

21

22

23

24

25

26

27

28

16

1    <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2         I am Robert Rundo's attorney.  I have carefully and thoroughly

3    discussed every part of this agreement with my client.  Further, I

4    have fully advised my client of his rights, of possible pretrial

5    motions that might be filed, of possible defenses that might be

6    asserted either prior to or at trial, of the sentencing factors set

7    forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8    provisions, and of the consequences of entering into this agreement.

9    To my knowledge: no promises, inducements, or representations of any

10   kind have been made to my client other than those contained in this

11   agreement; no one has threatened or forced my client in any way to

12   enter into this agreement; my client's decision to enter into this

13   agreement is an informed and voluntary one; and the factual basis set

14   forth in this agreement is sufficient to support my client's entry of

15   a guilty plea pursuant to this agreement.

16   _____    ___9/4/24_____

17   ERIN MURPHY                          Date
     JULIA DEIXLER
18   Attorneys for Defendant Robert Rundo

19

20

21

22

23

24

25

26

27

28

                                   17