CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Erin Murphy (Bar No. 285087)
(E-Mail: Erin_Murphy@fd.org)
Julia Deixler (Bar No. 301954)
(E-Mail: Julia_Deixler@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ROBERT PAUL RUNDO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>ROBERT PAUL RUNDO,<br><br>  Defendant. | Case No. 2:18-CR-00759-JLS<br><br>**OBJECTIONS TO PRESENTENCE REPORT AND SENTENCING RECOMMENDATION** |

By and through his counsel of record, Deputy Federal Public Defenders Erin Murphy and Julia Deixler, Robert Rundo hereby submits his objections to the Presentence Report and Disclosed Letter of Recommendation by U.S. Probation. Mr. Rundo's sentencing memorandum will be filed under separate cover.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 27, 2024   By  */s/ Julia Deixler*
ERIN MURPHY
JULIA DEIXLER
Deputy Federal Public Defenders
Attorneys for ROBERT PAUL RUNDO

# I. INTRODUCTION

Special conditions of supervised release "must be 'reasonably related' to the goals of deterrence, protection of the public, and rehabilitation of the offender." *United States v. Ross,* 476 F.3d 719, 721 (9th Cir. 2007) (quoting 18 U.S.C. § 3583(d)). "And conditions cannot involve any 'greater deprivation of liberty than is reasonably necessary for the purposes of supervised release." *Ross,* 476 F.3d at 721 (quoting 18 U.S.C. § 3583(d)(2)); *see also United States v. Wolf Child*, 699 F.3d 1082, 1161 (9th Cir. 2008). Mr. Rundo objects to two categories of proposed special conditions of supervised release on these grounds. He also seeks to correct one minor factual error in the PSR regarding the date of his arrest.

# II. PROPOSED CONDITIONS OF SUPERVISED RELEASE

## A. Proposed Condition Nos. 4 & 5: Association with RAM Members

Condition 4 states that Mr. Rundo "shall not associate with anyone known to the defendant to be a member of the RAM organization and others known to the defendant to be participants in the RAM organization's criminal activities." Condition 5 states that Mr. Rundo "shall not be present in any area known to the defendant to be a location where members of the RAM organization meet or assemble." Dkt. 439.

Due process prohibits setting a condition of supervised release "that either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Johnson*, 626 F.3d 1085, 1090 (9th Cir. 2010) (quoting *United States v. Hugs,* 384 F.3d 762, 768 (9th Cir.2004)). "A probationer must be put on clear notice of what conduct will (and will not) constitute a supervised release violation, a rule that is of particular importance when the condition seems to reach constitutionally protected conduct." *United States v. Soltero*, 510 F.3d 858, 867 n.10 (9th Cir. 2007). In particular, where a vague condition "abuts upon sensitive areas of basic First

Amendment freedoms, it operates to inhibit the exercise of those freedoms." *Id.* (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 109 (1972).

Although the Ninth Circuit has upheld supervised release conditions that preclude association with gang members, it has struck down more nebulous formations of such conditions, such as "the prohibition on associating with persons *associated with* [a gang]." *Johnson*, 626 F.3d at 1091. That proscription "is impermissibly vague and entails a deprivation of liberty that is greater than necessary . . . it sweeps too broadly because it encompasses not only those who are involved in the gang's criminal activities, but also those who may have only a social connection to an individual gang member." *Id.* at 1091.

The language of proposed conditions 4 and 5 is typically imposed in cases in which the defendant is a current or former member of a criminal street gang. But unlike such gangs, the Rise Above Movement was more loosely defined, without formal initiation, membership, insignia, or territories. As alleged in the Indictment, Mr. Rundo and his co-conspirators occasionally met in person in the Southern California area, travelled together to Berkeley on one occasion, and communicated via text message and social media. More than seven years later, there is no evidence to suggest that the individuals who participated in that conduct continue to exist as a group or congregate in defined locations. And there is certainly no evidence to suggest that the group has engaged in any criminal conduct since that time. RAM therefore does not meet the definition of a "criminal street gang," as set forth in 18 U.S.C. § 521(a), as "an ongoing group, club, organization, or association of 5 or more persons ... that has as [one] of its primary purposes the commission of [one] or more of the criminal offenses described in [18 U.S.C. § 521(c) and] ... the members of which engage, or have engaged within the past 5 years, in a continuing series of offenses described in [§ 521(c)]."

