E. MARTIN ESTRADA
United States Attorney
DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division
KATHRYNNE N. SEIDEN (Cal. Bar No. 310902)
Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes Section
ANNA P. BOYLAN (Cal. Bar No. 322791)
Assistant United States Attorney
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0631/2170
    Facsimile: (213) 894-0141
    E-mail:    kathrynne.seiden@usdoj.gov
               anna.boylan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:18-759(A)-JLS-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT ROBERT RUNDO'S SENTENCING MEMORANDUM |
| v. | |
| ROBERT RUNDO, | Hearing Date: December 13, 2024 |
| Defendant. | Hearing Time: 9:30 a.m.<br>Location:    Courtroom of the Hon. Josephine L. Staton |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kathrynne N. Seiden and Anna P. Boylan, hereby files its response to defendant Robert Rundo's Sentencing Memorandum.

This Response is based upon the attached memorandum of points

//

and authorities, the exhibit attached hereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 10, 2024        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division


            /s/
KATHRYNNE N. SEIDEN
ANNA P. BOYLAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

As set forth in the government's sentencing position, based on defendant's criminal conduct and personal history, a 24-month sentence is necessary but not greater than necessary to accomplish the purposes set forth in 18 U.S.C. § 3553(a).  Relying on mischaracterizations of the factual and procedural records in this and other cases, defendant raises various unpersuasive arguments for why he should be afforded a downward variance.  He should not.

First, defendant points to certain individuals who were either not charged or received lesser sentences, but those individuals are readily distinguishable from defendant, a previously convicted violent felon who led a criminal conspiracy for which several co-conspirators have now been convicted and sentenced to between 27 and 37 months imprisonment.  Defendant is not entitled to a lower sentence based on those imposed for defendants with dissimilar records convicted for dissimilar conduct.

Second, defendant argues that the duration of these proceedings and the time he spent in custody abroad warrant a downward variance.  But defendant was detained in Serbia for unrelated violations of Serbian law, and he was detained in Romania because he chose to hide there under a false identity, bragging about evading the charges he now complains have taken years to resolve.

Finally, defendant argues that his re-arrest earlier this year somehow entitles him to a downward variance.  The government already addressed before the Ninth Circuit the arguments defendant raises in his sentencing position, and the Ninth Circuit responded by ordering defendant re-arrested, finding the district court's release order was

clear error, and ordering defendant detained pending appeal. Defendant's disagreement with the Ninth Circuit's ruling that his arrest and detention pending appeal was proper simply has no bearing on the appropriate sentence in this case.

Consistent with the plea agreement, the government respectfully requests that the Court sentence defendant to a low-end Guidelines sentence of 24 months' imprisonment, two years' supervised release, and a $100 special assessment.

**II.   THE RECOMMENDED SENTENCE WOULD NOT CREATE UNWARRANTED SENTENCING DISPARITIES AMONG SIMILAR DEFENDANTS**

Under 18 U.S.C. § 3553(a)(6), the Court should consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Ignoring the sentences imposed for his own co-conspirators, which were in line with or higher than the government's proposed sentence here, defendant argues that his sentence should be measured instead against the outcome of "similar cases" against three individuals -- J.M.A., J.F., and J.A. -- who were arrested at Huntington Beach. (Def't Position at 12.)  But in rejecting defendant's selective prosecution argument, the Ninth Circuit already explained why these three individuals were not comparable to defendant. United States v. Rundo, 108 F.4th 792, 800-04 (9th Cir. 2024).  First, there is no indication that any of these individuals have violent records similar to defendant's.  Second, as defendant acknowledges, none of them were federally charged -- let alone found guilty -- for any conduct, let alone conduct similar to defendant's.  And third, none of them engaged in similar conduct to that of defendant.  To the contrary, the Ninth Circuit held that "J.A., J.M.A., and J.F. are not similarly

2

situated to defendants when the nature of their conduct is compared" because unlike defendant, none of the three individuals attended numerous rallies, "gloated" about their attacks on the internet, or "behaved like leaders of an organized crime group." Id. at 801.

