**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

**HONORABLE CORMAC J. CARNEY, U.S. DISTRICT JUDGE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) **CERTIFIED TRANSCRIPT** |
| | ) |
| vs. | ) |
| | ) Case No. |
| 1) ROBERT PAUL RUNDO, | ) CR-18-00759-CJC |
| 2) ROBERT BOMAN, | ) |
| 3) TYLER LAUBE, | ) |
| 4) AARON EASON, | ) |
| | ) |
| Defendants. | ) |
| | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTION HEARING

THURSDAY, MARCH 3, 2022

2:38 P.M.

SANTA ANA, CALIFORNIA

**DEBBIE HINO-SPAAN, CSR 7953, RPR, CRR, RMR, CRC**
OFFICIAL COURT REPORTER PRO TEMPORE
dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL:**


**FOR PLAINTIFF:**

BILL ESSAYLI
United States Attorney
BY:  SOLOMON KIM
     DAVID RYAN
     Assistant United States Attorney
312 North Spring Street
Suite 1100
Los Angeles, California 90012
213-894-2450

**FOR DEFENDANT ROBERT PAUL RUNDO:**

CUAUHTÉMOC ORTEGA, FEDERAL PUBLIC DEFENDER
BY:  JULIA DEIXLER
     Deputy Federal Public Defender
312 North Spring Street
Suite 1200
Los Angeles, California 90012
213-894-0631

**FOR DEFENDANT ROBERT BOMAN:**

PETER C. SWARTH LAW OFFICES
BY:  PETER C. SWARTH, ESQ.
6442 Platt Avenue
Suite 557
West Hills, California 91307-3216
818-887-8800

**FOR DEFENDANT TYLER LAUBE:**

LAW OFFICES OF JEROME HAIG
BY:  JEROME HAIG, ESQ.

**FOR DEFENDANT AARON EASON (VIA ZOOM VIDEOCONFERENCE):**

LAW OFFICES OF JOHN MCNICHOLAS
BY:  JOHN MCNICHOLAS, ESQ.
464 Palos Verdes Boulevard
Redondo Beach, California 90277
310-545-0780


**UNITED STATES DISTRICT COURT**

**SANTA ANA, CALIFORNIA; THURSDAY, MARCH 3, 2022**

**2:38 P.M.**

**- - -**

THE COURTROOM DEPUTY:  Calling Item Number 3, CR-18-00759, United States of America vs. Robert Paul Rundo; United States of America vs. Robert Boman; United States of America vs. Tyler Laube; United States of America vs. Aaron Eason.

Counsel, please state your appearances.

MR. RYAN:  Good afternoon, Your Honor.  David Ryan on behalf of the United States.

THE COURT:  Hello, Mr. Ryan.

MR. KIM:  Good afternoon, Your Honor.  Solomon Kim on behalf of the United States.

THE COURT:  Hello, Mr. Kim.

MS. DEIXLER:  Good afternoon, Your Honor.  Deputy Public Defender Julia Deixler on behalf of Robert Rundo, who is not present in the court.

THE COURT:  Hello, Ms. Deixler.

MR. SWARTH:  Peter Swarth on behalf of Robert Boman, who is not present.

THE COURT:  Okay.

MR. HAIG:  Good afternoon, Your Honor.  Jerome Haig appearing for Mr. Tyler Laube, who is present in the court

**UNITED STATES DISTRICT COURT**

seated in the first row here (indicating).

MR. McNICHOLAS:  Good afternoon, Your Honor.  John McNicholas appearing on behalf of Aaron Eason who is present on videoconference.  He can see you, but apparently we can't see him.  There he is.

THE COURT:  Are you there, Mr. Eason?

THE DEFENDANT:  I am here.  I can hear you.

MR. McNICHOLAS:  The camera was on a minute ago.  Perhaps he hit the button.  I don't know.

THE COURT:  There he is.  Okay.  Great.

Well, before we go further, I just -- I guess I need an explanation on the record why Mr. Rundo and Mr. Boman is not here.