How then can Probation enforce these gang conditions, and how can Mr. Rundo reasonably understand their restraints?  Could Probation allege, for example, that individuals who never attended any rallies or trainings with RAM, but who followed their Instagram or Twitter accounts, constitute "members" of the group?  What about individuals who attended a boxing practice, but never attended any rallies or engaged in any violence?  Will Mr. Rundo be prohibited from visiting entire social media sites, used by hundreds of millions of people worldwide, where RAM members "assemble"?

Further, many individuals who had no involvement in the offense conduct or any other criminal activity have been targeted by law enforcement, simply due to their association with Mr. Rundo.  For example, Mr. Rundo's own mother is now barred from Western Union after attempting to send money to her son.  PSR 95.  When Mr. Rundo was ordered to be released on bond earlier this year, the government sought to impose a condition that he have no communication with three people who had either picked him up from custody or given him a place to stay for the fewer than 24 hours that he was previously free.  But none of those individuals were involved in the offense conduct or any continuing criminal activity.  One of them is Mr. Rundo's godson and his closest friend in the area.  He has no criminal history, lives with his parents, and was just 15 years old at the time that Mr. Rundo attended the 2017 rallies.

For all of these reasons, proposed conditions 4 and 5 are impermissibly vague, and in their current formation, are "drawn so broadly that they unnecessarily restrict otherwise lawful activities." *Id*. at 1091 (quoting *United States v. Soltero*, 510 F.3d 858, 867 (9th Cir. 2007).  The defense proposes that the conditions instead be applied specifically to Mr. Rundo's co-defendants in this case, as well as the defendants in *United States v. Daley*, et al., Case. No. 3:18-CR-000025-NKM-JCH (W.D. Va. 2018).  *See* PSR 61-64.

//

//

The defense proposes the following language:

- The defendant shall not associate with any co-defendant in Central District of California Case No. 2:18-CR-00759 or Western District of Virginia Case No. 3:18-CR-000025.

- As directed by the Probation Officer, the defendant shall not be present in any area known to the defendant to be a location where any co-defendant in in Central District of California Case No. 2: 18-CR-00759 or Western District of Virginia Case No. 3:18-CR-000025 is known to reside or assemble.

**B.     Proposed Condition Nos. 6-9: Computer Monitoring**

Proposed conditions 6, 7, and 8 would require Mr. Rundo to participate in the Computer Monitoring Program, which would give Probation unfettered access to all of his electronic devices, email and social media accounts, cloud storage, and online passwords. Condition 9 would permit Probation to conduct searches of Mr. Rundo's electronic devices and data upon reasonable suspicion. None of these conditions is reasonably related to Mr. Rundo's rioting offense, and each is far more restrictive than necessary to meet the goals of supervised release in this case.

Computer searches implicate categorically greater privacy interests than searches of other items. The Supreme Court and Ninth Circuit decisions accord computers heightened procedural protections due to the "almost sui generis" privacy interests at stake. *United States v. Johnson*, 875 F.3d 1265, 1274 (9th Cir. 2017). In *Riley v. California*, the Supreme Court exempted cell phones from the general rule permitting law enforcement to search objects on an arrestee's person during a search incident to arrest, noting that "modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Riley*, 573 U.S. 373, 393 (2014). In *United States v. Bare*, the Ninth Circuit adopted a rule requiring district court to articulate a nexus between computer use and the purposes of supervised release before imposing computer search conditions on criminal defendants.