Defendant similarly cites to a probationary sentence against a professor charged by the state for his conduct at the Berkeley rally, (Def't Position at 12-13), but that comparison, too, is unhelpful to a § 3553(a)(6) analysis; the professor was not someone with a similar record found guilty of similar conduct, but rather, someone with no apparent criminal record who was found guilty of a single misdemeanor battery charge.[1]

Defendant also cites to four[2] Anti-Riot Act cases where defendants were sentenced between 0 and 12 months' imprisonment, (Def't Position at 13-14), but those cases do not help him either, as each of those defendants engaged in conduct or had criminal histories easily distinguishable from defendant's.[3] Moreover, defendant's

---

[1] See Emilie Raguso, Eric Clanton Takes 3-Year Probation Deal in Berkeley Rally Bike Lock Assault Case, BERKELEYSIDE (Aug. 8, 2018, 2:14 PM), https://www.berkeleyside.org/2018/08/08/eric-clanton-takes-3-year-probation-deal-in-berkeley-rally-bike-lock-assault-case.

[2] Defendant claims to cite to five cases in which defendants convicted for rioting were sentenced between 0 and 12 months' imprisonment, but one of the cases he cites to involved a defendant who was sentenced to 24 months' imprisonment, which is the same sentence the government seeks here. See United States v. Tindal, No. 6:21-cr-06038-CJS, Dkt. 68 (W.D.N.Y. Oct. 6, 2023) (sentencing defendant with serious mental health issues who initially cooperated with the government to 24 months' imprisonment, to be served consecutively with a parallel 60-month sentence for failing to appear in the same case).

[3] See, e.g., United States v. Ruffin, No. 2:17-cr-00129-LA-1, Dkt. 68 (E.D. Wis. Sept. 30, 2022) (sentencing defendant to probation for igniting a piece of paper and placing it near the rear door of a liquor store while heavily intoxicated); United States v. Hardy, No. 6:20-cr-06172-CJS-1, Dkt. 35 (W.D.N.Y. Mar. 22, 2021) (sentencing defendant with a history of sexual abuse, learning disabilities, and
*(footnote cont'd on next page)*

3

cherry-picking of particular sentences arising from the 2020 protests obfuscates the fact that the government's recommended sentence here is roughly in line with, and in some cases even lower than, other sentences imposed in cases arising from that series of protests. See e.g. Tindal, No. 6:21-cr-06038-CJS-1; United States v. McFadden, No. 6:22-cr-06053-CJS-1, Dkt. 105 (W.D.N.Y.) (sentencing defendant convicted for civil disturbance at the same protest as Mr. Tindal to 30 months' imprisonment); United States v. Santiago, No. 6:23-cr-06178-FPG-1, Dkt. 73 (W.D.N.Y. Oct. 31, 2024) (sentencing defendant convicted for civil disorder and assaulting a federal officer at two different protests to 33 months' imprisonment).

Finally, for several reasons, defendant's generalized assertion that "about 44 percent of all defendants charged with assault in connection with the January 6 attacks on the U.S. Capitol have received a sentence of 24 months or less" is unpersuasive. (Def't Position at 14; see also id. Ex. P.) First, 24 months' imprisonment is the precise sentence the government is asking for here. Second, defendant's statistics mean that significantly more than half of all defendants sentenced in connection with the January 6 attacks have received sentences higher (and in many cases, significantly higher)

---

no criminal history to 12 months' imprisonment for participating in a single riot); United States v. Drechsler, No. 6:21-cr-06064-DGL-1, Dkt. 39 (W.D.N.Y. Aug. 16, 2021) (sentencing defendant with mental health disorders, a severe history of sexual abuse, and no criminal history to 12 months' imprisonment for participating in a single riot after she turned herself in); United States v. Sanks, No. 6:21-cr-06065-DGL-1, Dkt. 36 (W.D.N.Y. Aug. 26, 2021) (sentencing defendant with substance abuse and mental health issues who did not belong to any organized group to five months' imprisonment for participating in a single riot).