MS. DEIXLER:  Yes, Your Honor.  On behalf of Mr. Rundo, I made an attempt to get in contact with him.  I have not been able to reach him.  So he has not received notice of this hearing.  I'll continue to attempt to get in contact with him.

THE COURT:  Do you anticipate any problem getting ahold of him?

MR. McNICHOLAS:  I'm not sure, Your Honor.  I think the last contact information that I had for him is outdated.  I don't know where he's located.  I'm going to do my best to get in touch with him and notify him.

THE COURT:  Okay.  How about Mr. Boman?

UNITED STATES DISTRICT COURT

MR. SWARTH:  Similarly, I do not have current contact information for Mr. Boman.  I've spoken with -- I'm sorry, I've spoken with the people who I know know him.  They have not had contact with him for a while.  I know that he's around locally, but I don't know where he's staying, nor do I have a current phone number with which to reach him.  So he does not actually have notice of today's hearing.

THE COURT:  Okay.  Well, I'm hesitant to take any significant action with respect -- in this case with respect to those two people without them being present and heard.  They have a right to be present at all stages of the proceedings.  And based on what's been presented, I don't think it would be appropriate to issue any type of warrant.

But what is the Government's position on trying to make sure everybody is given notice that the case is back on?

MR. RYAN:  Yes.  Thank you, Your Honor.  I'm not sure what Your Honor was envisioning to accomplish at today's hearing, but I think from our perspective, and we've conferred some with defense counsel, there are a couple of issues we could present to Your Honor that wouldn't be for a decision today but just to lay out a roadmap of preparing for the case.

With respect to the presence of the defendants and notice, what we were going to suggest, which I think we still would suggest, is that the Court ask Pretrial Services to create new reports similar as they would at the outset of a

case with respect to -- that would inform bond and/or detention decisions and to attempt to reinterview all four of the defendants so that the Court and parties could have full and current information to make updated bond and/or detention decisions.  I'm aware of some information with respect to Defendants Boman and Rundo, you know.  Public media reports regarding Mr. Rundo were that he was in Serbia as of a couple of months ago -- that's the best I can offer -- and had been for some time.

I understand that Mr. Boman has had some involvement in the criminal justice locally, some significant involvement in the past, but I don't know his current whereabouts any more than counsel does other than that that involvement's been local here.  So I don't dis- --

THE COURT:  What type of criminal activity?

MR. RYAN:  My understanding is there had been -- I think the number from the case agent is about 11 arrests for drug- and burglary-related offenses.

THE COURT:  Now in a normal case -- excuse my ignorance.  Maybe I should know this -- doesn't the Government take responsibility on serving people?

MR. RYAN:  With arrest warrants?

THE COURT:  And the arrest warrant.

MR. RYAN:  Yes, Your Honor.  We don't have an arrest warrant at this time.  The arrest warrant that came with the

**UNITED STATES DISTRICT COURT**

original Indictment was executed at that time.  And my understanding, and I've spoken some with our office and the clerk's office about mechanically what steps would be taken, is that in this case when the Indictment was reinstated, the previous detention in bond orders had been exonerated.  And so unless and until those are reinstated and then a defendant fails to comply with that order, we don't have an arrest warrant.

So I believe what would happen is if Your Honor would reinstate a bond or detention order for a particular defendant, and the defendant failed to appear as required by those conditions, then like in the normal course, an OSC or arrest warrant could be issued, and the Government -- the marshals would have responsibility for executing on that.

THE COURT:  But the problem I'm having with that approach is how is Mr. Rundo and Mr. Boman going to be given notice and an opportunity to be heard before I issue a detention order?  I'm not comfortable issuing a detention order without notice and an opportunity to be heard.

MR. RYAN:  I understand.  And I don't think we're here asking for that order here today.

THE COURT:  No, I understand.  Please don't take that I'm criticizing you.  I'm in a procedural posture I've never been in before.

MR. RYAN:  Perhaps it won't work, but my -- my

suggestion to the Court was going to be, again, if Pretrial Services can, with counsel, attempt to create a report, if they're unsuccessful, we'd have to reevaluate at that point whether -- and we'd be happy to brief, I suppose, the issue of whether we feel we can request a detention or bond order absent the defendant, you know, being given notice or whether we can, through some other process, seek an arrest warrant.