4

*United States v. Bare*, 806 F.3d 1011, 1017 (9th Cir. 2015); *see also United States v. Lara*, 815 F.3d 605, 611- 12 (9th Cir. 2016) (relying on *Riley* to invalidate a probation condition permitting a search of defendant's cell phone).  And in *United States v. Hill*, the Ninth Circuit imposed a computer-specific requirement that law enforcement specifically justify in warrant applications the need to seize electronic equipment on site, instead of performing a more limited on-site search.  *United States v. Hill*, 459 F.3d 966, 976 (9th Cir. 2006).

In light of computers' "almost sui generis" nature, and heightened procedural requirements for computer search conditions, this special condition should not be imposed.  Under section 3553, the specific defendant's role in the offense must be considered in imposing computer-specific conditions of supervised release.  *See, e.g., United States v. Sales*, 47 F.3d 732, 736 (9th Cir. 2007) (supervised release condition's "breadth" must be "reasonably related to the nature and circumstances of Sales's counterfeiting offense or [his] history and characteristics."); *United States v. Barsumyan*, 517 F.3d 1154,1160-61 (9th Cir. 2008) (examining Barsumyan's specific role in the offense, noting "there is no indication that Barsumyan was going to be the one to do the downloading" in the counterfeiting crime, and striking computer restriction condition).

Mr. Rundo's use of text messages and the internet in the non-technical offense of participating in a riot fails to justify the enormously intrusive terms of the Computer Monitoring Program and electronic search conditions proposed by Probation.  The use of text messages and social media to communicate with co-conspirators is commonplace among numerous types of offenders for which the Computer Monitoring Program is rarely, if ever, imposed.  Those sweeping restrictions are no more justified here than they would be in any case in which a defendant used the internet in some minimal way to facilitate his offense -- a drug dealer who contacts customers by text or social media, a bank robber who purchases a mask on Amazon and texts his co-

5

conspirator where and when to meet for the robbery, and so on. Particularly in this case, which has already implicated significant First Amendment issues, conditions granting Probation unfettered access to Mr. Rundo's personal associations, private communications, and political speech are a much greater deprivation of liberty than necessary. The Court should decline to subject Mr. Rundo to the sweeping Computer Monitoring Program, and impose standard search conditions that exclude the search of electronic devices.

### III. FACTUAL OBJECTION TO THE PSR

**A.   Date of Arrest**

The defense wishes to correct a factual error at paragraph 17 of the PSR, which states that Mr. Rundo was arrested on February 23, 2024. In fact, Mr. Rundo was released on February 21 and arrested the next day on February 22. Although he was arrested by federal authorities, he spent that night in local custody and was transferred to MDC the following morning. *See* Dkt. No. 336 at 4 (Tr. of Feb. 23, 2024 Status Conference at which government counsel confirmed that Mr. Rundo was taken into custody the prior evening).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 27, 2024     By  */s/ Julia Deixler*
ERIN MURPHY
JULIA DEIXLER
Deputy Federal Public Defenders
Attorneys for ROBERT RUNDO

6

# PROOF OF SERVICE

I, **Samantha Garza**, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202, Telephone No. (213) 894-2854; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **OBJECTIONS TO PRESENTENCE REPORT AND SENTENCING RECOMMENDATIONS** on the following individual(s) by:

[ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows:

[ ] Placing same in an envelope for hand delivery addressed as follows:

[ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows:

[X] By E-mail addressed as follows:

Anna Boylan
AUSA - US Attorneys Office
312 North Spring Street, 12th Floor
Los Angeles, CA 90012
E-mail: Anna.Boylan@usdoj.gov

Michelle Wang, USPO
US Federal Probation Office
411 W. 4th Street, #4-170
Santa Ana, California
E-mail: Michelle_Wang@cacp.uscourts.gov

Kathrynne Nicole Seiden
AUSA - US Attorneys Office
312 North Spring Street, 12th Floor
Los Angeles, CA 90012
E-mail: Kathrynne.Seiden@usdoj.gov

This proof of service is executed at Los Angeles, California, on **November 27, 2024**.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

                           _/s/ Samantha Garza_                .
                           **Samantha Garza**