4

than the one the government seeks here.[4] Third, the government seeks a sentence that accounts not just for the violence defendant inflicted at a single incident, but also for his violent criminal history, his violent conduct at numerous riots, and his recruitment and training of others to engage in similar violence. Defendant's general statistics about the January 6 rioters as a group say nothing about whether any individuals with similar criminal histories who were convicted for similar conduct received sentences that were more lenient than the one the government seeks here for someone who "behaved like [the] leader[] of an organized crime group" over a prolonged period. See Rundo, 108 F.4th at 801-02 (acknowledging that "repetitive and organized nature of conduct" can "set a defendant and a purported comparator apart"). Indeed, the Ninth Circuit rebuffed as improper defendant's prior attempts to draw similar group-to-individual comparisons. See id. at 799-800 (finding it is "impossible" to analyze whether someone was similarly situated "when comparing collective conduct to individual conduct").

In sum, defendant has not pointed to any defendant with a similar record found guilty of similar conduct who was sentenced to less than 24 months' imprisonment. Defendant simultaneously ignores the sentences that are most useful for comparison: those imposed for

---

[4] See, eg., United States v. Nordean et al., No. 1:21-cr-00175-TJK-5, Dkt. 908 (D.D.C. Sept. 15, 2023), appeal pending (former national chairman of the Proud Boys sentenced to 22 years for role in January 6, including establishing a chain of command, intentionally recruiting others to engage in physical violence if necessary, and monitoring the attack from afar while bragging and posting encouraging messages on social media); United States v. Rhodes, III, et al., No. 1:22-cr-00015-APM-1, Dkt. 624 (D.D.C. Jun. 5, 2023), appeal pending (sentencing leader of Oath Keepers to 18 years for role in January 6, including recruiting members and affiliates, organizing trainings to teach combat tactics, bringing equipment to the Capitol, and using force while there).

5

his co-conspirators, which ranged between 27 and 37 months' imprisonment, and in particular, his RAM co-founder, Daley, who received a sentence of 37 months' imprisonment. Anything lower than the 24-month sentence the government seeks would create an unwarranted sentencing disparity between defendant and the followers he led.

### III. THE GOVERNMENT DID NOT VIOLATE DEFENDANT'S CONSTITUTIONAL RIGHTS

Throughout his sentencing position, defendant mischaracterizes the factual record and procedural history of this case to suggest that it somehow entitles him to a downward variance. It does not.

First, defendant claims that in 2019, his case was "dismissed for First Amendment violations." (Def't Position at 14.) The government did not violate defendant's First Amendment rights; rather, the district court held that the Anti-Riot Act was facially overbroad, a ruling that was reversed by the Ninth Circuit, which upheld the statute, severing certain portions not at issue here and reinstating the case. United States v. Rundo, 990 F.3d 709, 721 (9th Cir. 2021).

Second, defendant complains that in the years between the first dismissal of his case and the reversal of that order, he was "detained numerous times, even while no charges were pending against him." (Def't Position at 14.) Initially, defendant does not establish that he was detained "numerous times," as his position refers to a single instance in which he says he was detained in Serbia for overstaying his Visa. Furthermore, that detention had nothing to do with the current charges or the U.S. government, and defendant is not entitled to a windfall for getting caught violating the laws of another country.

6

Third, defendant references the district court's "finding that the government . . . violated due process in selectively prosecuting [him] and his co-defendants," without acknowledging that the Ninth Circuit unequivocally rejected that finding and forcefully held in a published opinion that the government did not selectively prosecute him.  See Rundo, 108 F.4th at 801 (reversing and remanding the district court's order and calling its reasoning "flawed," its factual statements "incorrect," and its attempt to find impermissible government motive "strained").