I agree with Your Honor.  It would be a very odd posture.  But I think at the first step we could at least have an attempt.  I know it's been a few weeks since Your Honor set the hearing, and I'm sure counsel has made diligent efforts to contact them.  So I don't know what level of optimism to have that they'll have more success the next few weeks.  But perhaps with Pretrial Services as an arm of the Court also attempting, that may be helpful.  I think that's the best I can offer at this time.

THE COURT:  And the last thing I want to do is overstep, but I just need to know is there any intention on the Government's part to get a Superseding Indictment in the case?

MR. RYAN:  I think that's something we are still evaluating.  So that decision has not been made.  But based on our interpretation of the Ninth Circuit's ruling as well as developments in the facts and discovery that came out from the time of the original Indictment, I think it is likely that we would do that.  And I will make every effort to do that

expeditiously before litigation occurs on the current Indictment.

THE COURT: Right. And I don't know if you do that, doesn't that initiate the procedure on your end? I don't know whether it does.

MR. RYAN: Yeah. That's a fair point. I've not ever had that particular circumstance where we need an arrest warrant on a Superseding Indictment. Because every time I've seen that, the defendant was on bond or detained. But it may well be, and that may be a procedural way through that we'd have to look into, Your Honor.

THE COURT: And I am not in any way trying to cast dispersions on the Ninth Circuit opinion. It is what it is. They are the superior court and I will respect it, but it was difficult for me to completely understand what they were saying, if I'm missing it. But I almost got the sense that they said each defendant has to himself commit some sort of riotous or violent act. There was a lot of overt acts that were alleged that were not such acts. They could obviously be for intent.

But for purposes of the elements of the crime, I got the sense, but I'm not confident. And that's why I'm raising it. And I know defense counsel, maybe you have your views, but it would be beneficial from my standpoint if we could all be on the same page on what the law is. And I'm not 100 percent

confident I understand what the Circuit was telling us.

MR. RYAN:  Yes, Your Honor.  I suspect -- I think the second point, aside from detention and bond that I wanted to flag for Your Honor, is we do anticipate, in speaking with defense counsel, that we want to set a briefing schedule for litigation including I anticipate briefing regarding this -- how the Ninth Circuit has interpreted the law and how that then fits with the Indictment or if there's a Superseding Indictment and with the evidence.  So I think that's something that will get -- that there will be briefing on and litigation surrounding.

I think, you know, my suggestion was going to be that the parties file -- I think at least for those counsel who have been able to reach their clients, we discuss the possibility of filing a stipulation for a trial date as well as a briefing schedule that would build in time to address that.

THE COURT:  All right.  Mr. McNicholas, you look like you're ready to say something.

MR. McNICHOLAS:  Well, my point was that I concur with the Court's finding as well as far as the Ninth Circuit opinion.  It's still very confusing as to whether the crime occurs at the time of entering interstate commerce or as to whether the supposed violent act actually occurs because everything prior to the violence is now considered organization or encouragement which is unconstitutional.  So that's the

**UNITED STATES DISTRICT COURT**

problem the Government has.  And the original Indictment is full of statements which go back to the old law.  So there is an issue there.

As far as what the Government is proposing regarding Pretrial Services, we are happy to meet with Pretrial Services so that Mr. Eason can at least establish his bond.  We're going to be asking that Mr. Eason be released on a personal recognizance bond just based upon his own signature and how he has behaved in the last four years since his case started.

THE COURT:  And if no one's gotten into trouble and has behaved, you know, I think that's compelling evidence.  I wouldn't be inclined to detain someone.  But if, for example, Mr. Rundo -- and again, I'm not making any findings, but if what the information Mr. Ryan just represented is true, that he's been engaged in criminal activity, that's something I need to talk about.

MR. RYAN:  I'm sorry, Your Honor, just for the record, the criminal activity I was referencing was with respect to Defendant Boman.