Fourth, defendant claims he has been "punished in unique ways" because he was released "on bond, only to be arrested the next day under highly unorthodox means that were condemned by two separate judges within this district."  (Def't Position at 15.)  Defendant was not released on bond; he was released forthwith on no bond when the district court dismissed the case for selective prosecution and declined to grant a stay of his release.  (Dkt. 338.)  Prior to his actual release that evening, the government sought an emergency order to stay defendant's release, which the Ninth Circuit granted early the following morning.  The government then sought and obtained an arrest warrant from a magistrate judge after informing the magistrate judge of the procedural posture.  While the government will not recount in full the intricacies of the ensuing hearings,[5] the Ninth Circuit reviewed the entirety of that history (including the same complaints defendant raises here) and ruled uniformly in the government's favor, staying the dismissal and release order, issuing

---

[5] The full extent of the procedural history is laid out in pages 25-31 of the government's attached reply in support of its motion to continue defendant's detention pending appeal and paragraphs 1-22 of the Declaration of Bram M. Alden attached thereto.

7

two clarifying orders directing that defendant remain in custody after his re-arrest and pending a bail determination hearing under the Bail Reform Act, and automatically staying any resulting release order for 96 hours.  United States v. Rundo et al., No. 24-932, Dkts. 13 (9th Cir. Feb. 23, 2024) and 33 (9th Cir. Mar. 13, 2024).  There were no formal allegations, let alone findings, of any government misconduct, and defendant is not entitled to a lower sentence because he was released for approximately 24 hours before being re-arrested.

Moreover, after defendant was re-arrested, the district court held a hearing under the Bail Reform Act and again ordered defendant released, which the Ninth Circuit again reversed.  United States v. Rundo et al., No. 24-2814, Dkt. 19 (9th Cir. July 16, 2024) (holding district court clearly erred in finding defendant did not pose a danger to the safety of others and was not likely to flee if released).  In other words, defendant had multiple opportunities to be heard on his request for pretrial release and remained detained not because of any procedural irregularity, but because the Ninth Circuit reviewed thorough briefing and evidence and found that he was a danger and a flight risk under the appropriate legal framework.

**IV.   THE LENGTH OF THE PROCEEDINGS DOES NOT WARRANT A DOWNWARD VARIANCE**

Finally, defendant suggests he is entitled to a downward variance because "the offense conduct occurred more than seven years ago and has hung over [defendant] like a dark cloud ever since." (Def't Position at 14.)  Certainly, there are cases in which dated conduct and a record of good behavior in the intervening period would lessen the need for deterrence, and thus mitigate in favor of a more lenient sentence.  This is not one of those cases.  Defendant was

8

charged in 2018 and waited until 2024 to plead guilty.  While he was entitled to litigate the constitutionality of his charges, he did so in multiple phases, making one set of arguments in 2019 and waiting until 2023 to raise an entirely new challenge that was ripe at the time of his initial motions.  Most critically, in the intervening period, defendant, aware that his case was still on appeal and could be reinstated, fled to Europe.  After learning that his case had been reinstated, he did not surrender, but rather went into hiding, publicly gloating about evading law enforcement.  He did not take that time to start a new, law-abiding life, but rather continued to live under false identification documents and a fake passport, overstay his visas in the countries in which he hid, brag about the violence for which he was charged in this case, seek and profit from the publicity he gained, and publicly advocate for the same violent extremist ideology that motivated his crimes in this case.  Defendant is entitled to speak publicly about his ideology, but he cannot credibly claim that he has been victimized by the publicity he sought out or by the duration of the proceedings he prolonged.

**V.    CONCLUSION**

None of defendant's rationales for why he should be afforded a downward variance carry weight.  In accordance with the plea agreement, the government respectfully requests that the Court sentence defendant to 24 months' imprisonment, two years' supervised release, and a $100 special assessment.

9