THE COURT:  Oh, it was Mr. Boman, not Mr. Rundo.

MR. RYAN:  Yes, Your Honor.  Mr. Rundo was the defendant I referenced to.  There were media reports he was in Serbia.

THE COURT:  Got you.  So that will be with respect to Mr. Boman.

**UNITED STATES DISTRICT COURT**

And I know Mr. Laube and Mr. Eason, they were on bond -- right? -- before?

MR. RYAN:  Right.

MR. HAIG:  Your Honor, regarding Mr. Laube, he lives locally.  He lives in Torrance and his fiancée and mother are here as well.  I just brought surety in case the Court wanted to talk to anybody else.  I join what my co-counsel, Mr. McNicholas, said about the signature bond being appropriate at this point for a couple of reasons:  One, the fact that my client is working and living a good, long life and is here voluntarily today, just like Mr. Eason is, and the fact that the Ninth Circuit did limit some of that evidence, and I think that that's even more limiting to my client.  And certainly, the strength of the Government's evidence is one of the factors the Court can consider in fashioning the bond.  He was on a bunch of appearance bonds last time.  He was on felony probation at the time.

Now that probation is successfully concluded, he's no longer on that felony probation anymore.  So I think the fact it's militated more towards a less onerous bond, we're ready to get the pretrial report and let the Court decide.

THE COURT:  I appreciate that.  It's no surprise if they were on bond before and they stayed out of trouble.  I'm not going to issue a detention order.  I mean, it's not going to happen.  But again, if Mr. Boman has been violating the law,

I would, obviously, want to take that into account on whether I'd issue a detention order.

Mr. McNicholas, let me follow up with a question on some of your statements. Are you anticipating filing another motion to dismiss?

MR. McNICHOLAS: I believe, Your Honor, there are issues in the first motion Ms. Deixler filed that were not addressed. We only addressed the statute itself. We did not address the as-applied challenge. So that's the first issue. The second issue is to whether or not the Government can strike the inappropriate language from the Indictment and can actually charge the defendants legally. Because that's -- maybe we can address that as a group. We can have some kind of conference on that.

THE COURT: That would be my preference especially if there's going to be a Superseding Indictment.

MR. McNICHOLAS: Right.

THE COURT: I don't -- especially at this stage. I have no desire to have an academic, you know, debate motion and hearing.

MR. McNICHOLAS: Right. I would prefer to meet with the Government, sit down and address the concerns we have to see if the -- according to the new statute as viewed by the Ninth Circuit is actually appropriate to charge these defendants.

THE COURT:  Well, I would -- obviously, Rule 11 prevents me from getting involved in any of that.  But I certainly would encourage you to talk to see if you can reach a resolution.

What's not clear to me, though, is the criminal procedure at this point, you know, the speedy clock -- speedy rights trial.

MR. McNICHOLAS:  Mr. Eason is willing to waive his right to a speedy trial and to set the matter out.  We want to have a meaningful litigation schedule before we start trial preparation.  From our perspective, if this matter goes to trial, it could potentially be a very long trial.  There are many witnesses in different locations.  So it has the potential -- I mean, if four defendants were here, it has potential to be a longer trial.  But just with two defendants, it's probably at least a two-week trial.

THE COURT:  Well, I'm somewhat encouraged by the professionalism and civility.  And I'm not trying to pass the buck, but maybe I should just leave it in your hands to submit to me a stipulation and proposed case management order and waiver of time on the critical dates.

MR. McNICHOLAS:  That's agreeable, Your Honor.

MR. RYAN:  I agree with that, Your Honor.

THE COURT:  And then in that you could also say that you want the Court to order the pretrial to do reports on each

of the defendants.

MR. RYAN:  Yes.  Thank you, Your Honor.

THE COURT:  We'll get that in there.

Okay.  Is there anything else that we need to talk about?

MR. McNICHOLAS:  Not for --

MR. HAIG:  As far as the pretrial reports, does the Court envision the parties being able to stipulate to a bond, and then the Court just reading that over and making sure that it's appropriate, as far as the Court is concerned?  Or does the Court want -- is the court going to want to have an actual bail and/or detention hearing for the defendants who are at least present?

THE COURT:  I don't feel I need that.  If -- you can stipulate, if everybody is comfortable with that.  If you're not, then I'm here and we'll do it.

MR. HAIG:  All right.

THE COURT:  And I appreciate you don't want your clients to go to unnecessary stress, anxiety, or having to go into custody for a few minutes and then be let out.  So that makes sense to me.

MR. HAIG:  All right.  Okay.  Thank you.

THE COURT:  So then I just need to know, Mr. Ryan, you're going to be the point person as to getting with counsel and then preparing and submitting that stipulation and proposed

case management order.  How much time do you need?

MR. RYAN:  Well, if I can say two things in response to that, Your Honor.  One is I'll actually be not -- AUSA Solomon Kim, who's with me today, is going to be primary AUSA on this case.  I'm in a different position in the office now.  I will not be representing the Government any longer on this case.

THE COURT:  All right.

MR. RYAN:  But I'll be happy to assist getting the stipulation filed.  I don't expect it would take more than a couple of weeks.  Assuming we're only working on getting signatures from Mr. -- counsel for Mr. Laube and Mr. Boman -- excuse me -- and Mr. Eason and not attempting to wait for the two defendants that we don't have right now in contact.  I think with the counsel --

THE COURT:  That is correct.  But I assume, then, the stipulation would have to say that these are the dates for all four, because they've been joined for trial and there hasn't been a severance.

MR. RYAN:  Correct.  And I believe the speedy trial has a provision that accounts for that, that Your Honor is familiar with.

THE COURT:  Right.  Right.

Okay.  Please refresh my recollection.  I don't have the Indictment in front of me.  The old Indictment, was there

UNITED STATES DISTRICT COURT

felony charges or was it misdemeanors or both?

MR. RYAN:  The original Indictment is two counts. One is a 371 conspiracy count, and the second count is a substantive count of the riot act, the 2101.  Both are felony charges.  I believe all four defendants were charged in the 371 conspiracy count, and Mr. Laube was also not charged in Count Two of the substantive count.  So it's two counts as to three of the defendants, and only one count as to Mr. Laube.

THE COURT:  And all felonies?

MR. RYAN:  Those are both felonies, correct, Your Honor.

THE COURT:  And the statutory maximum?  I just remember it being short.

MR. RYAN:  It's five years on both.

THE COURT:  Oh, that's not short.

MR. RYAN:  And I don't know if -- now may not be the time.  We prefer to do it in briefing in terms of the allegations and the Indictment and the scope of the statute as severed by the Ninth Circuit.  And I'm sure we'll brief that at length.  The top line, I think, is that -- the core of the Indictment and the Complaint before it and as we briefed previously of this -- of the allegations has always been that all four defendants did, in fact, engage in acts at the events in furtherance of -- acts of violence in furtherance of and as part of the riots.  So that is -- that always is and has been

the core of the allegations, and that's the core of the statute, as I see it, that the Ninth Circuit left or interpreted or did not sever out.

THE COURT:  Do you agree with my characterization, that they said there has to be riotous or violent act committed by the defendant?

MR. RYAN:  I think if riotous act is -- I think my answer to that is yes.  "Riotous act" is not the term of art used.  I think the term of art used in the statute is "engaged in an act in furtherance of a riot," which, I think, means at the event.  That's the salient point, not as Mr. McNicholas discussed pre-riot preparation alone.

I think as Your Honor alluded to, as we did in this case, as we often do in a conspiracy, alleged overt acts that show an agreement and intent that are not themselves sufficient to violate the substantive underlying statute.  But to violate the substantive underlying statute, I agree with the gist of how Your Honor is summarizing the Ninth Circuit's interpretation, if that makes sense.

MR. McNICHOLAS:  I just wanted to point out it was either "insight," "participate," or "carry on in the riot."  Those are the words that can incriminate a defendant.

MS. DEIXLER:  If I may, Your Honor, and I don't intend to get into too deep of an academic discussion here, but I think I view the statute slightly differently than how

Mr. Ryan just characterized it in that there's two prongs. There's both the interstate and overt act, interstate commerce with that intent and then an additional overt act.

Not to get too deep in the weeds, but just to identify that I think there still are potentially issues where the parties might disagree on how that statute is going to apply in this case. And I think as the Court has pointed out, you know, much of what the initial Indictment has, we would probably move to strike if it were remaining.

Certainly, if there's going to be a Superseding Indictment, then we should wait for that. But I think there might still be, on behalf of the defense, an interest in pursuing the arguments in the motion to dismiss, we would like to rebrief those with an eye to the new interpretation from the Ninth Circuit of the law. Of course, if we can come to an agreement, that's preferable, but there might be disagreement between the parties still.

THE COURT: Let me ask you a few questions about that. The prior motion was a facial challenge. As-applied challenge, isn't -- from my standpoint, isn't that going to be difficult ? Don't I have to hear evidence? And is that a motion -- this is a question. It sounds like I'm predetermined. I haven't. As an as-applied, I guess you're saying I could base it on the allegations of the Indictment. And if there's none of those intentional acts at the rallies,

then I could rule on it.  Or do you think is this something that you actually have to go to trial and then you bring a motion at trial?

MS. DEIXLER:  Understood, Your Honor.  I think some of it could be appropriate for our Rule 29 motion based on the offer of proof at trial, but I think there were multiple issues raised in our initial challenge.  The Court ruled specifically on the overbreadth issue.  We had made an argument that the statute was unconstitutionally vague than vague as applied to the defendants.

There were also arguments that the Indictment failed to state a claim with respect to the interstate nexus element because this is a case where all of the actions occurred within the state of California.  And when the Ninth Circuit's, you know, editing of the law that removes the more closer-to-speech-related verbs of organize, promote, et cetera, our position, I think, would be that that would remove much of what the Indictment describes as the use of the Internet and posting on the Internet that's purely speech.

So I think we would want some time to really look at it and make a cohesive argument.  But I think there's more to it than simply the evidence that will be presented at trial.  There could be remaining challenges to the face of the Indictment.

THE COURT:  I guess all I would ask is that you get

with Mr. Kim and Mr. Ryan to see if there is going to be a Superseding Indictment.  Because I'd hate for you to go to all this time and trouble and briefing and then I say "denied as moot," and now let's do it again with respect to the Superseding Indictment.

MS. DEIXLER:  Absolutely, Your Honor.  We will do that.

THE COURT:  Okay.

MR. RYAN:  I agree with that, Your Honor.  And just to be clear, I agree with Ms. Deixler that there is that other element of the use -- a facility of interstate commerce or interstate travel.  I didn't mean to suggest there was.  I was attempting to answer Your Honor's question which I took to relate more to the second element.

THE COURT:  It was.

All right.  So I will -- I am expecting a stipulation and proposed case management order within two weeks.

All right.  Anything further we need to discuss?

MR. RYAN:  Can I have one moment, Your Honor?

THE COURT:  You may.

**(Counsel conferred off the record.)**

MR. RYAN:  Thank you, Your Honor.  Nothing further for the Government.

THE COURT:  Anything further from the defense?

MS. DEIXLER:  No, Your Honor.

MR. McNICHOLAS:  No, Your Honor.

MR. SWARTH:  No, Your Honor.

MR. HAIG:  No, Your Honor.

THE COURT:  Thank you for being here.  Appreciate it.

THE COURTROOM DEPUTY:  All rise.  This court is in recess.

**(Proceedings concluded at 3:07 p.m.)**

**--oOo--**

**UNITED STATES DISTRICT COURT**

*CERTIFICATE OF OFFICIAL REPORTER*

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )

I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME COURT REPORTER, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

*Date:  February 8, 2026*

*/S/ DEBBIE HINO-SPAAN*

*Debbie Hino-Spaan, CSR No. 7953*
*Official Court Reporter Pro Tempore*

**UNITED STATES DISTRICT COURT**